IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2005 DEC 16 P 2:55

CLERK'S OFFICE

| | |
|---|---|
| NADINE D. MILLS, ) | Civil Action No. AW 05 CV 3370 |
| Complainant, ) | |
| ) | EEOC CASE NO. |
| v. ) | 100-2004-00674X |
| ) | |
| GORDON ENGLAND, SECRETARY ) | AGENCY CASE NO. |
| DEPT. OF THE NAVY, ) | DON 03-00024-003 |
| ) | |
| ) | December 14, 2005 |

06-581 PLF

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

1. Plaintiff is a resident of Prince Georges County, Maryland.

2. Defendant is the Department of the Navy, The Naval Sea Systems Command (NAVSEA), located at the Washington Navy Yard, Washington, D.C. Plaintiff has exhausted her administrative remedies in advance of filing this suit.

3. This action is brought pursuant to:

   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Statute 2000e, et seq., for employment discrimination on the basis of race, sex and retaliation.

4. The unlawful employment practices described herein concern promotional actions/inactions and retaliatory actions taken within office of the Department of the Navy in Washington, D.C. Venue in this Court is proper pursuant to 42 U.S.C Statute 2000e-5(f)(3).

1



5. The conduct of Defendant(s) was discriminatory because it was based on race, sex and retaliation.

## THE PARTIES

6. Plaintiff is an African-American Female citizen of the United States, residing at 12404 Kingsview Street, Mitchellville, Maryland 20721.

7. Defendant is the Honorable Gordon R. England, Secretary, United States Department of the Navy ("Defendant" or "Department" or "Agency"). He is used in his official capacity as head of the Department and, as such, is amendable to suit as provided in 42 U.S.C. Statute 2000e-16(c). The Department's Headquarters are located at 1000 Navy Pentagon, Washington, D.C., 20350-1000.

## STATEMENT OF FACTS

Summary of first EEO case filed December 12, 2001 –

Race/Disparate Treatment –

Second compliant filed May 22, 2003 –

Retaliation for filing a previous compliant in December 2001

The second formal complaint is a continuum of the first formal complaint. The unresolved facts from the first case have created a retaliation that has led to this second case.

8. Plaintiff was reassigned to the Naval Sea Systems Command (NAVSEA) in October 1999 from the Naval Technical Representative Office, Laurel, Maryland (NAVTECHREP Laurel). Plaintiff was employed at the NAVTECHREP Office

2

Laurel from February 1982 thru October 1999. Plaintiff was employed in several positions and was the Division Director of the Administration Department before being reassigned. Plaintiff had been a supervisor for over ten (10) years. NAVTECHREP Laurel was disestablished and Plaintiff was reassigned to NAVSEA Headquarters. Plaintiff was initially hired and held the title Division Director, Property & Inventory Division (Code SEA 09A3). The top level Code, SEA 09A was made up of six divisions. The other Division Directors in the Plaintiff's Department were GS-13's and one GS-14 (Financial Support Division). Later I became aware that I was the only GS-12, Division Director. I also learned that I was the third African-American/Female Supervisor in the position over the years.

9. In addition, the Plaintiff notices the differences between divisions immediately. Division directors/employees pay grades were not the same or equal according to workload. The Property & Inventory Division employees were extremely overworked and under paid due to the recent physical move from Crystal City, Virginia to the Washington Navy Yard, Washington, D.C. The pay grade structures of my employees along with myself were lower than other employees performing similar duties at various agencies. Directors of other divisions were able to promote, recruit or hire government or contractor personnel, which I was not. When I lost personnel from my division for various internal reasons, I just had to make due. However, sometimes they were later replaced with personnel from other directorates within NAVSEA without my knowledge or consent. My supervisor arranged this action. I was not allowed to advertise for positions nor

given the opportunity to interview potential employees for my division. I was merely told when they were going to report for duty.

10. After filing my first compliant, I was quickly replaced as the Division Director by an African-American male, GS-13. In July 2002, Mr. Jerry Gregg replaced me as the Division Director, Property & Inventory Division. Mr. Gregg was assigned to my Division after his was disestablished from another code, SEA 91. Still being forced to perform the duties as if I was the Director, Mr. Gregg later chose to take the early retirement buyout and retired six months later, January 2003. Even though management was aware he would be taking a buyout when they placed the director's title on him, when Mr. Gregg retired, they were able to abolish the position all together.

11. During these radical transitions my health was severely affected. In November 2002 my doctor suggested that I take some time off and/or work from home to reduce the stress that I faced at the office. I asked to telework from home but was denied by NAVSEA's management. With my health being affected and a doctor's recommendation, I was not allowed to telework from home while other employees where off due to health reasons and where allowed to telework from their homes. I found their actions hostile if not discriminatory: Two of the employees that I am aware of are Caucasian females, and had been teleworking at home for a long period of time.

