## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| NADINE D. MILLS | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: 06-0581 (PLF) |
| | ) | |
| DONALD WINTER | ) | |
| Secretary of the Navy | ) | |
| | ) | |
| Defendant. | ) | |

_____)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and LCvR 56.1, Defendant

Donald Winter, Secretary of the Navy, ("Defendant"), respectfully moves for summary judgment

on the ground that Plaintiffs cannot establish a *prima facie* case of reprisal discrimination.  In

support of this motion, Defendant respectfully refers the Court to the attached (1) statement of

undisputed material facts and (2) memorandum of points and authorities.  Because this is a

dispositive motion, Defendant has not sought Plaintiff's consent.  *See* LCvR 7(m).

The *pro se* Plaintiff should take notice that any factual assertions contained in the

attached memorandum in support of this motion and supporting exhibits may be accepted by the

Court as true unless Plaintiff submits her own affidavit or other documentary evidence

contradicting the assertions therein.  *See* Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992).

The *pro se* Plaintiff is also hereby advised that failure to respond to a dispositive motion

may result in the district court granting the motion and dismissing the case.  *See* Fox v.

Strickland, 837 F.3d 507, 509 (D.C. Cir. 1988).

A proposed Order consistent with the relief sought herein is attached.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____
QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

OF COUNSEL:

Department of Navy Agency Counsel
Dale Birdoff

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
NADINE D. MILLS                         )
                                        )
                Plaintiff,              )
        v.                              )        Case No: 06-0581 (PLF)
                                        )
DONALD WINTER                           )
Secretary of the Navy                   )
                                        )
                Defendant.              )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Donald Winter, Secretary of the Navy ("Defendant"), respectfully submits this

memorandum of points and authorities in support of his motion for summary judgment.

### STATEMENT OF CASE

Plaintiff, Nadine Mills, brings this complaint alleging retaliation related to a command-

wide reorganization in 2003.[1]  Specifically, plaintiff alleges that pursuant to a reorganization, her

_____

[1] Although plaintiff recites numerous alleged events that occurred between October 1999 and November 2002 (*see* ¶¶ 10-15, 17-19 of Amended Complaint), she does not appear to be seeking relief for these alleged events, as they are not included in Counts I-III.  Even if she is seeking relief for these alleged harms, these claims should be dismissed under Fed. R. Civ. P. 12(b)(6). In particular, although plaintiff raised the allegations of ¶¶ 10-15 in her formal administrative complaint of March 21, 2002, she did not file a timely civil action regarding these allegations, as required by 42 U.S.C. § 2000e-16(c).  After the agency dismissed plaintiff's 2002 complaint, she unsuccessfully appealed the dismissal to the EEOC, and then unsuccessfully sought reconsideration.  *Facts at ¶45.*  Although there is no record of when plaintiff actually received a copy of the reconsideration decision, the undisputed record shows that plaintiff had a copy of the reconsideration decision in her possession as December 14, 2004, the date she filed her motion for summary judgment before the EEOC AJ on her second complaint.  In fact, plaintiff appended a copy of this decision to that motion.  *Facts at ¶48.*  Plaintiff has offered no reason why she failed to timely file a civil action after receiving the May 18, 2004 EEOC decision on reconsideration. As such, her claims in ¶¶ 10-15 must be dismissed.

Further, plaintiff has failed to exhaust her administrative remedies with regard to the allegations

office was forced to reduce the number of civilian positions and that her GS-12 position was improperly abolished.  Though plaintiff was then placed into a priority placement program and ultimately returned to a permanent position, she maintains that the abolishment of her position (and related alleged harms) was retaliation for an EEO complaint that she filed in March, 2002.

Discovery closed on February 22, 2007.  *See Docket Entry 14*.  The case being ripe for review on the undisputed facts of the record, defendant now moves for summary judgment.

## STATEMENT OF FACTS

Defendant adopts as his statement of facts the Statement of Undisputed Material Facts appended hereto.

## STANDARD OF REVIEW

### A.    Motion to Dismiss

Under Rule 12(b)(6), a motion to dismiss should be granted only if the "Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief."  Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (*citing* Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).  When considering a motion to dismiss under Rule 12(b)(6), the Court must resolve all factual doubts in favor of the plaintiff and allow the plaintiff the benefit of all inferences.  *See* EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).   While plaintiff is entitled to all favorable inferences that can be drawn from those allegations, Warth v. Seldin, 422 U.S. 490, 501 (1975), the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint.

