**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NADINE D. MILLS,
Plaintiff,
v.
DONALD WINTER
Secretary of the Navy
Defendant.

Case No: 06-0581 (PLF)

**STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Rule 7.1(h), Defendant respectfully submits this statement of material facts as to which it contends there is no genuine dispute. The statements below are established by the administrative record in this case.

**BACKGROUND**

1. During the relevant time period, plaintiff Nadine Mills was employed as a GS-343-12 Management Analyst in the Facilities Management Division (SEA 102) of the Corporate Operations Directorate (SEA 10) at the Naval Sea Systems Command (NAVSEA) Headquarters (HQ), Department of the Navy, at the Washington Navy Yard, D.C. *Exhibit A – Deposition of Nadine Mills ("Mills Depo") at 8; Exhibit B – Report of Investigation ("ROI") at 2, 82-86.* Plaintiff had no supervisory duties at the time. *Mills Depo at 12*.

2. The "full performance level" (FPL) of plaintiff's position was a GS-12. *Mills Depo at 73*; *ROI at 82.*

3. At all times relevant to this complaint, Mary Lou Rakosky, served as the Deputy Director of SEA 102 and also as the head of the Business Management Branch of SEA 102.

*Exhibit C – Declaration of Michael K. Davis ("Davis Declaration") at* ¶*3*; *ROI at 49*. Ms. Rakosky was plaintiff's first-level supervisor. *Mills Depo at 9*; *Davis Declaration at* ¶*3*.

4. At all times relevant to this complaint, Michael Davis served as the Director of SEA 102 and was plaintiff's second-level supervisor. *Davis Declaration at* ¶*2; Mills Depo at 10*.

5. At all times relevant to this complaint, Bonita Flynn served as the Deputy Commander for Corporate Operations (SEA 10). *Davis Declaration at* ¶*2*. Davis reported to Flynn. *Id.*

6. At all times relevant to this complaint, Gary Humes served as the Deputy Director of SEA 10. *Davis Declaration at* ¶*2*.

7. In June 2002, Ms. Rakosky recommended and Mr. Davis approved an award for plaintiff in the amount of $750.00. *Davis Declaration at* ¶*4; Mills Depo at 78*.

8. On July 15, 2002, Pete Brown, NAVSEA's Executive Director (SEA 00B), announced that civilian staffing reductions of eighteen percent or greater were likely at NAVSEA HQ and Program Executive Offices (PEOs). *Davis Declaration at* ¶*5; ROI at 131*.

9. In August 2002, Mr. Brown provided an update on the reductions that would be required for fiscal year (FY) 2004. *ROI at 132*.

10. In December 2002, Mr. Brown issued a memorandum outlining guidelines for staffing positions in the FY 2004 organization. *Davis Declaration at* ¶ *6*. The guidelines provided for some management directed reassignments (MDRs), but for the majority of positions, the guidelines provided for "competitions" for lateral reassignment to positions in the FY 2004 organization. *Id.*

11. The guidelines described what would occur after completion of the "competitions" for lateral reassignments. It was anticipated that some employees would not be selected for lateral reassignments and would thus occupy positions which were to be abolished by the end of FY 2004. *Davis Declaration at ¶7*. Those employees would be placed in positions in the NAVSEA Placement Program (NPP) and would be realigned to the Directorate which was most closely associated with their skills. *Id.* It was further anticipated that as vacancies arose in continuing positions in approved FY 2004 staffing plans, NPP members would be provided mandatory priority lateral reassignment into those positions for which they qualified. *Id.* Only if an employee in the NPP was not placed into a continuing FY 2004 position, would he/she face the possibility of a reduction-in-force (RIF). *Id.*

12. As a result of these mandated reductions, SEA 102 was required to reduce its number of civilian employees by four. *Davis Declaration at ¶ 8; Mills Depo at 28-30*. At the time, there were 16 civilian employees in SEA 102 including two GS-12 employees. *Davis Declaration at ¶8; ROI at 50, 147*. Plaintiff held one of the GS-12 positions; the other was held by Lynnelle Paige, who was serving as a GS-301-12 Office Facilities Specialist. *Davis Declaration at ¶8*.