12. In May 2003 we were notified of a Command-wide reorganization. My staff personnel were reassigned within the division. My duties were divided amongst other personnel and I was given menial duties.

13. On December 12, 2003, I was notified of a re-organization within our department. My functions would be divided and incorporated into other sections within the division.

14. Later I was told due to the reorganization employees had to compete for their current positions. The Command informed us that they had to cut personnel by 25% by the end of FY04. My division had to downsize from 16 to 12 personnel. Another African American female, who previous held the position as Division Director, Property & Inventory Division (my position), Ms. Lynn Paige and I were asked to meet with Mr. Mike Davis, Director, Facility Management Department and Ms. Mary Lou Rakosky, Deputy Director concerning our reorganization and our positions. Ms. Paige and I were the only GS-12's in the Division and were told we had to compete for one position at the GS-12 level. The position title/description management revised was for a Facility Specialist that was a different position series I currently held as a Management Analyst, while Ms. Paige worked in the facilities arena already. Furthermore, to make a long story short, after I spoke up about the unfair personnel practices SEA 09A was performing, management did some additional modifications to cover there bases and Ms. Paige was hired for that position and awarded a GS-13 vice GS-12 as originally advertised; without re-advertising the Facility Specialist position again. Therefore, neither I, nor anyone else ever had the opportunity to apply for

5

the position again. A Caucasian male, Mr. Earl Bradford, was selected for the supervisory position of the Facilities Management Division. If management had a GS-13 certification list of eligible candidates, my name should also have been among them. I qualify at the GS-13 level.

15. During that same timeframe, Mr. Davis met with me in his office and asked if I was considering an early out, I told him I was not because I did not have the age to retire and would be penalized the 2% for every year under the age of 55. I was 51 years of age at the time. The next day he called me into his office to tell me I was not selected any of the positions. After that, my current position was quickly abolished and the job announcement cancelled.

16. Defendant claim Plaintiff's position was abolished due to loss of some functions under her supervision. That is not true. There are two sections under the Facilities Division, which are the Business and Special Projects section and the Facilities Section. Some functions were reassigned outside my division and somewhere kept within the division. For example, one of the functions of my division was Property Administration. Part of the property function was reassigned with two of my staff personnel into the Facilities side of the house. The same job functions are still being performed today.

17. Plaintiff's understanding of the downsizing was that there was a hiring freeze and there would not be any promotional opportunities anytime soon.

18. The organizational structure for the Facilities Division at that time was:

i. Division Director – GS-15

ii. Deputy Director – GS-14

iii. Facilities Supervisor – GS-13

iv. Facilities Team Leaders – GS-13 (2)

v. Facilities Specialist – GS- 7/9/11 (3)

vi. (Two of these employees were promoted to the GS-12 Level)

vii. Management Analyst – GS-11 (2)

viii. Supply Specialist – GS – 7 (2)

ix. Materials Handler – GS-7

19. The position had been written for a Facilities Specialist in which I would not be highly qualified. I'm a Management Analyst, GS-0343/12, in which I've never had an official position description for since arriving at NAVSEA. An effective position description does and should clarify an individuals duties and responsibilities. As I stated previously, I have a vast level of experience in several different areas and Navy related matters from various commands. Therefore, given the correct opportunity, I would qualify for several different position series if I were given the correct chance to apply.

20. On June 11, 2003, I was given a letter along with a generic position description indicating my reassignment to the NAVSEA Placement Program (NPP) position. Plaintiff was reassigned "back" into the same position and Ms. Mary Lou Rakosky, would still be complaint's immediate supervisor under the Business and Special Projects section.

21. NAVSEA established the NPP and reassigned 231 employees who were not in permanent FY04 positions. The majority of the employees were placed in permanent positions except about 24 in which I was one of them.

22. In June 2004 Plaintiff was permanently reassigned back into the Facilities Division. According to the Investigator's reports plaintiff's duties were abolished. In fact division employees that Plaintiff once supervised are still performing those same duties today.

23. Sometime later another job announcement was advertised at the GS-14 level; a Facilities Manager was hired from outside of the agency. A former contractor, Mr. Andy Anderson (Caucasian Male) was selected for the position. He was an on-site contractor who already worked in the Facilities Division. Mr. Anderson because supervisor over Mr. Bradford and assumed some of the functions of my former division.

24. It seems that everything was done to rearrange the primary duties, functions and responsibilities of Plaintiff's position not to give her a promotion. Ms. Paige was not a supervisor but a Team Leader. It's evident that Management preferred a Caucasian male in all supervisory positions for this new reorganization.