---

in ¶¶ 17-19 of her Amended Complaint.  Plaintiff never raised these allegations in any administrative complaint, and, as such, she is precluded from seeking relief on them in a civil action.

2

Kowal, 16 F.3d at 1276.  Further, while the court must accept plaintiff's allegations of fact as true, the court is not required to accept as correct the conclusions plaintiff would draw from such facts.  Taylor v. Federal Deposit Insurance Corp., 132 F.3d 753, 762 (D.C. Cir. 1997); National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996).  "Nor must the court accept legal conclusions cast in the form of factual allegations."  Kowal, 16 F.3d at 1276; *see also* Papasan v. Allain, 478 U.S. 265, 286 (1986).

Where matters outside the pleadings are presented to the court in support of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the motion shall be treated as a motion for summary judgment and disposed of under Fed. R. Civ. P. 56.  *Fed. R. Civ. P. 12.*

### B.    Summary Judgment

In 1986, the Supreme Court issued three opinions that clarified the standards governing consideration of motions for summary judgment under Fed. R. Civ. P. 56.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex at 322; Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995); Molerio v. FBI, 749 F.2d 815, 823 (D.C. Cir. 1984).  Where no genuine dispute exists as to any material fact, summary judgment is required.  Anderson, 477 U.S. 242 (1986).

A genuine issue of material fact is one that could change the outcome of the litigation. *Id.* at 247.  The party moving for summary judgment need not prove the absence of an essential

element of the nonmoving party's case. Celotex, at 325. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the (Court) – that there is an absence of evidence to support the non-moving party's case." *Id.* Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita, 475 U.S. at 586. Fed. R. Civ. P. 56 requires the party opposing summary judgment go beyond the pleadings, and by affidavits, depositions, answers to interrogatories or admissions set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Banks v. C & P Tel. Co., 802 F.2d 1416 (D.C. Cir. 1986). Thus to avoid summary judgment, the Plaintiff must state specific facts or present some objective evidence that would enable the court to find an entitlement to relief.

In an opinion issued the same day as Celotex, the Supreme Court explained the circumstances where summary judgment is appropriate: "if the evidence is merely colorable . . . or is not sufficiently probative . . . summary judgment may be granted . . . (T)he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Unsupported speculation is not enough to defeat a summary judgment motion; the existence of specific material evidentiary facts must be shown. Fed. R. Civ. P. 56(e) (the nonmoving party may not rest on mere allegations but "must come forward with 'specific facts showing there is a genuine issue for trial."). *See also* Hayes v. Shalala, 902 F.Supp. 259, 263 (D.D.C. 1995) (opposition to summary judgment must consist of more than mere unsupported allegations or denials); Johnson v. Digital Equip. Corp., 836 F.Supp. 14, 18 (D.D.C. 1993) (evidence that is

4

merely colorable or not sufficiently probative is insufficient to defeat summary judgment); Baton
v. Powell, 912 F.Supp. 565, 578 (D.D.C. 1996).

     The mere existence of some factual dispute between the parties will not defeat an
otherwise properly supported motion for summary judgment; the requirement is that there be no
genuine issue of material fact. *See* Anderson, 477 U.S. at 247-248. Perhaps most significantly,
the Court authorized weighing the evidence at the summary judgment stage of litigation, stating
that the "purpose of summary judgment is to 'pierce the pleadings, and to assess the proof in
order to see whether there is a need for a trial.'" *Id.* (citation omitted). "[T]here is no issue for
trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict
for that party." *Id.* at 249-250 (citations omitted). If the evidence is "merely colorable, or is not
significantly probative," or where the record taken as a whole could not "lead a rational trier of
fact to find for the nonmoving party, summary judgment is proper." *Id.*; Matsushita, 475 U.S. at
587.