13. During this same time period, all offices in SEA 10, including SEA 102, were also subject to "grade controls." *Davis Declaration at ¶9*. In particular, SEA 102 was advised that it could only have two GS-13s and one GS-12 in its FY 2004 organization. *Id.*

14. In order to accomplish the mandated reduction of civilian personnel in SEA 102, Mr. Davis, in consultation with Ms. Rakosky, considered each position in terms of the office's current functions and the projected future functions of the office for FY 2004. *Davis Declaration*

*at ¶ 10; ROI at 50; ROI Tr. at 60*. After determining those functions SEA 102 would be required to perform in FY 2004, as well as those it would no longer be needed to perform, Mr. Davis proposed a staffing plan that included one GM-343-15; one GS-343-14; two GS-343-13s; one GS-301-12; five GS-11s; and two GS-2005-7s. *Davis Declaration at ¶10*. One of the GS-13 positions would be a supervisory position. *Id.*

15. Mr. Davis asked two of his employees, Earl Bradford and Sam Height, to begin drafting new position descriptions for the 12 civilian positions that would comprise the FY 2004 organization. *Davis Declaration at ¶10*.

16. There was a continued need in FY 2004 for SEA 102 employees to perform facilities work. *Davis Declaration at ¶11; Mills Depo at 51-52*. Mr. Davis decided to create three positions to perform the facilities work – one GS-301-12 Facilities Program Coordinator position, and two GS-343-13 Program Analyst positions. *Davis Declaration at ¶11*. One of the two GS-13s would be supervisory. *Id.*

17. Mr. Davis determined that the SEA 102 organization did not have a significant continued need for an individual to perform the functions of the GS-343-12 Management Analyst position encumbered by plaintiff. *Davis Declaration at ¶12*. The functions of the GS-343-12 position included planning for the transition to the Navy-Marine Corps Intranet (NMCI), inventory or property management, and managing the loading dock. *Davis Declaration at ¶12; ROI at 50; ROI Tr. at 18-20, 56*. Once the transition to NMCI was completed in approximately December 2003, those functions of the GS-343-12 position with regard to NMCI planning would be greatly reduced. *Davis Declaration at ¶12*; *Mills Depo at 41-42*; *ROI at 50*; *ROI Tr. at 58, 61*. The NMCI duties comprised about fifty percent of the duties of the GS-343-12 position.

*ROI at 50*.

18. Mr. Davis also determined that those functions of the GS-343-12 position with regard to inventory management already had been reduced significantly. First, the functions had been reduced due to recent changes to the Defense Property Accounting System (DPAS) and the transition of responsibility for computer assets to SEA 00I, NAVSEA's Chief Information Officer. *Davis Declaration at ¶13; Mills Depo at 41; ROI Tr. 56-58*. Previously, DPAS had required NAVSEA to inventory all property, including chairs, tables, and coat racks. *Davis Declaration at ¶13; Mills Depo at 17-23, 41-42; ROI Tr. at 56-58*. However, recent changes to DPAS required the inventory of only high-value assets, such as computers. *Davis Declaration at ¶13; Mills Depo at 17-23, 41-42; ROI at 50; ROI Tr. at 56-58.* This change resulted in the elimination of approximately fifty percent of the functions of the GS-343-12 position. *ROI at 50*.

19. Mr. Davis concluded that the only undiminished remaining function of the GS-343-12 position was management of the loading dock and that this function could not support a GS-12 billet. *Davis Declaration at ¶14; ROI Tr. at 58, 60*. Mr. Davis could reassign the loading dock responsibilities to one of the GS-7 positions and the remaining inventory functions of the GS-343-12 Management Analyst position to one of the GS-11 positions. *Davis Declaration at ¶14*.

20. In mid-February 2003, Ms. Flynn approved Mr. Davis' proposed staffing plan for SEA 102's FY 2004 organization. *Davis Declaration at ¶15*.

21. In late February 2003, Mr. Davis met individually with each employee in SEA 102 to discuss the realignment. *Davis Declaration at ¶17*. He met with those individuals who,

consistent with Mr. Brown's guidance, would be placed into positions *via* management directed reassignments. *Id.* He also met with those individuals who would be "competing" for lateral reassignment into positions in the FY 2004 organization. *Id.* Davis first met with these employees individually and then by grade. *Id.* In particular, Davis met with both plaintiff and Lynnelle Paige, both of whom were GS-12s and would be "competing" for lateral reassignment to the GS-12 position. *Id.* Davis advised both plaintiff and Paige that the GS-12 position in the FY 2004 organization would be in the area of facilities management, and he described some of the duties of the position. *Id.*