25. The organizational structure of the Facilities Management Division at present:

- Mike Davis, Division Director
- Mary Lou Rakosky, Deputy Director

- **Business and Special Projects**
- Plaintiff Nadine Mills - GS-12
- Ms. Alberta Jean Brown – GS-11
- Ms. Jacquie Palmer – GS-11
- Ms. Tawanna Tobias – GS-07
- Mr. Michael Moore – GS-07

**Facilities Division**

Mr. Andy Anderson - GS-14

Mr. Sam Height – GS-13

Ms. Lynn Paige – GS-13

Mr. Darrell Dreher – GS-12

Ms. Jessica Bruce – GS-12

Mr. Jim Hiepler – GS-9/11

26. We also employ various contractor personnel. Mr. Dreher, Mr. Hiepler and Ms. Bruce all have been promoted within this last year. No employees in the Business and Special Projects section have been promoted in over ten years.

27. When Mr. Dreher and Mr. Hiepler worked under my supervision, I requested they be promoted. They were not promoted until several years later after Mr. Bradford became their supervisor.

28. Plaintiff has never received negative performance ratings, letters of counseling, nor reprimands, etc. Plaintiff over the years received several awards for her performance. Also sometimes acting in the supervisor's absence.

29. Due to the reorganization, because of the retaliation against plaintiff, it caused a great impact on our daily work environment.

## COUNT I

### Retaliation Under Title VII

30. Plaintiff hereby incorporates paragraphs 1 through 29 as if fully set forth herein.

31. Defendant intentionally discriminated against Plaintiff and refused to promote Plaintiff on account of her race, gender and retaliation in violation of 42 U.S.C. 2000e-2(a)(1) and (16)(a).

32. Defendant intentionally discriminated against Plaintiff with respect to the terms and conditions of her employment, including but not limited to, compensation and promotion, based on her race in violation of 42 U.S.C. 2000e et seq., as amended.

33. Defendant's policies have resulted in the disparate treatment of Plaintiff.

34. As a direct and proximate result of the discriminatory and retaliatory conduct of the Defendant and its agents and/or employees, Plaintiff suffered humiliation, mental anguish and emotional distress and other forms of related damage.

35. By reason of Defendant's intentional discrimination, Plaintiff is entitled to all legal and equitable remedies available under Title VII, including but not limited to, back pay, front pay, compensatory and punitive damages, and attorneys' fees and costs.

## COUNT III

### Section 1981 – Deprivation of Civil Rights

36. The averments of paragraph 1 through 25 are incorporated herein by reference.

37. Defendant has intentionally discriminated against Plaintiff through its disparate treatment of Plaintiff, by denying her the same rights as are enjoyed by Caucasians employees and contractors in the performance of Plaintiff's employment relationship with Defendant, and to the enjoyment of all benefits, privileges, terms, and conditions of that relationship in violation of 42 U.S.C. 1981, as amended.

38. By reason of Defendant's discrimination, Plaintiff has suffered and is entitled to all legal and equitable remedies available, including but not limited to, all wages and benefits she would have received but for the discrimination, a position with Defendant with seniority or, in the alternative, front pay, compensatory and punitive damages, back pay, and attorneys' fees and costs.

## COUNT VI

### Section 1981 – Retaliation

39. The averments of paragraphs 1 through 28 are incorporated herein by reference.

40. Defendant's actions constitute a violation of the anti-retaliation provisions of Section 1981.

41. By reason of Defendant's discrimination, Plaintiff has suffered and is entitled to all legal and equitable remedies available, including but not limited to, all wages and benefits she would have received but for the discrimination, a position with Defendant with seniority or, in the alternative, front pay, compensatory and punitive damages, back pay, and attorneys' fees and costs.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this court issue a declaratory judgment that the acts and practices of Defendants complained of herein have violated the civil rights of Plaintiff.

1. Order Defendant to award Plaintiff actual damages for her lost wages, restoration of benefits, etc. and any other appropriate equitable relief;

2. A monetary judgment to compensate Plaintiff in the amount of Three Hundred Thousand Dollars ($300,000.00) in Compensatory Damages to compensate Plaintiff for the severe emotional distress and other damages inflicted upon her by Defendants;

3. A monetary judgment to compensate Plaintiff in the amount of Three Hundred Thousand Dollars ($300,000.00 in Punitive Damages to compensate Plaintiff for the severe emotional distress and other damages inflicted upon her by Defendants;

4. In addition, Plaintiff seeks an award of attorney's fees, expert witness fees, and any other cost incurred in pursuing this action, and such other and further relief as the law may provide or that this Court may deem just and proper.

### DEMAND JURY TRIAL

Plaintiff demands her right to trail by jury of her peers.

Respectfully submitted,

*Nadine Denise Mills*
Nadine Denise Mills
12404 Kingsview Street
Mitchellville, Maryland 20721
(301) 249-2987
(202) 781-2480