     Thus, the non-movant cannot manufacture genuine issues of material fact with "some
metaphysical doubt as to the material facts," (Matsushita at 586), or with "conclusory allegations
. . . unsubstantiated assertions, . . . or a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d
1069, 1075 (5th Cir. 1994) (citations omitted). Importantly for this case, "[b]y pointing out the
absence of evidence to support the nonmoving party's case, the moving party can demonstrate
that there is no genuine issue as to any material fact, therefore entitling it to summary judgment."
Shelborne v. Runyon, 1997 WL 527352 at **3, *citing* Celotex, 477 U.S. at 325.

     In Celotex, the Supreme Court further instructed that the "(s)ummary judgment procedure
is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the

Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Celotex</u>, 477 U.S. at 327 (*quoting* Fed. R. Civ. P. 1). A court should grant summary judgment if the moving party submits affirmative evidence that negates an essential element of the nonmoving party's claims or by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. <u>Celotex</u>, 477 U.S. at 331.

### C.    Deference Due to Agency Decisions

Before turning to the merits, a brief word is in order concerning the scope of review in employment discrimination cases. Though plaintiff might wish it otherwise, the employment discrimination statutes did not transform federal courts into review boards for local employment decisions. "Title VII, it bears repeating, does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'" <u>Barbour v. Browner</u>, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (<u>quoting</u> <u>Dale v. Chicago Tribune Co.</u>, 797 F.2d 458, 464 (7th Cir. 1986), <u>cert. denied</u>, 479 U.S. 1066 (1987)). To the contrary, a court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" <u>Fischbach v. District of Columbia Dep't of Corrections</u>, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting <u>Milton v. Weinberger</u>, 696 F.2d 94, 100 (D.C. Cir. 1982)).

### ARGUMENT

### A.    Plaintiff Failed To Exhaust Her Administrative Remedies With Regard to Her Allegation That She was Denied a Promotion to the GS-13 Level in May 2003

The exclusive remedy for a federal employee who claims race or sex discrimination is Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*, and the plaintiff

must comply with its administrative exhaustion requirements as a precondition to her suit. *See* Bayer v. Department of Transportation, 956 F.2d 330, 332 (D.C. Cir. 1992), *citing* Brown v. General Services Administration, 425 U.S. 820 (1976). Only upon exhaustion of administrative proceedings is a complainant entitled to a trial *de novo*. Chandler v. Roudebush, 425 U.S. 840 (1976); Saksenasingh v. Department of Education, 126 F.3d 347, 350 (D.C. Cir. 1997). Claims that a party failed to exhaust her administrative remedies are properly raised via a dispositive motion raised pursuant to Rule 12(b)(6). Keith v. The United States Railroad Retirement Board, 2003 U.S. Dist. Lexis 17067 (D.D.C. 2003). *see also* Smith-Haynie v. District of Columbia, 155 F.3d 575 (D.C. Cir. 1998).

In the context of federal discrimination claims, administrative "exhaustion" requires the plaintiff to file a timely administrative charge. Kizas v. Webster, 707 F.2d 524, 543 (D.C. Cir. 1983). Pursuant to authority delegated in these laws, the EEOC has promulgated regulations governing the applicable administrative remedies. *See* 29 C.F.R. 1614 *et seq*. EEOC regulations require that an employee who believes that she has been discriminated against by a federal agency must contact an EEO counselor within 45 days of the date of the matter alleged to be discriminatory, or, in the case of a personnel action, within 45 days of the effective date of the action. 29 C.F.R. 1614.105(a)(1). *See* Bayer v. Department of Transportation, *supra,* 956 F.2d 330, 332 (D.C. Cir. 1992). This filing requirement is subject to equitable tolling. Currier v. Radio Free Europe, 159 F.3d 1363, 1367 (D.C. Cir. 1999); Jarrell v. United States Postal Service, 753 F.2d 1088, 1091-92 (D.C. Cir. 1985).

Equitable tolling, however, is proper "only in extraordinary and carefully circumscribed instances." Mondy v. Secretary of the Army, 845 F.2d 1051, 1057 (D.C. Cir. 1988). Thus,

tolling was proper in <u>Keith v. The United States Railroad Retirement Board</u>, 2003 U.S. Dist.

Lexis 17067 (D.D.C. 2003), where the plaintiff diligently pursued her case but filed 92 days late,

in part, because the Agency mailed the final agency decision to the wrong address and could not

prove that it had mailed it to the plaintiff's attorney.  Equitable tolling is not appropriate for mere

garden variety claims of inexcusable neglect.  <u>Irwin v. Department of Veterans Affairs</u>, 498 U.S.