22. Consistent with the December 3, 2002 guidance from Mr. Brown, SEA 102 effected management directed reassignments of five SEA 102 employees into five of the 12 positions in the FY 2004 organization. *Davis Declaration at ¶18*. Specifically, Mr. Davis was reassigned into the GM-343-15 position; Ms. Rakosky was reassigned into the GS-343-14 position; Darrel Dreher was reassigned into the GS-2030-11 position; and Tawanna Tobias and James Hiepler were each reassigned into a GS-2005-07 position. *Id.*

23. During this time period, NAVSEA HQ employees were strongly encouraged to submit their resumes to appropriate "open continuous vacancy announcements" in the Standard Automated Inventory Referral System (STAIRS) in order to be considered for noncompetitive lateral assignment to positions in the new FY 2004 organization. *Davis Declaration at ¶16*. Plaintiff updated her resume in STAIRS. *Mills Depo at 42-43*.

24. On March 28, 2003, Mr. Brown issued further guidelines for staffing positions. *ROI at 69*. Mr. Brown reiterated that only if a position could not be filled non-competitively via

lateral reassignment, would the organization be able to request approval from him or the Deputy Commander, SEA 09, to fill it competitively through merit promotion procedures. *Id.*

25. After position descriptions for SEA 102's FY 2004 positions were approved, SEA 102 requested selection certificates from the Human Resources Service Center, Northwest (HRSC NW) for all SEA 102 positions which were being filled through lateral "competitions," including the two GS-13 positions and the GS-12 position. *Davis Declaration at ¶19.*

26. On or about April 25, 2003, HRSC NW generated a "Noncompetitive Certificate" of two qualified candidates for the GS-301-12 Facilities Program Coordinator position. Plaintiff and Ms. Paige were on the certificate. *Davis Declaration at ¶20; ROI at 111*.

27. On or about April 29, 2003, HRSC Northwest generated a "Noncompetitive Certificate" of four qualified candidates for the two GS-343-13 Program Analyst positions in the FY 2004 organization. Joseph Anderson, Samuel Height, Earl Bradford, and Lynnelle Paige were the individuals listed on this certificate. *Davis Declaration at ¶21*.

28. Mr. Davis asked Ms. Rakosky to confirm that Ms. Paige's name properly appeared on the Noncompetitive Certificate for the GS-13 positions by contacting human resources personnel. *Davis Declaration at ¶22; ROI Tr. at 75*. Ms. Rakosky confirmed that Ms. Paige had previously successfully competed for selection to, and had served in, a GS-13 position and was thus eligible for a noncompetitive lateral reassignment to the GS-13 level. *Davis Declaration at ¶22; Mills Depo at 52, 65-66; ROI Tr. at 75*.

29. Plaintiff had not previously successfully competed for selection to, and had never served in, a GS-13 position. *Mills Depo at 47, 67*. Thus, she was not eligible for a

noncompetitive lateral reassignment to a GS-13 position under the guidelines established for filling positions in the FY 2004 organization. *Mills Depo at 67*.

30. A panel of three members evaluated the written applications of the four candidates for the two GS-343-13 Program Analyst positions. *Davis Declaration at ¶23*. After the panel conducted interviews of all the candidates for the two GS-13 positions, Mr. Davis met with the panel members. The panel advised Mr. Davis that Ms. Paige had scored the highest during the interview and that she was rated the highest overall among the candidates. *Davis Declaration at ¶23; ROI Tr. at 76*.

31. After learning that Ms. Paige was qualified for a non-competitive lateral reassignment to a GS-13 position and had been rated as the most qualified of the candidates, Mr. Davis began to re-evaluate the staffing plan that he had submitted to Ms. Flynn. *Davis Declaration at ¶24.* He believed that there was a significant amount of facilities work at the GS-13 level to justify a request for a second non-supervisory GS-13 position. *Id.* Further, he believed that this was an optimal time to request creation of an additional GS-13 position. *Id.*