89 (1990).  In <u>United States v. Saro</u>, 252 F.3d 449 (D.C. Cir. 2001) (a case under the

Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2255) equitable tolling was improper

when plaintiff waited 3 months to file (after learning that his attorney had failed to file the

motion) and offered no reason for his delay.  In <u>Smith-Haynie v. District of Columbia</u>, 155 F.3d

575 (D.C. Cir. 1998) a mere allegation of confusion over when the plaintiff could sue was

insufficient to toll the deadline.

In the instant case, when plaintiff filed her administrative complaint of July 23, 2003, she

never alleged that she was denied a promotion to the GS-13 position for which Ms. Paige was

selected.  *Defendant's Statement of Material Undisputed Facts ("Facts") at ¶ 47.*  Rather, she

claimed only that Rakosky and Davis had discriminated and retaliated against her when they

decided to abolish her position and create, instead, a GS-12 facilities position for which they

knew her to be less qualified than Paige.  *Id.*[2]  In fact, the agency accepted for processing two

claims – <u>i.e.</u>, that plaintiff was discriminated and retaliated against when:  (1) the position she

encumbered was eliminated from the FY 2004 organization and (2) she was not selected for the

GS-12 facilities position.  *Id. at ¶47.*  Although plaintiff was represented by counsel at the time,

---

[2] Nor did plaintiff ever raise an allegation of non-selection for a GS-13 position when she
initially contacted an EEO counselor prior to filing her formal complaint.  Facts at ¶46.

she did not object to the framing of the issues in the complaint, although she was given the opportunity to do so. *Id.*

Thereafter, the formal complaint was investigated by the agency, and the accepted issues were then presented by plaintiff to an EEOC AJ. *Facts at ¶48.* After the EEOC AJ issued a decision in the agency's favor on these allegations, the agency issued a final decision finding that there had been no discrimination or retaliation when management eliminated the position encumbered by plaintiff and when plaintiff was not selected for the GS-12 position. *Facts at ¶49.*

Accordingly, based on all of the above, it is clear that at no point in the administrative processing of her complaint did plaintiff allege that she had unlawfully been denied a GS-13 position. It was only when plaintiff filed her Amended Complaint on August 18, 2006 that she added a claim of non-promotion to the GS-13 level. *See Docket Entry 11.* Accordingly, based on all of the above, since plaintiff failed to raise an allegation of non-promotion to the GS-13 level during the administrative processing of her complaint, she is precluded from raising this issue *de novo* in district court.

**B.    Summary Judgment Is Appropriate Because Plaintiff Cannot Establish A Prima Facie Case of Reprisal[3]**

To establish a prima facie case of reprisal, plaintiff must show that (1) she engaged in statutorily protected activity; (2) that she was subjected to adverse action by her employer; and (3) that there exits a causal link between the adverse action and the protected activity. Mayers v.

---

[3] Although plaintiff's amended complaint raises race, sex and age discrimination, in addition to reprisal for prior EEO activity, it is undisputed that plaintiff has abandoned her discrimination claims and is proceeding solely with her claim of reprisal. *Facts at ¶50.*

Laborers' Health and Safety Fund of North America, 478 F.3d 364 (D.C. Cir. 2007); Prince v. Rice, 2006 U.S. Dist. LEXIS 66077 (September 18, 2006); Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985) (quoting McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984)); Brown v. Brody, supra, 199 F.3d at 452. The parties agree that by filing a prior complaint of discrimination, plaintiff engaged in protected activity. However, the defendant respectfully submits that plaintiff did not suffer from an adverse personnel action that had a causal connection to her prior discrimination complaint. In the reprisal context, an adverse action is defined as one that could conceivably dissuade a reasonable worker from making or supporting a charge of discrimination. See Burlington Northern & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006); Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006). To be considered adverse, the action must constitute an "'objectively tangible harm,'" and the defendant's conduct must be judged "from the perspective of a reasonable person in the plaintiff's position 'considering all the circumstances.'" Brown v. Snow, 407 F. Supp. 2d 61, 65 (D.D.C. 2005) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, (1998). A court must be careful to "separate significant from trivial harms." Burlington, supra, 126 S. Ct. at 2415. Merely because an employee has engaged in statutorily protected action does not mean that the employee is "immunize[d] . . . from those petty slights or minor annoyances that often take place at work and that all employees experience." Rochon, 438 F.3d at 1219 (internal quotation marks omitted). Instead, the harm suffered by the plaintiff must be "material or significant." Coleman v. District of Columbia, 2006 WL 2434926, *5 (D.D.C.,2006).