32. Mr. Davis then sought permission from Ms. Flynn to restructure the FY 2004 SEA 102 organization to establish a second non-supervisory GS-343-13 Program Analyst position. *Davis Declaration at ¶25*. Mr. Davis explained that the best way to accomplish the facilities work was to have two branch heads, each a non-supervisory GS-13, reporting to a supervisory GS-13. *Id.* Each branch head would be responsible for one of the two NAVSEA buildings at the Washington Navy Yard. *Davis Declaration at ¶25; ROI at 50-51*. Mr. Davis and Ms. Rakosky had discussed the desirability of having two non-supervisory GS-13s in the

past. *ROI at 51.*

33. Mr. Davis told Ms. Flynn that he wanted to select Ms. Paige for a GS-13 position. *Davis Declaration at ¶25*. He advised that he had wanted to give Ms. Paige an opportunity to be promoted in the past but had been unable to do so. *Id.* Mr. Davis told Ms. Flynn that Ms. Paige was highly recommended by the panel and that her name was on the certificate for the GS-13 positions because she had previously served as a GS-13. *Id.* Mr. Davis advised Ms. Flynn that even if she did not approve his request to create a second non-supervisory GS-13 position, he would still select Ms. Paige for the GS-12 position. *Davis Declaration at ¶26.* Ms. Paige was better qualified for the GS-12 facilities position than plaintiff. *Davis Declaration at ¶26; Mills Depo at 50, 53*.

34. Ms. Flynn advised Mr. Davis that since there were restrictions on the number of GS-13s that he could have in SEA 102, she would have to obtain permission from Mr. Brown to create the additional GS-13 position. *Davis Declaration at ¶27*. Ms. Flynn also told Mr. Davis that the position would have to be classified at the GS-13 level by the Human Resources office. *Id.* If Mr. Brown approved the GS-13 position, Ms. Flynn advised that it would require the elimination of the GS-12 Facilities Program Coordinator position from the FY 2004 organization since SEA 102 could have no more than 12 civilian billets. *Id.*

35. Shortly thereafter, Mr. Brown approved the creation of a second non-supervisory GS-343-13 position for SEA 102. *Davis Declaration at ¶28; Mills Depo at 70-71*. The Human Resources office classified the position at the GS-13 level. *Davis Declaration at ¶28*.

36. On May 8, 2003, Mr. Davis selected Ms. Paige and Samuel Height for the two

non-supervisory GS-343-13 positions and Earl Bradford for the supervisory GS-13 position. *Davis Declaration at ¶28*. Ms. Davis then met with plaintiff and advised her that he had requested and received permission to fill another GS-13 position instead of the GS-12 position, and that he had selected Ms. Paige for the position. Mr. Davis explained that Ms. Paige's name appeared on the certificate for the GS-13 positions because she had previously served as a GS-13. *Davis Declaration at ¶28*.

37. No selection was made from the certificate generated to fill the GS-301-12 Facilities Coordinator position, as this position was eliminated from the SEA 102 FY 2004 staffing plan. *Davis Declaration at ¶29; Mills Depo at 61; ROI Tr. at 77*.

38. After completion of all the "competitions" for lateral reassignment, four SEA 102 employees, including plaintiff, remained unassigned to any position in the FY 2004 organization. *Davis Declaration at ¶30; ROI at 73-76, 88; ROI Tr. at 26-31, 65-66*. None of the other three employees had previously filed an informal or formal complaint of discrimination. *Exhibit D - Declaration of Patricia Dyson at ¶ 3*.

39. Plaintiff and the other three employees were each assigned to positions in the NPP. *Davis Declaration at ¶30*. They were among a total of 231 NAVSEA Headquarters employees who were reassigned to positions in the NPP because they were not placed in permanent positions in the FY 2004 organization. *ROI at 143, 148*. Plaintiff's reassignment to a GS-343-12 Management Analyst position took effect on June 29, 2003. *Davis Declaration at ¶31; ROI at 73*.

40. The "full performance level" of the position to which plaintiff was reassigned was

a GS-12. *ROI at 89; Mills Depo at 73.* Plaintiff was assigned to support SEA 102, as that office was most closely aligned with her skills. *Davis Declaration at ¶31*. Plaintiff remained located in SEA 102 spaces (she sat in the same office) and continued to perform SEA 102 work as assigned by Ms. Rakosky in support of the Business Management Branch. *Davis Declaration at ¶31; Mills Depo at 72-73; ROI Tr. at 21-22.* The duties plaintiff was assigned were the same duties as those she performed prior to her reassignment. *Mills Depo at 73-74*.

41. Ms. Rakosky recommended and Mr. Davis approved a monetary award for plaintiff in the amount of $750.00, effective February 24, 2004. *Davis Declaration at ¶32*.