10

### 1.    Plaintiff Did Not Suffer Any Objectively Tangible Harm

Plaintiff suffered no "objectively tangible" harm as a result of any action taken by management.  In particular, on June 29, 2003, after plaintiff was not selected for any position in the FY 2004 organization, she was reassigned from her GS-343-12 Management Analyst position in SEA 102 to a GS-343-12 Management Analyst position in SEA 10.  *Facts at ¶39.*  Plaintiff was assigned to support her former first-level supervisor, Rakosky, in SEA 102.  *Facts at ¶40.*  Both the position plaintiff held prior to the June 2003 reassignment and the position she held after the reassignment were at the same grade (GS-12) and in the same series (343).  *Facts at ¶¶ 1, 39.*  Plaintiff does not allege that she suffered any loss of pay or any benefits associated with her prior position.

In fact, plaintiff does not allege that she suffered any harm whatsoever as a result of this reassignment.  Unlike the plaintiff in Holcomb v. Powell, 433 F.3d 889 (D.C. Cir. 2006), plaintiff does not allege that her job duties changed in any material way.  In fact, she concedes that she performed the same duties after June 29, 2003 that she performed prior to her reassignment.  *Facts at ¶40.*  Nor does plaintiff allege any relocation to a significantly less desirable work space, as the plaintiff did in Prince v. Rice, supra, 2006 U.S. Dist. LEXIS 66077 (September 18, 2006).  In fact, plaintiff's physical location remained unchanged.  She sat in the same office space both prior to and after her reassignment, and she continued to receive her daily work assignments from Rakosky.  *Facts at ¶40.*

Nor does plaintiff claim that she lost any promotional opportunities as a result of this reassignment.  In fact, both the GS-343-12 position she held prior to June 29, 2003 and the GS-343-12 position she held while in the NPP were at the "full performance level."  *Facts at ¶2, 40.*

11

Plaintiff does not allege any facts in support of a claim that she applied for a competitive promotion after June 29, 2003 but was denied the same because of her reassignment. Nor does she allege any facts in support of a claim that she was about to be promoted *via* accretion of duties but was denied the same because of her reassignment.

### 2. There is No Causal Connection Between Plaintiff's Prior EEO Activity And The Alleged Retaliatory Acts

Even if plaintiff could meet the second prong of the prima facie test, plaintiff still cannot establish a prima facie case of retaliation because she cannot a establish a causal connection between her prior protected activity and her June 29, 2003 reassignment.

The D.C. Circuit has "long held that a 'causal connection... may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse . . . action took place shortly after that activity.'" Rochon v. Gonzales, 438 F.3d at 1220 (citing Mitchell v. Baldridge, 245 U.S. App. D.C. 60, 759 F.2d 80, 86 (D.C. Cir. 1985)). In Brodetski v. Duffey, 141 F. Supp. 2d 35 (D.D.C. 2001), this Court commented that "although courts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for establishing a causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length." *Id.* at 43 (citing Devera v. Adams, 874 F. Supp. 17, 21 (D.D.C. 1995) (holding that "an eight month interval between the two events is not strongly suggestive of a causal link"); Castle v. Bentsen, 867 F. Supp. 1, 3 (D.D.C. 1994) (holding that three to five months is a short enough time lapse between EEO activity and act of reprisal to establish a causal connection); Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C. 1992) (holding that almost a year "between

12

plaintiff's EEO activity and the adverse employment decision is too great [a length of time] to support an inference of reprisal"); Goos v. Nat'l Ass'n of Realtors, 15 F. Supp. 2, 3-4 (D.D.C. 1989) (holding that five weeks constituted a short enough time lapse to establish a causal connection).[4]

In the instant case, plaintiff's reassignment to a GS-12 position in the NPP occurred on June 29, 2003.  *Facts at ¶39*.  Her prior EEO contact occurred in January 2002.  *Facts at ¶45*. As such, under established case law, the 18-month interval between these two events is too great to support an inference of reprisal.  Even if this court were to view the alleged retaliatory event as plaintiff's non-selection for a GS-13 position on May 8, 2003 (the date Paige was selected), the time period between this event and plaintiff's prior EEO activity in January 2002 (i.e. 13 months) is still too great to support an inference of reprisal.