42. On May 16, 2004, after SEA 102 received approval to increase the number of its civilian billets in the FY 2004 organization, plaintiff was reassigned to a GS-343-12 Management Analyst billet in SEA 102. *Davis Declaration at ¶33; Mills Depo at 74*. The "full performance level" of this position was a GS-12. *Davis Declaration at ¶33; Mills Depo at 73*.

43. Neither Mr. Davis nor Ms. Rakosky made derogatory comments about the fact that plaintiff had filed a prior EEO complaint. *Mills Depo at 77-78; ROI Tr. at 24-25*.

**PROCEDURAL HISTORY – PRIOR EEO COMPLAINT**

44. In January 2002, plaintiff contacted the agency's EEO office, claiming race and sex discrimination in connection with her alleged non-promotion to the GS-13 level since October 1999 and a proposed reorganization in December 2001. *ROI at 151-154*. Mr. Davis and Ms. Rakosky were interviewed by the EEO counselor. *ROI at 156-158*.

45. Plaintiff filed a formal complaint on March 21, 2002 which the agency dismissed on April 30, 2002. Thereafter, plaintiff appealed to the EEOC, and after the appeal was denied

on September 5, 2002, plaintiff sought reconsideration. The EEOC denied reconsideration on May 18, 2004.

**PROCEDURAL HISTORY – PRESENT EEO COMPLAINT**

46. Plaintiff made initial contact with the agency EEO office on May 28, 2003 alleging sex discrimination and reprisal for prior EEO activity when she was not selected for a GS-12 Facilities Specialist position in SEA 102 under continuous Job Opportunity Announcement No. CAPNWC 01-0301-293. *ROI at 8-20.* Plaintiff cited a prior EEO complaint from December 2001 against Rakosky and Davis. *ROI at 11*. Plaintiff claimed that management discriminated and retaliated against her when they decided to abolish her position and create, instead, a facilities position for which they knew her to be less qualified than Paige. *ROI at 8-11*. Plaintiff did not claim that she was unlawfully denied a promotion to the GS-13 level. *Id*

47. After receiving a notice of final interview, plaintiff filed a formal complaint on July 25, 2003, claiming race and sex discrimination, as well as reprisal for prior EEO activity, when the position she encumbered in SEA 102 was abolished and when she was not selected for a GS-12 Facilities Specialist position. *ROI at 1-4, 33-34, 42-43*. Plaintiff was represented by counsel at the time. *ROI at 1, 36, 39*. Plaintiff added age as a basis on September 5, 2003. *ROI at 5*. The agency then accepted these two claims for investigation, and gave plaintiff the opportunity to object to the framing of the issues accepted for processing. *ROI at 42-43*.

48. After an investigation, plaintiff requested a hearing before an administrative judge (AJ) of the Equal Employment Opportunity Commission (EEOC). The AJ issued a Notice of Intent to Issue Decision Without a Hearing. On December 15, 2004, plaintiff filed a motion for

summary judgment which included a copy of the May 18, 2004 reconsideration decision of the EEOC. *See Plaintiff's Summary Judgment Motion*. After the agency filed for summary judgment, the AJ granted the Agency's motion on January 7, 2005. The AJ's decision found that the agency had not discriminated or retaliated against plaintiff when it eliminated her position and when she was not selected for the GS-12 position.

49. Thereafter, on March 8, 2005, the agency issued a final decision implementing the AJ's decision. Plaintiff appealed to the EEOC, but EEOC denied the appeal on September 15, 2005. Thereafter, plaintiff filed her initial complaint in the District of Maryland on December 16, 2005. After the complaint was transferred to this District on March 28, 2006, plaintiff filed an amended complaint on August 18, 2006. The amended complaint included a claim of non-selection for a GS-13 position. *Docket Entry 11, Amended Complaint, Counts I-III.*

50. After plaintiff filed the instant action, she withdrew her claims of race, sex, and age discrimination and stated that she was only pursuing her claim of retaliation. *Mills Depo at 39, 71-72*.

Respectfully submitted,

__________/s/________________________________________
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_________/s/_________________________________________
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_________/s/_________________________________________
QUAN K. LUONG
Special Assistant United States Attorney

555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

OF COUNSEL:

Department of Navy Agency Counsel
Dale Birdoff