---

[4] In Clark County School District v. Breeden, 532 U.S. 268, 149 L. Ed. 2d 509, 121 S. Ct. 1508 (2001) (per curiam), the Supreme Court stated that "the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that temporal proximity must be 'very close[.]'" Id. at 273 (citing O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (holding a 3-month period to be insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (holding a 4-month period to be insufficient)).  The cases cited by the Breeden Court seem to suggest that if a plaintiff relies upon temporal proximity alone to establish causation, the time span must be under three months. See O'Neal, 237 F.3d at 1253 (noting the Tenth Circuit has found "that a one and one-half month period between the protected activity and adverse action may, by itself establish causation . . . [but] that a three- month period, standing alone, is insufficient to establish causation." However, the Tenth Circuit concluded that it did not have to address whether a two months and three weeks period was sufficient, by itself, to establish causation because there was additional evidence from which a reasonable juror could find causation.); ONEOK, 120 F.3d at 209 (affirming district court's conclusion that "three-month period of time between [plaintiff's] protected activity and termination was insufficient to establish a causal connection."); Hughes, 967 F.2d at 1174-75 (affirming district court's conclusion that four-month period between protected activity and adverse action, by itself, did not satisfy causation element for retaliation claim).

Further, there is no evidence of any adverse treatment in the time period between plaintiff's prior EEO activity and these alleged retaliatory acts. *See* Buggs v. Powell, 293 F.Supp.2d 135, 149 (D.D.C. 2003) ("'Evidence of discriminatory or disparate treatment in the time period between the protected activity and the adverse employment action can be sufficient to show a causal connection.'") (quoting Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003) (internal citations omitted). Plaintiff lodged no other complaints regarding her supervisors during this interval, and Rakosky and Davis even gave plaintiff a monetary award for her performance in July 2002. *Facts at ¶7.*

**C.    Plaintiff Fails To Rebut Defendant's Legitimate Non-Retaliatory Reasons**

Even if plaintiff could establish a prima facie case of retaliation, the agency has articulated legitimate, non-retaliatory reasons for its actions that have not been rebutted by plaintiff. In particular, plaintiff has failed to rebut the agency's reasons for:  (1) eliminating the position encumbered by plaintiff; (2) restructuring the SEA 102 organization to include a third GS-343-13 Program Analyst position rather than a GS-301-12 Facilities Program Coordinator position; and (3) selecting Ms. Paige for the GS-13 position.

**1.    Elimination of the GS-343-12 Position Encumbered By Plaintiff**

Defendant has articulated legitimate, non-retaliatory reasons for eliminating the GS-343-12 position encumbered by plaintiff. As a result of mandated reductions at NAVSEA HQ, SEA 102 was required to reduce its number of civilian employees by four in the FY 2004 organization. *Facts at ¶¶ 8, 12.* Mr. Davis, in consultation with Ms. Rakosky, then determined which positions should comprise the FY 2004 organization by considering each position in terms of the office's current functions and the projected future functions of the office for FY 2004.

14

*Facts at* ¶*14*. After determining those functions SEA 102 would be required to perform in FY 2004, as well as those it would no longer be needed to perform, Mr. Davis initially proposed a FY 2004 organization that would include one GS-301-12 Facilities Program Coordinator position and two GS-343-13 Program Analyst positions. *Facts at* ¶¶ *14, 16.*

Mr. Davis decided that the GS-343-12 Management Analyst position encumbered by plaintiff should be eliminated based on several factors. Mr. Davis considered the functions of the GS-343-12 position, which included planning for the transition to NMCI, inventory or property management, and managing the loading dock. Davis determined that once the transition to NMCI was completed in approximately December 2003, those functions of the position with regard to NMCI planning would be greatly reduced. *Facts at* ¶*17*. NMCI planning duties comprised fifty percent of the duties of the GS-343-12 position. *Id.*

Mr. Davis also determined that those functions of plaintiff's position with regard to inventory management already had been reduced significantly due to recent changes to DPAS and the transition of responsibility for computer assets to NAVSEA's Chief Information Officer. *Facts at* ¶ *18*. The recent changes required the inventory of only high-value assets, such as computers, whereas, in the past, DPAS had required NAVSEA to inventory all property, including chairs, tables, and coat racks. *Id.* These changes resulted in the elimination of about fifty percent of the functions of the position. *Id.*

Finally, Davis concluded that the only undiminished remaining function of the GS-343-12 position was management of the loading dock and that this function could not support a GS-12 billet. *Facts at* ¶ *19.* Davis determined that he could reassign the loading dock

responsibilities to one of the GS-7 positions and the remaining inventory functions of the GS-12

Management Analyst position to one of the GS-11 positions. *Id.*

Plaintiff does not dispute that under the realignment, SEA 102 was required to reduce the

number of its civilian billets by 4. *Facts at ¶12.* Further, she does not dispute any of the facts

underlying Mr. Davis' and Ms. Rakosky's rationale for eliminating the GS-343-12 position.

*Facts at ¶¶ 17-18.* In particular, she acknowledges that the functions of her position had been

reduced significantly – in particular, the NMCI responsibilities and the inventory management

functions. *Id.* Plaintiff does not claim that the remaining functions of the position could support

a GS-12 or that there was no need for facilities work to be accomplished in SEA 102's FY 2004

organization.

Accordingly, based on all of the above, plaintiff has failed to rebut the agency's

legitimate, non-retaliatory reasons for eliminating the GS-343-12 position in the FY 2004

organization.

 **2. Decision To Fill A GS-13 Position Rather than a GS-12 Position and
   Selection of Ms. Paige For the Position**

Defendant has also articulated legitimate, non-retaliatory reasons for its decision to fill a

second non-supervisory GS-13 position rather than the GS-12 position originally advertised and

for its corresponding decision to select Ms. Paige for that position.   Plaintiff has failed to rebut

any of these reasons.

The uncontested evidence will show that Mr. Davis requested permission to create a

second non-supervisory GS-13 position because he believed that this was the best way to

reorganize the facilities branch of SEA 102. *Facts at ¶¶ 31-32.* He did not initially propose a

third GS-13 position because "grade controls" prohibited him from having more than two GS-13s. *Facts at ¶13.*

      After discovering that Ms. Paige was properly on the non-competitive certificate for the GS-13 positions and learning that the panel recommended her highly for a GS-343-13 position, Mr. Davis decided to seek permission from his superior, Ms. Flynn, to create an additional non-supervisory GS-13 position. *Facts at ¶¶ 31-32.* He advised Ms. Flynn that having two non-supervisory GS-13 branch heads reporting to a supervisory GS-13 was the best way to accomplish SEA 102's facilities mission. *Id.* Each non-supervisory GS-13 would serve as a branch head and each would have responsibility for one of the two NAVSEA buildings at the Washington Navy Yard. *Id.* Mr. Davis told Ms. Flynn that there was sufficient facilities work at the GS-13 level to justify the creation of three GS-13s. *Facts at ¶ 31.*

      Mr. Davis also advised Ms. Flynn that he wanted to select Ms. Paige for a GS-13 position. In particular, he told Ms. Flynn that the panel had recommended Ms. Paige highly and that she was eligible for a non-competitive lateral reassignment to the GS-13 level. *Facts at ¶33.* Mr. Davis advised that Ms. Paige had previously successfully competed for and had served as a GS-13. *Id.*

      Ms. Flynn told Mr. Davis that she would have to obtain permission from Pete Brown to create the additional GS-13 position, and that the additional GS-13 would have to be classified by the Human Resources office. *Facts at ¶34.* If Mr. Brown approved the GS-13 position, Ms. Flynn advised that Mr. Davis could not also fill the GS-12 position. *Id.*

Subsequently, Mr. Brown approved the creation of the second non-supervisory GS-13 position, *Facts at ¶ 35*, and the position was classified by the Human Resources office. *Id.* Davis then selected Paige for one of the two non-supervisory GS-13 positions. *Facts at ¶ 36*.

In order for plaintiff to prevail, she would have to demonstrate that management decided to fill a second non-supervisory GS-13 position, rather than the GS-12 position, in order to deprive her of the GS-12 position. However, there is simply no evidence to support this claim. First, as stated above, Mr. Davis had a legitimate need for a second non-supervisory GS-13 Program Analyst. *Facts at ¶ 31-32*. There was sufficient facilities work at the GS-13 level to justify the additional GS-13 position. *Facts at 31*. Plaintiff does not claim that there was no need for a second non-supervisory GS-13 position. Rather, she simply states that she does not understand why management decided to establish this position and not a GS-12 position. *Mills Depo at 63-64*.

Second, Mr. Davis obtained permission from Mr. Brown to create the second non-supervisory GS-13 position, and Human Resources classified it at the GS-13 level. *Facts at ¶35*. Plaintiff does not claim that the position was not properly approved by Mr. Brown, nor does she claim that it was improperly classified at the GS-13 level.

Third, plaintiff introduced no evidence that she would have been selected for the GS-12 position had Mr. Davis not sought and obtained permission to create the second non-supervisory GS-13 position. In fact, plaintiff concedes that she was not as qualified as Ms. Paige for the GS-12 position. *Facts at ¶33*.

Finally, even if this court were to entertain plaintiff's claim that she was unlawfully denied a promotion to the GS-13 level, there is simply no evidence in support of this claim.

18

Since plaintiff concedes that she was not eligible for a lateral reassignment to a GS-13 position, *Facts at ¶29*, she can only prevail on this claim if she can establish that the agency (1) was required to request a competitive certificate for the GS-13 positions and (2) that she would have been selected for a GS-13 position over Ms. Paige.

Plaintiff has introduced no evidence that the agency should have requested a competitive certificate for the GS-13 positions. In fact, the undisputed evidence shows that under the realignment guidelines, merit promotion (i.e., competitive) procedures could not be used unless an organization was unable to fill a position *via* lateral reassignment. *Facts at ¶24*. Nor does plaintiff assert any facts to support a claim that SEA 102 should have requested a competitive certificate. *Mills Depo at 57, 68*.

Moreover, plaintiff has introduced no evidence that had competitive procedures been used, she would have been selected for a GS-13 position over Ms. Paige. In fact, since she concedes that she was less qualified than Ms. Paige for the GS-12 Facilities Coordinator position, she cannot logically argue that she was more qualified than Ms. Paige for a GS-13 facilities position.

Accordingly, based on all of the above, plaintiff has failed to rebut the agency's legitimate, non-retaliatory reasons for its decision to create a second non-supervisory GS-13 position rather than a GS-12 position, and to select Ms. Paige for that position.

### 3.    Plaintiff's Reassignment to the NPP

Finally, plaintiff alleges that she was retaliated against when she was reassigned to the NPP and her "employment status" was "indeterminate" for a year, "in violation of [the agency's] own personnel procedures." *Amended Compl at ¶¶ 26-27; Count I.*

19

It does not appear that plaintiff is alleging that her placement into the NPP was inconsistent with agency guidelines that provided that if an employee was not selected for assignment to a FY 2004 position, he/she would be reassigned to the NPP. Rather, plaintiff appears to claim that she was treated adversely when other employees were reassigned out of the NPP before her. However, plaintiff has introduced no evidence that she was treated any differently than any other employee in the NPP or that any delay occurred because she had engaged in prior EEO activity. Moreover, as set forth above, plaintiff has failed to introduce any evidence that she suffered any harm while in the NPP.

## CONCLUSION

Based upon the foregoing, Defendant respectfully requests that the Court grant summary judgment as a matter of law on all claims herein and dismiss Plaintiff's complaint with prejudice.

Respectfully submitted,

\_\_\_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

\_\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

\_\_\_/s/_____
QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

OF COUNSEL:
Department of Navy Agency Counsel
Dale Birdoff

20

## CERTIFICATE OF SERVICE

I certify I caused of the foregoing Defendant's Motion for Summary Judgment and attachments to be served by first class mail upon *pro se* plaintiff at:

> **NADINE MILLS**
> 5006 Woodford Lane
> Upper Marlboro, MD 20772

on this 2nd day of April, 2007.

_____/s/_____
QUAN K. LUONG
Special Assistant United States Attorney