

**DEPARTMENT OF DEFENSE**
CIVILIAN PERSONNEL MANAGEMENT SERVICE
OFFICE OF COMPLAINT INVESTIGATIONS
COLUMBIA CORPORATE PARK I
8850 STANFORD BOULEVARD, SUITE 3200
COLUMBIA, MD 21045-4753

April 15, 2004

MEMORANDUM FOR Commander
    Naval Sea Systems Command
    ATTN: 1072 (Patricia Dyson)
    1333 Isaac Hull Avenue, SE Stop 9914
    Washington Navy Yard, DC 20376-9914

SUBJECT: Completion of Investigation
    Discrimination Complaint of Nadine D. Mills
    Agency Docket Numbers: 0300024003

The Investigative File of the subject discrimination complaint is provided for your disposition.

For your information, all investigative files are covered by the Privacy Act of 1974, 5 U.S.C. Section 552a. An investigative file does not constitute a public record because of its coverage under the Privacy Act. Access to or release of complaint files is controlled in accordance with the law to protect the privacy interests of the subjects and the integrity of the files. Therefore, if you release copies of this file or any part of it, you must ensure the information released does not violate the Privacy Act. However, the original file must not be sanitized so that deciding officials and adjudicators can completely review and properly adjudicate the case.

Attachment
Investigative File

*Donna J. Hartman*
RICK LUX
Regional Director



RECEIVED
APR 22 2004
NAVAL SEA SYSTEMS COMMAND
EEO OFFICE

## Formal Complaint of Discrimination

| | *(Agency Use Only)* **Agency Docket No.** |
|---|---|
| | 03-00024-00? |

**I.   Name of Complainant *(Last, First, MI)*:**

Mills Nadine Denise

**1a.   Address *(Include City/State/Zip)*:**

12404 Kingsview Street
Mitchellville MD 20721

**1b.   Home Telephone *(Include Area Code)*:**

301-249-2987

Are you now working for the Department of the Navy?

☑ YES *(Complete No. 3a-3b)*

☐ NO *(Continue with No. 4)*

**2.   Are you being represented?**

☑ YES *(Complete No. 2a-2c below)*

☐ NO *(Continue with No. 3 below)*

**2a.   Name of Representative:** Alison Fenton / Passman & Kaplan

**2b.   Address *(Include City/State/Zip)*:**
1090 Vermont Ave NW Suite 500
Washington DC 20005
202-789-0100

**2c.   Work Telephone *(Include Area Code)*:**
Comm: 202-781-2480

DSN: 326

**3a.   Name of Activity where you work:**
Naval Sea Systems Command

**3b.   Street Address of your Activity *(Include City/State/Zip)*:**
1333 Isaac Hull Ave, WNY Bldg 197
Washington DC 20376

**Present Job Title, Series, and Grade:**
Management Analyst GS-0343-12

Name and address of Navy Activity you believe discriminated against you (if different from No. 3a-3b):

Date(s) on which most recent alleged discrimination occurred:

Month  May          Day  22          Year  03

You believe you were discriminated against on the basis of your *(check all that apply)*:

☑ RACE *(Specify)* African American

☐ COLOR *(Specify)*

☐ NATIONAL ORIGIN *(Specify)*

☑ SEX *(Check one)*
  ☐ Male    ☑ Female

☐ RELIGION *(Specify)*

☐ AGE *(Specify date of birth)*

☐ DISABILITY *(Specify type)*
  ☐ Mental *(Please describe)*

☐ Physical *(Please describe)*

☑ REPRISAL *(Specify date and description of prior protected activity)*
Previous Complaint Filed 12/01

2

Have you discussed your complaint with an EEO counselor? *(Check one)*

☑ YES *(Fill in information below)*          ☐ NO *(Continue with No. 9)*

Name of Counselor: *Brenda Smith*

Date of Initial EEO Contact:

Date of Final Interview: 7/23/03

---

9.   Explain specifically how you were discriminated against, that is, treated differently from other employees or applicants because of you race, color, religion, sex, national origin, age, mental or physical disability, or reprisal.   If your complaint involves more than on allegation, list and number each allegation separately and furnish specific, factual information in support of each.  Include basis/es - see No 7 above *(Use additional sheets if necessary)*

Allegation No. 1:  *Had to Compete for a position that was already occupied, therefore it was a Pre-Selection. Please see attachment.*

---

10.   What specific corrective action do you want taken on your complaint?  *(If your complaint involves more than one allegation, state corrective action desired for each separate allegation.)*

*1. Permanent Position)*

*2. Promotion to GS-13*

---

11.   According to the allegation(s) described in No. 9 above, have you:

☐ filed a grievance through the negotiated grievance procedure? If so, date filed:

☐ filed an appeal with the Merit Systems Protection Board? If so, date filed:

☐ filed a civil action in U.S. District Court? If so, date filed:

| 2.   Signature of Complainant | 13. Date Signed |
|---|---|
| *Arlene L. Mills* | 7/25/03 |

---

## TO BE COMPLETED BY THE ACTIVITY

4a. Received by: *(illegible)*




(Signature)

Typed Name and Title: *(illegible)*

Activity Name and Address: *(illegible)*

Telephone *(Include Area Code)*
Comm: *(illegible)*
DSN:

15.   Complaint was:
☐ Mailed:

Postmark date:

Receipt date:

☐ Hand-delivered: 07-25-03

Receipt date:

**3**

**Discrimination compliant based on race (African-American Female) Sex, Disparate Treatment (Promotions, Selections and Hiring Practices)**

I came to the Naval Sea Systems Command (NAVSEA) in October 1999 from the Naval Technical Representative Office, Laurel, Maryland. I was assigned the Division Head for the Property and Inventory Division. Within the SEA 09A Code there were six divisions. All the other Divisions were headed by GS-13's and one GS-14 (Financial Support Division) and I was the only GS-12 Division Head. Past Division Head's that occupied the position where an African-American Male and two Females. They were also GS-12's.

On December 12, 2001, I was notified of a re-organization within our Code. My functions would be divided and incorporated into two other divisions. In July 2002, a Mr. Jerry Gregg replaced me as Division Director. Mr. Gregg was reassigned to my Division after his was disestablished. Mr. Gregg chose an early retirement as the result of his office's disestablishment and planned to retire 3 Jan 03  At the present time we are experiencing another reorganization and downsizing and I was informed on 8 May I no longer have a position. When I was notified that I would have to compete for my position I was given a Position Description of the duties that would be advertised. The position had been written for a Facilities Specialist in which I am not qualified. I am a Management Analyst, GS-343-12/Property Administer. Since being assigned to NAVSEA, I've never been given a copy of my Position Description. I believe it was intentional that I was not chosen for a position based on the EEO compliant I filed in December 2001.

Thank you,

*Nadine D. Mills*

Nadine D. Mills
22 May 2003

4

5 September, 2003

**Amendment to discrimination compliant filed 25 July 2003 –**
**Agency Docket number DON 03-00024-003**

1. Please also include in my compliant, discrimination based on age and
   disparate treatment.

Thank you,

*Nadine D. Mills*

Nadine D. Mills
12404 Kingsview Street
Mitchellville, Maryland 20721

5

# EEO COUNSELOR'S REPORT
# 29 C.F.R. SECTION 1614.105(c)

## A. AGENCY

Department of Navy
Naval Sea Systems Command
1333 Isaac Hull Ave., S.E.
Washington, Navy Yard, D.C. 20376
DON No:

## B. AGGRIEVED PERSON

|  |  |
|---|---|
| Name: | Nadine D. Mills |
| Job Title/Series/Grade: | Management Analyst, GS-343-12 |
| Place of Employment: | NAVSEA, Facilities Management Division SEA 102 Washington, D.C., WNY |
| Work Phone Number: | 202-781-2480 |
| Home Phone Number: | 301-249-2987 |
| Home Address: | 12A04 Kingsview Street Mitchellville, Maryland 20721 |
| Representative: | Allison Fenton Passman & Kaplan 1090 Vermont Ave., N.W. Suite 500 Washington, D.C., 20005 202-789-0100 |

## C. CHRONOLOGY OF EEO COUNSELING

|  |  |
|---|---|
| Date of Incident: | May 8, 2003 |
| Date of initial Contact: | May 28, 2003 |
| Date EEO Counselor Contacted: | June 18, 2003 |

2

| | |
|---|---|
| Notice of Rights and Responsibilities: | May 28, 2003 |
| Date of EEO Extension: | July 22, 2003 |
| Date of Notice of Final Interview: | July 22, 2003 |
| Date Counseling Report Received: | |
| | AUG 8 2003 |

## D. BASIS FOR ALLEGED DISCRIMINATION

1. ( ) Race (Specify) _____
2. (x) Sex (Specify) Female _____
3. ( ) Age (Specify) _____
4. ( ) Mental Handicap (Specify)_____
5. ( ) Color (Specify)_____
6. ( ) Religion_____
7. ( ) National Origin (Specify)_____
8. ( ) Physical Handicap (Specify)_____
9. (x) Reprisal (Specify) filed complaint December 2001 ____
10.( ) Sexual Harassment_____

## E. ALLEGATION(S) OF DISCRIMINATION

Ms. Nadine D. Mills alleged that she was retaliated against for having filed a previous complaint in December 2001, when she was informed on May 8, 2003, that she was not selected for the position of Facilities Specialist, GS-12 in the Facilities Management Division, under a continuous Job Opportunity Announcement No. CAPNWC01-0301-293.

## F. RESOLUTION REQUESTED:

As a resolution of this matter, Ms. Mills requested that she be given a permanent position with promotion potential.

9

3

## G. SUMMARY OF COUNSELOR'S INQUIRY

### Nadine D. Mills, Management Analyst, GS-0343-12, Facilities Management Division, SEA 102, NAVSEA, Washington Navy Yard, 202-781-2480

On June 18, 2003, the EEO Counselor met with Ms. Mills to discuss her allegation of reprisal for having filed a previous complaint. She is represented by legal counsel. However, she elected not to have her attorney present during the interview.

Ms. Mills stated that when she transferred to NAVSEA in October 1999, there were approximately 75 employees in the Facilities Management Division (Division). Since that time, according to Ms. Mills there are approximately 16 employees currently in the Division and that figure is slated to be decreased to 12 employees as a result of the reorganization and downsizing.

Ms. Mills stated that her team leader and supervisor is Mary Lou Rakosky, Deputy Division Director and Mr. Mike Davis is her second level supervisor and Division Director.

Ms. Mills stated that her position is being affected by the reorganization. She stated that she was told to apply for "her" position. She stated that she noticed that the duties of the position had changed significantly and centered on functions normally performed by a Facilities Management Specialist. She stated that even though her experience in facilities management was limited, nonetheless, she applied for the position. She stated that she made the "Certificate of Eligibles" list. However, she was never interviewed for the position.

Ms. Mills stated that Mr. Davis called her and asked if she was considering "early out." Further, she stated that the very next day, Mr. Davis called her and told her that Ms. Lynn Paige had been selected for the position.

She stated that Ms. Paige was performing facilities management duties prior to the job being posted. She further stated that Ms. Paige had worked for the Division previously and left to get a promotion (GS-13) at another agency. Ms. Mills stated that Ms. Paige later returned to the Division as a Facilities Management Specialist, GS-12

4

Ms. Mills stated that she believes the duties of the position were changed to accommodate Ms. Paige and to eliminate her chances of being selected. She stated that both Ms. Rakosky and Mr. Davis were named in her previous complaint. She reiterated that her nonselection for the Facilities Specialist position was based on her having filed a previous discrimination complaint in December 2001. (Note: While Ms. Mills brought up the basis of sex discrimination during the Intake meeting held on May 28, 2003, she did not discuss with the EEO Counselor how it related to her nonselection. Basically, the discussion centered on retaliation.)

### Mike Davis, Director, Facilities Management Division, NAVSEA, 012, Washington Navy Yard, 202-781-1400

Mr. Mike Davis stated that due to the Division's reorganization, he has lost a number of positions. He stated that this was a very unpleasant task; but, he was forced to abolish certain positions and reduce his work staff. Mr. Davis stated that he was the selecting official for the Facilities Specialist position. He stated that Ms. Mills applied for a GS-12 position in the Space and Facilities Management Branch (Branch). Also, he stated that at the time he had three GS-13 positions to fill in the Branch.

He stated that he was "surprised" to see Ms. Lynn Paige's name on both the GS-12 and GS-13 Certificate of Eligibles. He stated that he felt that Ms. Paige was the best candidate for the Facilities Specialist position. Therefore, he asked Ms. Bonita Flynn, Deputy Commander, Corporate Operations Directorate, if he could fill the position at the GS-13 level instead of the GS-12 level. Mr. Davis stated that Ms. Flynn authorized the selection at the GS-13. However, it was only under the condition that one of the GS-13 positions be converted back to the GS-12, if in the future one of the GS-13 incumbents left the Division. According to Mr. Davis by selecting Ms. Paige he was able to reinstate her to the GS-13 grade level. Mr. Davis stated that Ms. Mills' position was abolished.

He maintained that the position description was not changed to accommodate Ms. Paige. He stated that Mr. Earl Bradford (Branch Head) and Mr. Sam Height, Space/Facility Branch, revised the position description to reflect facilities specialist duties.

*11*

5

Mr. Davis stated that he was aware that Ms. Mills filed a previous complaint. However, he stated that Ms. Rakosky was more familiar with the details of the complaint.

## H. INFORMATION TO REBUT THE ALLEGATIONS (provided by management)

Mr. Davis stated that Ms. Mills' previous complaint had nothing to do with her nonselection for the Facilities Specialist position. He stated that he decided to fill the position at the GS-13 grade level and selected Ms. Lynn Paige, who he stated was the best qualified person for the position.

## I. DOCUMENTS ATTACHED

a. Counselor's Work Sheet, Initial Interview Sheet – Intake
b. Notice of Rights and Responsibilities
c. Agreement to Extend EEO Counseling Period
d. Written Comments from Aggrieved Party, dated May 22, 2003
e. Notice of Right to File A Discrimination Complaint
f. Organizational Chart – Facilities Management Decision – SEA 102
g. Organizational Chart – People Realignment Under New Reorganization for SEA 102
h. Job Opportunity Announcement No. CAPNWCo1-0301-293
i. Memorandum from Gary A. Humes, SEA 10B to Nadine Mills, SEA 10; dated June 24, 2003, Subject: Reassignment to NAVSEA Headquarters Placement Program (NPP) Position, with attached position description
j. Memorandum from Bonita Flynn, Deputy Commander, Corporate Operations Directorate to Nadine Mills, SEA 10; dated June 11, 2003; Subject: Reassignment to a NAVSEA Headquarters Placement Program (NPP) position

6

k.   Email from Mike Davis, to Employees; dated January 10, 2003; Subject: SEA 10 Interim Org.

l.   Email from Pete Brown, to NSSC ALLHANDS HQGOV; dated March 28, 2003; Subject: All Hands #106: Guidelines for Staffing Positions in NAVSEA HQ/PEOs

m.   Email from Bonita Flynn to All NAVSEA Placement Program (NPP) Members; dated June 23, 2003; Subject NAVSEA HQ/PEO Vacancies

---

Brenda J. Smith                         301-292-8175
Name of EEO Counselor                   Telephone Number

*Brenda J. Smith*

Signature of EEO Counselor              Office Code

8/7/03

Date Counselor's Report Completed       City/State/Zip

13

JUN-10-2003  07:

P.02/17

03-020

# COUNSELOR'S WORK SHEET
## INITIAL INTERVIEW - INTAKE

**Complainant's Full Name:** Nadine D Mills

**Social Security Number:** 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

**DOB:** 4-3-52

**Sex:** Female

**Position Title:** Management Analyst, GS-343-12

**Pay Plan/Series/Grade:** GS 343-12

**Agency Where Employed:** NAVSEA

**Org Code:** SEA 102

**Work Phone:** 202-781-2480

**Home Phone:** 301-249-2987

**Home Mailing Address:** 12404 Kingsview St

Mitchellville MD 20721

**e-mail address (optional)** MillsND @ NAVSEA.NAVY.MIL

**Anonymity Requested:** _____ YES ____✓____ NO

**Agency/Organization Where Complaint Arose:** _____

_____

14    1

## Counselor Intake (cont.)

**Basis:** _____ **Race** _____

_____ **Color** _____

_____ **Sex** _____

_____ **Religion** _____

_____ **Age** _____

_____ **National Origin** _____

_____ **Handicap - Physical** _____

_____ **Handicap - Mental** _____

✓ **Reprisal because of protected activity (identify):** _____

*filed EEO Complaint in Dec 01.*

_____ **Other** _____

**Claim:** *8 May 03 learned that she was not selected for Facilities Specialist position, GS-12. (See Ms. Miller Statement, dated 22 May 03.) Lynn Paige was selected, who held the position of Facilities Specialist.*

15        2

## Counselor Intake (cont.)

**Additional Background (if any) regarding alleged discriminatory action.**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Date of Alleged Incident:**

8 May 03

**Reason (if any) that the contact date is beyond the 45-day timeframe:**

_____

_____

_____

*16*    3

## Counselor Intake (cont.)

**Requested Relief:** _____

_____

**Representative's Name:** _Allison Fenton_

**Representative's Address:** _Passman & Kaplan   Vermont Ave_

**Representative's Phone:** _202-789-0100_

**Attorney:** ___/___ YES      _____ NO

**Witness(es) (if any): Name/Phone:** _____

_____

_____

**Alternative Dispute Resolution: Would you consider utilizing
alternative dispute resolution:**

_____ YES      __/__ NO


_Patru M. Rys_
**(Signature of Intake Official)**

_28 May 03_
**(Date of Intake)**


|7      4

# COMPENSATORY DAMAGES

## Types Of Damages.

Payment of compensatory damages was authorized for complaints filed after November 21, 1991 when the Civil Rights Act of 1991 was signed into law. Compensatory damages consist of payment for pecuniary (monetary) and nonpecuniary losses suffered as result of the alleged discrimination. Following is a brief definition of these types of losses:

a. <u>Pecuniary Losses</u>.  Quantifiable out-of-pocket expenses that result from the alleged discriminatory conduct (i.e. actual losses).  Examples include medical expenses, physical therapy expenses, moving expenses, and job search expenses.

b. <u>Nonpecuniary Losses</u>.  Intangible injuries of emotional harm that result from the alleged discriminatory conduct.  There are typically 3 categories of nonpecuniary losses:  (1) psychological (depression, insomnia, stress); (2) physical (headaches, ulcer, dietary disorders); and (3) other (impairment of earning capacity, loss to professional reputation, damage to credit ratings).

## Proof Required.

Although compensatory damages are authorized, they are not *automatically* granted.  The complainant must prove, by showing evidence, that he/she has suffered the claimed injuries.  Additionally, the EEOC has taken the position that complainants must submit objective evidence demonstrating a causal relationship between the claimed injuries and the alleged discriminatory conduct (meaning the complainant must prove that the injury or condition is the result of the alleged discriminatory conduct).  It is not enough for the complainant to make conclusory assertions that he/she has suffered emotional distress as a result of the unlawful conduct.

This evidence or proof may include:
- receipts for all out-of-pocket expenditures
- canceled checks
- records, reports, letters or other information prepared by any health care professional you received in the course of seeking treatment
- medical bills and/or receipts for medical care, including costs associated with transportation and medication
- bills and/or receipts for attorney fees
- statements or observations from family, friends, co-workers attesting to any manifestation of emotional distress the alleged discriminatory conduct caused to your emotional and/or physical well-being.

18

# AGREEMENT TO EXTEND EEO COUNSELING PERIOD

I, **Nadine Mills**, agree to an extension of the EEO counseling period to allow for completion of the counseling inquiry

This extension is not to exceed July 25, 2003.

_Nadine D. Mills_     7/22/03
Complainant        Date

_Brinda J. Smith_ 7/22/03
EEO Counselor     Date

19

Discrimination compliant based on race (African-American Female) Sex, Disparate Treatment (Promotions, Selections and Hiring Practices)

I came to the Naval Sea Systems Command (NAVSEA) in October 1999 from the Naval Technical Representative Office, Laurel, Maryland. I was assigned the Division Head for the Property and Inventory Division. Within the SEA 09A Code there were six divisions. All the other Divisions were headed by GS-13's and one GS-14 (Financial Support Division) and I was the only GS-12 Division Head. Past Division Head's that occupied the position where an African-American Male and two Females. They were also GS-12's.

On December 12, 2001, I was notified of a re-organization within our Code. My functions would be divided and incorporated into two other divisions. In July 2002, a Mr. Jerry Gregg replaced me as Division Director. Mr. Gregg was reassigned to my Division after his was disestablished. Mr. Gregg chose an early retirement as the result of his office's disestablishment and planned to retire 3 Jan 03. At the present time we are experiencing another reorganization and downsizing and I was informed on 8 May I no longer have a position. When I was notified that I would have to compete for my position I was given a Position Description of the duties that would be advertised. The position had been written for a Facilities Specialist in which I am not qualified. I am a Management Analyst, GS-343-12/Property Administer. Since being assigned to NAVSEA, I've never been given a copy of my Position Description. I believe it was intentional that I was not chosen for a position based on the EEO compliant I filed in December 2001.

Thank you,

Nadine D. Mills
22 May 2003

20

rec'd 5/23/03

03-020
Ser SEA 1072
Date: July 22, 2003

From:      Brenda J. Smith, Equal Employment Opportunity Counselor

To:        Nadine D. Mills, Management Analyst

Subj:      NOTICE OF RIGHT TO FILE A DISCRIMINATION COMPLAINT

Ref:       (a) CPI 713
           (b) 29 CFR Part 1614

Encl:      (1) Formal Complaint of Discrimination Form (OCPM 12713/2)

1. This is a notice that on the above date the final counseling interview was held in connection with the matter you presented to the EEO Counselor. You initially contacted the EEO Office at NAVSA Headquarters on May 28, 2003. During our initial meeting on June 18, 2003, you alleged that you were retaliated against for having filed a previous complaint (December 2001) when you were informed on May 8, 2003, that you were not selected for a Facilities Specialist, GS-12 position in the Facilities Management Division.

2. Since the matter you brought to the EEO Counselor has not been resolved, you are entitled to file a discrimination complaint based on race, color, religion, sex, age, national origin or handicapping condition, and/or reprisal for participating in protected EEO activity.

3. If you file a formal complaint, it must be **in writing**, signed, and filed in person or by mail within **15 CALENDAR DAYS AFTER RECEIPT OF THIS NOTICE**. with the following official authorized to receive discrimination complaints:

DEPUTY EQUAL EMPLOYMENT OPPORTUNITY OFFICER (SEA 1072)
DEPARTMENT OF THE NAVY
STOP 9914
1333 ISAAC HULL AVENUE, S.E.
STOP 9914
WASHINGTON NAVAL YARD, DC  20376-9914

4. Discrimination complaints must be processed by the EEO Office at the activity or command where the complaint arose.

5. The issues in the formal complaint, which were discussed with an EEO Counselor, and the matter giving rise to the complaint, must be sufficiently precise to describe generally the action (s) or practice (s) that form the basis of

33

the complaint. Failure to provide this information may result in the dismissal of your complaint for failure to state a claim.

6. The complaint must also state whether you have filed a grievance under a negotiated grievance procedure or an appeal to the Merit Systems Protection Board on the same subject matter, including the dates on which a grievance or an appeal was filed. This information is necessary for the Department of Navy to determine whether your complaint is appropriate for processing under references (a) and (b). Enclosure (1) is provided for your use should you choose to file a formal complaint under reference (a).

7. If you retain an attorney or any other person to represent you, you or your representative must immediately notify the EEO Office, in writing. You will receive a written notice of receipt of your discrimination complaint from the appropriate agency official.

*Brenda J. Smith*

EEO Counselor

Date received: _7/23/03_     Complainant's Signature: _Nadine S. Mills_

34



**DEPARTMENT OF THE NAVY**

NAVAL SEA SYSTEMS COMMAND
1333 ISAAC HULL AVE SE
WASHINGTON NAVY YARD DC 20376-0001

IN REPLY TO

12713
Ser SEA 1072/109
25 July 2003

From: Command Deputy Equal Employment Opportunity Officer
To:     Ms. Allison Fenton
         Passman & Kaplan, Attorneys at Law
         1090 Vermont Avenue NW, Suite 500
         Washington, DC  20005

Subj:  NOTICE OF RECEIPT OF THE DISCRIMINATION COMPLAINT OF NADINE D.
         MILLS v. HANSFORD T. JOHNSON, ACTING SECRETARY OF THE NAVY,
         AGENCY NUMBER DON 03-00024-003

Ref:   (a) Your discrimination complaint dated 25 July 2003

1. This letter acknowledges receipt of reference (a) on 25 July 2003.

2. As noted above, your complaint has been assigned agency number **DON 03-00024-003**.
Please include this agency number on all future correspondence or other documents regarding
this complaint.

3. If your complaint is accepted, it will be investigated. The Department of Navy is required to
conduct a complete and impartial investigation of the complaint within 180 days of the filing of
the complaint, unless the parties agree in writing to extend the investigation. When a complaint
has been amended, the agency shall complete its investigation within the earlier of 180 days after
the last amendment to the complaint or 360 days after the filing of the original complaint.

4. When the investigation is concluded, the investigative file will be forwarded to the NAVSEA
Deputy Equal Employment Opportunity Officer, who, in turn, will forward a copy to you. You
have the right to request a hearing in a non-mixed case, before an EEOC Administrative Judge
after completion of the investigation or 180 calendar days from the filing of a formal complaint,
whichever comes first, except that the complainant may request a hearing from an administrative
judge on consolidated complaints any time after 180 days from the date of the first filed
complaint. Your request should be made directly to the U.S. Equal Employment Opportunity
Commission, Washington Field Office, 1400 L Street NW, Washington, DC  20005. You must
also notify the Deputy Equal Employment Opportunity Officer, Naval Sea Systems Command,
ATTN: SEA 1072, 1333 Isaac Hull Avenue S.E. (Stop 9914), Washington navy Yard, DC
20376-9914, of your hearing request. You also have the right to an immediate final decision
after an investigation by the agency.

36

Subj: NOTICE OF RECEIPT OF DISCRIMINATION COMPLAINT OF NADINE D. MILLS
v. HANSFORD T. JOHNSON, ACTING SECRETARY OF THE NAVY, AGENCY
NUMBER DON 03-00024-003

5. You have the right to appeal the final action on or dismissal of a complaint. If your complaint is dismissed in its entirety, you have the right to appeal the dismissal. You will receive a separate written notice advising you of your appeal rights. Where some, but not all claims of your complaint are dismissed, you will not have immediate appeal rights, but will be given those rights after a final action is taken by the agency on the remainder of your complaint.

6. Pursuant to 29 CFR, Section 1614.201(a), an aggrieved individual may file a civil action in a U.S. District Court under the Age Discrimination in Employment Act (ADEA) against the head of an alleged discriminating agency after giving the Commission (EEOC) not less than 30 days notice of intent to file. Such notice must be filed in writing with the EEOC within 180 days of the occurrence of the alleged unlawful practice.

7. If resolution/settlement of the complaint is reached, the terms of the resolution/settlement will be stated in writing, and you will be given a copy.

8. You also have the right to go to U.S. District Court 180 calendar days after filing a formal complaint if an appeal has not been filed and final action has not been taken; or after 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

9. If you file a civil action under Title VII of the Civil Rights Act of 1964, as amended, or the Rehabilitation Act of 1973, as amended, and you do not have, or are unable to obtain the services of a lawyer, you may request the court to appoint a lawyer to represent you. In such circumstances as the court may deem just, the court may appoint a lawyer and may authorize the commencement of the action without the payment of fees, costs, or security. Any such request must be made within the above-referenced limits for filing suit and in such form and manner as the court may require. Filing a request for an attorney does not extend your time in which to file a civil action.

10. You are further notified that if you file a civil action, you must name Hansford T. Johnson, Acting Secretary of the Navy, as the defendant. You **MUST** include the name of the person and the official title. Failure to name Hansford T. Johnson, Acting Secretary of the Navy, may result in the loss of any judicial redress to which you may be entitled.

## 37   2

Subj: NOTICE OF RECEIPT OF DISCRIMINATION COMPLAINT OF NADINE D. MILLS v. HANSFORD T. JOHNSON, ACTING SECRETARY OF THE NAVY, AGENCY NUMBER DON 03-00024-003

11. If you have further questions, please do not hesitate to contact Patricia Dyson, EEO Complaints Manager on (202) 781-5336.

*Nancy E. Scott*

NANCY E. SCOTT

Copy to:
Nadine D. Mills
12404 Kingsview Street
Mitchellville, MD 20721

00L

3

UNITED STATES POSTAL SERVICE



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

COMMANDER
ATTN 1072
Naval Sea Systems Command
1333 Isaac Hull Ave SE STOP (9914)
Washington Navy Yard DC 20376-9914

DON 03-00024-003   Ser SEA 1072/109

---

**SENDER:** COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MS. ALLISON FENTON
PASSMAN & KAPLAN, ATTORNEYS AT LAW
1090 VERMONT AVENUE, NW
SUITE 500
WASHINGTON, DC   20005

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X Nate Blair          ☐ Agent
                      ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

Nate Blair          8/4/03

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number   7002 0460 0001 8699 8172
   (Transfer from service label)

Mailed 07/30/03

PS Form 3811, August 2001        Domestic Return Receipt        102595-01-M-2509

---



U.S. Postal Service
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

MS. ALLISON FENTON

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To MS. ALLISON FENTON
PASSMAN & KAPLAN, ATTORNEYS AT LAW
or PO Box No. 1090 VERMONT AVE., NW, SUITE 500

7002 0460 0001 8699 8172

39



**DEPARTMENT OF THE NAVY**

NAVAL SEA SYSTEMS COMMAND
1333 ISAAC HULL AVE SE
WASHINGTON NAVY YARD DC 20376-0001

IN REPLY TO

12713
Ser SEA 1072/113
21 August 2003

From:  Command Deputy Equal Employment Opportunity Officer
To:    Ms. Nadine D. Mills
       12404 Kingsview Street
       Mitchellville, MD  20721

Subj:  NOTICE OF ACKNOWLEDGMENT FOR INVESTIGATION IN THE
       DISCRIMINATION COMPLAINT OF NADINE D. MILLS
       v. HANSFORD T. JOHNSON, ACTING SECRETARY OF THE
       NAVY, AGENCY # DON 03-00024-003

Ref:   (a) Your discrimination complaint received 25 July 03
       (b) 29 CFR 1614

Encl:  (1) EEO Counselor's Report of 8 Aug 03

1. As noted above, your complaint dated 25 July 2003,
reference (a), has been assigned agency docket number
**DON 03-00024-003.**   Please include this docket number on
all future correspondence or other documents regarding this
complaint.

2. In reviewing references (a), and (b), and enclosure (1),
it is understood that you have raised the following claims:

   a.      Whether you were discriminated against based
           on race (African American), sex (female),
           and reprisal (for previous EEO complaint
           filed December 2001) when your position as a
           Management Analyst, GS-0343-12 was
           eliminated; and

   b.      Whether you were discriminated against based
           on race (African American), sex (female),
           and reprisal (for previous EEO complaint
           filed December 2001) when you competed for a
           GS-12 Facilities Specialist position, under
           Job Opportunity Announcement Number
           CAPNWCOL-0301-293, but were not selected.

42

Subj:   NOTICE OF ACKNOWLEDGMENT FOR INVESTIGATION IN THE
        DISCRIMINATION COMPLAINT OF NADINE D. MILLS
        v. HANSFORD T. JOHNSON, ACTING SECRETARY OF THE
        NAVY, AGENCY # DON 03-00024-003

3.   Upon review of this complaint, and in accordance with
reference (b), the claims identified in paragraph 2(a) and
2(b) are acknowledged for investigation.

4.   If you believe that the claims in your complaint have
not been correctly identified, please provide me written
clarification, within seven (7) calendar days after your
receipt of this letter, specifying why you believe the
claims have not been correctly identified.

5.   If you claim compensatory damages, you will need to
provide objective evidence of compensatory damages and how
they were caused by the alleged discrimination and/or
reprisal.

6.   By copy of this letter, the Area Representative, Office
of Complaints Investigation (OCI), Defense Civilian
Personnel Management Service, Columbia, MD, is advised of
the allegations accepted for processing, and is requested
to assign an investigator.  Once assigned, you will be
informed of the identity of the investigator and when the
investigation is expected to begin.  When the investigation
is concluded, the investigative file will be forwarded to
NAVSEA Deputy Equal Employment Opportunity Officer, who, in
turn, will forward a copy to you.

7.   If you have further questions, please do not hesitate
to contact Ms. Patricia Dyson, EEO Complaints Manager at
(202) 781-2674.

NANCY E. SCOTT

Copy to:
Office of Complaint Investigations
Ms. Dale Birdoff, Agency Representative

43



## DECLARATION UNDER PENALTY OF PERJURY

I, Mary Lou Rakosky, in accordance with 28 U.S.C. Section 1746, make the following statement:

*EFFECTS OF NONDISCLOSURE: Disclosure of information by me is voluntary; however, my failure to respond will result in disposition of the case on the basis of information available.*

*AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, code of Federal Regulations, Sections 5.2 and 5.3; title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended; Executive Order 10577; and 29 CRF 1614.*

*PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.*

Q: Please state your full name? A: Mary Lou Rakosky

Q: What is your race, gender and date of birth? A: Female, White, 4/4/51

Q: What is your current title, series and grade and organizational location? A: Deputy Director of Facilities Management Office, GS-343-14. I have been in this position for over 5 years.

Q: What was your organizational relationship to the Complainant during the time of the matters at issue? A: I was the Deputy Director of the Facilities Management Office and also the branch manager of the Business Management Branch. I was her first level supervisor starting in December 2001 until Gary Humes became her first level supervisor when she was assigned to the NPP. She still reports to me for daily work assignments.

Q: Were you aware of her prior EEO activity at the time of the matters at issue?
A: I was aware that she had raised an issue about her position of division head being eliminated, but I did not know she raised it as an EEO concern. I recall that I was interviewed by a contractor and we had an ombudsman who spoke to us, but I thought the matter was resolved.

Q: What is your organizational relationship to Mr. Mike Davis? A: He has been my immediate supervisor since the summer of 2001.

**Claim a)** The Complainant alleges that based on her race, gender, age, and reprisal, her position as a Management Analyst GS-343-12 was eliminated. Q: Did you have any firsthand knowledge or involvement in the decision to eliminate her position? A: Yes, I worked with Mr. Davis

regarding all decisions in the office. We knew that we had to reduce the staff by 4 positions, after two people already took retirement. In this process, Mr. Davis and I looked at each position separately from the person occupying it. We looked at each position in terms of the current function at the time and the future function of the position. When we got to the position Ms. Mills occupied, we saw that the duties had diminished and would continue to in the future. The two major duties of the position were the Defense Property and Accounting System (DPAS) and the Navy Marine Corp. Intranet (NMCI). DPAS is the inventory system at the DoD level that requires specific reporting of property. Prior to our organization moving to the Washington Navy Yard from Crystal City, VA in 2001 we planned on tracking all equipment, furniture etc, this was a massive project and a major part of the position, but it turned out to be minimal once we reviewed DPAS requirements. We used to track and we planned on tracking each piece of equipment/property (tables, chairs, etc.) and the position dealt with a large data base with hundreds of thousands of data elements for all this equipment/property. However, when we moved to the Navy Yard, the requirement changed and we no longer had to track equipment down to that specific level and now only have to track things that exceeded a certain dollar value. This eliminated about 50% of the function of the position. Regarding the NMCI, that took up also 50% of the position's function, or more at times, as we transitioned into the NMCI. The NNMC part of the position functioned on being the focal point working with our Information Technology staff in doing all reporting for the computer needs of SEA-10 as the agency transitioned to the NMCI. The NMCI tracked the computer needs in various categories, including any software or mapping to different programs. Once the transition to NMCI was done, the workload in that area diminished.

Mr. Davis and I worked together in terms of recommending which positions should be eliminated and Mr. Davis was the final decision maker. He did brief his boss, Ms. Flynn who concurred with the decision. We basically looked at the functions of all positions in our office. The other positions we felt needed to be eliminated were as follows: One was an engineering position and we could not justify having an Engineer since we were not en engineering directorate. One was a Budget position that had been reassigned from the budget area to the facility area, but the function of the position was not really heavily budget related because it was also involved in facility management analyst work. The other position was that of a Wage Grade position that primarily supported the loading dock. We had a firm that came in to review the work load in various areas and the data from the review showed that there was not enough work involving the loading dock to continue to support a full time position in that capacity.

**Claim b)** The Complainant alleges that based on her race, gender, age, and reprisal, she was not selected for the position of GS-12, Facilities Specialist, under Job Opportunity Number CAPNCO1-0301-293. Q: Did you have any involvement in the selection process for this position? A: Yes, I worked with Mr. Davis on the selections. The position for the GS-12 (deleted two words here) was actually cancelled and not filled at all. I would have been the recommending official for that selection, but none was made. When the GS-12 selection certificate came in, there were two names on it, Ms. Mills and Ms. Lynne Paige. Around the same time that we received the GS-12 selection certificate, we also received the selection certificate for the GS-13 positions as well. Ms. Paige's name was on both certificates. Realizing that she was on the GS-13 certificate, I brought this to Mr. Davis' attention. I had recalled

conversations Mr. Davis and I had in the past, where he said he had envisioned at some point having two branches in the Facilities area with each headed by a GS-13. I believed that this was Mr. Davis's opportunity to ask for another GS-13 because Ms. Paige was viewed as a real star in our office. We felt strongly that to do the Facilities job the way it needed to be done, we needed a Head for the Facilities area with 2 GS-13s under it. Ms. Flynn approved the additional GS-13 position and then we cancelled the GS-12 recruitment. Mr. Davis selected Ms. Paige off of the GS 13 cert. Originally, we had advertised a branch head at the GS-13 supervisory level and then one non-supervisory GS-13. We ended up selecting two non-supervisor GS 13's and one GS 13 Supervisor.

Q: The Complainant states she believes the duties of the position were changed to accommodate Ms. Paige and eliminate the Complainant's chances of being selected. Please respond? A: The focus of the position was in the facilities area and was written accordingly. Ms. Mills' previous duties were not put in the new facility job description because they were not applicable to the facility job or no longer existed as a job by themselves. Anything that was remaining of her old duties remained in my branch in the Business Management Branch.

Q: The Complainant alleges the matters at issue in the accepted claims were based on her race, gender, age and prior EEO activity. Please respond? A: They were based on the reasons I have described above. I am totally confused why she alleges these basis because (1) she and Ms. Paige appear to be around the same age; (2) I don't know either of their ages; (3) they are both female; (4) both she and Ms. Paige are black and (5) I did not know Ms. Mills had prior EEO activity.

Q: Is there anything you wish to add regarding the accepted claims? A: No.


### END OF STATEMENT

I, Mary Lou Rakosky, declare (*certify, verify or state*) under penalty of perjury, that the foregoing is true and correct.

Mary Lou Rakosky

_____            18 Feb 2004
(Declarant's Signature)                     _____
                                            (Date)

TOTAL P.04

**Mills Nadine D NSSC**

From:           Brown Pete F NSSC
Sent:           Friday, March 28, 2003 2:17 PM
To:             #NSSC ALLHANDS HQGOV
Subject:        ALL HANDS #106: GUIDELINES FOR STAFFING POSITIONS IN NAVSEA HQ/PEOs

Folks:

This purpose of this message is to inform you of a change to the guidelines I previously issued in my 3 December 2002 memorandum regarding how we plan to compete positions during the Step 2 phase of our realignment of the Headquarters and PEOs.

It is essential that we move quickly to fill the positions that we have identified in the FY04 staffing plan for each Directorate/PEO/Staff Code. Positions are now being filled through a combination of management directed reassignments and lateral competitions. Our goal is to complete these actions and fully staff our organizations to the FY04 budget by 1 May 2003. Based on a review of the timeliness of the lateral reassignment competitions completed thus far, we will not be able to achieve our goal unless the competition process is streamlined. Under our previous staffing guidelines, we required that recruitment flyers be issued for a period of 14 calendar days to supplement the Standard Automated Inventory Referral System (STAIRS) open continuous vacancy advertisements prior to requisitioning selection certificates. Since the requirement to publish vacancy announcements for our competitions has already been met by the STAIRS open continuous vacancy announcements, use of recruitment flyers is an optional step which can be eliminated to expedite the selection process - and we have decided to eliminate that step. This means that selecting officials will be able to receive certificates of eligible candidates for their vacancies in a shorter period of time.

We will no longer issue recruitment flyers for jobs which are being competed. Instead each Directorate/PEO/Staff Code will identify the critical elements of each position in the crediting plan and immediately requisition a selection certificate from open continuous vacancy announcements in STAIRS. The code will then follow the normal process to select from each certificate.

So you know which positions are being competed, each Directorate, PEO and the Staff Code will prepare and submit to SEA 10 a list of positions in its organization which will be filled by competition. Via an All Hands email, next week SEA 10 will issue a consolidated list of the HQ/PEOs positions which will be filled by competition. For those positions where recruitment flyers have already been released, we will continue those recruitments to completion - they will also be identified on the consolidated list issued by SEA 10.

Through All Hands training sessions on STAIRS, Directorate/PEO/Staff Code All Hands meetings, and my All Hands emails, we have repeatedly encouraged all civilian employees to submit their resumes to the appropriate STAIRS open continuous vacancy announcements for the occupational series for which they are interested in being considered. By doing so, you are assured that your resume will be evaluated under STAIRS for all appropriate vacancies, whether the positions are announced as lateral competitions or as exceptions for promotion opportunities. If you have not yet submitted your resume into STAIRS, you risk missing opportunities to be referred and considered for positions for which you qualify. Therefore, it is in your best interest to enter your resume immediately into the STAIRS open continuous vacancy announcements for all occupational series for which you are interested in being considered.

As indicated in the published guidelines, we are following 3 steps to fill competitive positions:
    First - attempt to fill via lateral reassignment with an Area of Consideration (AOC) of HQ/PEOs
    Second - if the first fails, the Directorate/PEO requests approval from 09/00B to fill competitively (i.e., merit promotions with an AOC of HQ/PEOs)
    Third - if the first two fail, the Directorate/PEO requests approval to fill competitively from external sources

You will automatically be considered for both lateral reassignment and promotion opportunities if your resume is in STAIRS.

If you have any questions regarding this process, please feel free to contact your servicing Human Resources Specialist in SEA 107. If you don't know who that is, please contact Mr. Bill McCafferty, SEA 107, at 202-781-3169.

Pete Brown
Executive Director

*69*

1



**DEPARTMENT OF THE NAVY**
NAVAL SEA SYSTEMS COMMAND
1333 ISAAC HULL AVE SE
WASHINGTON NAVY YARD DC 20376-0001

IN REPLY TO
12300
Ser 10/042
11 June 2003

From: Deputy Commander, Corporate Operations Directorate
To:   Nadine D. Mills, SEA 10

Subj: REASSIGNMENT TO A NAVSEA HEADQUARTERS PLACEMENT PROGRAM (NPP) POSITION

Ref:  (a) SEA 00B memo 12000 Ser 10/255 of 3 Dec 02

1. As a result of the realignment of the Naval Sea Systems Command Headquarters and affiliated Program Executive Offices (NAVSEA HQ/PEOs) and mandated reductions in our civilian staffing levels, a significant number of current positions within the NAVSEA HQ/PEOs organization will not exist after 30 September 2004. It is our goal to place all employees occupying positions that will be abolished into continuing positions within the FY04 HQ/PEOs organization or at one of our field activities in the local commuting area prior to 30 September 2004. Because it will take time to accomplish this goal, in accordance with reference (a), we are establishing the NAVSEA Placement Program (NPP) effective 29 June 2003.

2. Your current position is among those that will not exist in the NAVSEA HQ/PEOs organization after 30 September 2004. Accordingly, you will be assigned to the NPP within the SEA 10 Directorate as its mission most closely aligns with your current functional responsibilities. Effective 29 June 2003, you are to report for duty to Gary A. Humes, SEA 10B, 197/3E3828, extension 11189. Prior to 29 June 2003, Gary A. Humes will provide you with a copy of your position description (PD) as well as information and instructions concerning your future work assignments including your specific seat assignment. You will be assigned to a generic PD at your current grade and occupational series. Your salary will not be impacted.

3. As you know, NAVSEA is also offering Voluntary Separation Incentive Pay (VSIP) and Voluntary Early Retirement Authority (VERA). While you may not choose to apply for VSIP/VERA, vacancies created by VSIP/VERA applicants in other Codes will result in vacant positions in the FY04 HQ/PEO organization into which you and other NPP members may be laterally reassigned. Once VSIP/VERA applications are approved (15 July 2003), we will immediately begin staffing actions to fill FY04 vacancies created by approved VSIPs/VERAs with priority consideration

73

Subj:  REASSIGNMENT TO A NAVSEA HEADQUARTERS PLACEMENT PROGRAM
       (NPP) POSITION

being given to NPP members using the process discussed in
paragraph 4 below.  If you as an NPP member are selected for and
accept one of these vacancies, you will be laterally reassigned
to this position as quickly as possible to enable turn over
between you as the future incumbent and the person vacating with
a VSIP/VERA.

4.  Beginning with the date of this letter, members of the NPP
will be the first to be considered for lateral reassignments
into any new or newly vacated positions in NAVSEA HQ/PEOs.
Assuming you have submitted a resume to the Standard Automated
Inventory Referral System (STAIRS), as a member of the NPP, you
will automatically be considered for all vacant positions at
your current grade level for which you qualify within the NAVSEA
HQ/PEOs FY04 organization.  Once a match between your skills and
a vacant position on the FY04 staffing plan is identified, you
and other similarly situated members of the NPP will be referred
to the selecting official for consideration.  If selected, you
will be offered lateral reassignment from the NPP.  If you
accept the offered position, you will be reassigned to that
position and removed from the NPP.  If you decline the offered
position, you will remain in the NPP and will continue to
receive placement consideration for vacant positions.  NPP
members will be permitted to decline offers into continuing FY04
staffing plan positions until 6 September 2003.  If you have not
accepted an offer of reassignment into a continuing FY04
position by 6 September 2003, you may be reassigned via a
Management Directed Reassignment (MDR) into a new or previously
offered vacant position for which you are qualified on the FY04
staffing plan.  If you decline the MDR, you may be separated
from Federal Service which is explained in paragraph 5 below.
Once you either accept a job offer or are placed by MDR, you
will no longer be a member of the NPP.  Membership in and/or
placement through the NPP does not preclude you from applying
for any announced vacancies including promotion opportunities.

5.  If attrition and VSIP/VERA are insufficient to enable the
Command to reach mandated budget reductions in its civilian
staffing levels, it will be necessary to place as many remaining
NPP members as possible into NAVSEA HQ/PEOs FY04 staffing plan
vacancies through MDRs.  As indicated above, commencing 6
September 2003, if you do not accept a MDR, you may be separated
from Federal service.  Since employees will be offered a
continuing position at their current grade level with no change
in pay, they will not be negatively impacted by the
reassignment.  Employees declining a MDR within the local
commuting area are not entitled to reduction in force (RIF)
protections such as bump and retreat rights, Priority Placement
Program (PPP) registration, and severance pay.  You will be

74

2

Subj:  REASSIGNMENT TO A NAVSEA HEADQUARTERS, PLACEMENT PROGRAM
       (NPP) POSITION

notified by separate correspondence should the Command find it
necessary to place you via a MDR.

6.  Please note that, if a RIF is required after the Command
completes all possible reassignments into vacant positions
within the NAVSEA HQ/PEOs FY04 staffing plan, RIF regulations
will apply equally to all employees within NAVSEA HQ/PEOs.  The
RIF regulations and the protections mentioned in paragraph 5,
will apply equally to all HQ/PEO employees regardless of whether
or not employees are/were in the NPP and regardless of whether
or not they have been placed in a position via a MDR.

7.  The Command will use STAIRS to place NPP members into vacant
FY04 staffing plan positions.  If you haven't already done so,
you are directed to build and submit your electronic resume in
STAIRS.  You must determine the occupational series for which
you wish consideration and submit an up-to-date resume through
STAIRS to the open continuous vacancy announcements maintained
by the Human Resources Service Center (HRSC) Northwest for these
series.  Because you may be qualified for more than one series,
you are encouraged to apply to all open continuous vacancy
announcements for which you wish to be considered.  Once your
resume is uploaded, you will receive confirmation of receipt.

8.  Since the NPP is designed for lateral reassignments only
(not for promotions), please make sure that your resume
(including any that you currently have on file with STAIRS)
indicates your current grade level as the lowest grade you will
accept or you will not be referred for consideration and
placement under the NPP.  Indicating your current grade level as
the lowest grade level you will accept will not preclude you
from receiving consideration for selection for promotion to a
position with a higher grade level should such opportunities
arise.

9.  If you need assistance with STAIRS, you are encouraged to
contact your Human Resources Advisor within the Human Resources
Customer Service Branch (SEA 10711).  You are also encouraged to
work with your Training Coordinator and the Command Learning and
Development Division (SEA 108) regarding training opportunities
to prepare you for placement opportunities.  If you need
assistance with your resume, contact your Training Coordinator
to obtain information about resume training being offered by
SEA 108.  Your Administrative Officer can provide you with the
appropriate points of contact within SEA 10711 and SEA 108.

10.  The current performance rating period under the NAVSEA Two-
Level Performance Management Program ends 30 June 2003.
Therefore, your current supervisor will close out your final

75

3

Subj:   REASIGNMENT TO A NAVSEA HEADQUARTERS PLACEMENT
        PROGRAM (NPP) POSITION

2002/2003 rating of record prior to 29 June 2003.  Your new
supervisor will establish your performance standards for
the 2003/2004 rating cycle.

11.  If you have questions or need further assistance, you
are encouraged to contact the management official
identified in paragraph 2 above.

BONITA P. FLYNN

Copy to:
SEA 10
SEA 107
SEA 108

76

4

# POSITION *(Please Read Instructions on the Back)*

| | | | | |
|---|---|---|---|---|
| **POSITION** *(Please Read Instructions on the Back)* | | | **1. Agency Position No.** KDS2325999 | |

**2. Reason for Submission**
- ☐ Redescription   ☒ New
- ☐ Reestablishment   ☐ Other

Explanation *(Show any Positions replaced)*

REASSIGNMENT

**3. Service**
☒ Hdqrs.   ☐ Field

**4. Employing Office Location**
Washington D.C.

**5. Duty Station**
Washington D.C.

**6. OPM Certification No.**

**7. Fair Labor Standards Act**
☒ Exempt   ☐ Nonexempt

**8. Financial Statements Required**
☐ Executive Personnel Financial Disclosure   ☐ Employment and Financial Interests

**9. Subject to IA Action**
☐ Yes   ☒ No

**10. Position Status**
- ☒ Competitive
- ☒ Excepted *(Specify in Remarks)*
- ☐ SES (Gen.)   ☐ SES

**11. Position is:**
- ☐ Supervisory
- ☐ Managerial
- ☒ Neither

**12. Sensitivity**
- ☐ 1-Non-Sensitive   ☐ 3-Critical Sensitive
- ☒ 2-Noncritical Sensitive   ☐ 4-Special Sensitive

**13. Competitive Level Code**
CO29

**14. Agency Use**

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. U.S. Office of Personnel Management | | | | | | |
| b. Department, Agency or Establishment | | | | | | |
| c. Second Level Review | *Management Analyst* | GS | 343 | 12 | SR | 7/11/02 |
| d. First Level Review | | | | | | |
| e. Recommended by Supervisor or Initiating Office | | | | | | |

**16. Organizational Title of Position** *(if different from official title)*

**17. Name of Employee** *(if vacant, specify)*
Nadine Mills

**18. Department, Agency, or Establishment**
Department of the Navy

**a. First Subdivision**
Naval Sea Systems Command

**b. Second Subdivision**
Corporate Operations Directorate (SEA 10)

**c. Third Subdivision**
Facilities Management Division (SEA 102)

**d. Fourth Subdivision**
Property & Command Support (SEA 1023)

**e. Fifth Subdivision**

**19. Employee Review**-This is an accurate description of the major duties and responsibilities of my position.

Signature of Employee *(optional)*

**20. Supervisory Certification.** *I certify that this is an accurate statement of the knowledge that this information is to be used for statutory purposes relating major duties and responsibilities of this position and its organizational to appointment and payment of public funds, and that false or misleading relationships, and that the position is necessary to carry out statements may constitute violations of such statutes or their implementing Government functions for which I am responsible. This certification is necessary to carry out Government functions for which I am responsible. This certification is regulations.*

**a. Typed Name and Title of Immediate Supervisor**
Jerry Gregg, Branch Head (SEA 1023)

Signature *Mary Ann Rahosky for*   Date 10 Jul 1902

**b. Typed Name and Title of Higher-Level Supervisor or Manager** *(optional)*

Signature   Date

**21. Classification/Job Grading Certification.** *I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.*

**22. Position Classification Standards Used in Classifying/Grading Position**
OPM PCS: GS 343, GEGEG,
GSSG - HRCD-7 -7/99

Typed Name and Title of Official Taking Action
HUMAN RESOURCES SPECIALIST

Signature *Elizabeth Higgins*   Date 7/11/02

Information for Employees. The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the U.S. Office of Personnel Management. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the U.S. Office of Personnel Management.

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee *(optional)* | | | | | | | | | | |
| b. Supervisor | | | | | | | | | | |
| c. Classifier | | | | | | | | | | |

**24. Remarks**
FPL GS-12

**25. Description of Major Duties and Responsibilities** *(See Attached)*

OF 8 (Rev. 1-1985)
U.S. Office of Personnel Management
FPM Chapter 295

MANAGEMENT AND PROGRAM ANALYST          FLSA EXEMPT
POSITION
GS-343-12                        Position No._____

## I. INTRODUCTION

Serves as a analyst and staff adviser to management in evaluating: (a) effectiveness of
government programs and operations; (b) productivity and efficiency of administrative
management; or (c) both.  Provides analytical and evaluative services to management in
one or more of the following areas:

PROGRAM ANALYST FUNCTIONS          MANAGEMENT ANALYST FUNCTIONS

___ Conception                     ___ Management Counseling/Advice

___ Planning                       ___ Organizational Analysis

___ Research & Development (R&D)    _X_ Methods/Procedures Analysis

___ Test & Evaluation (T&E)        _X_ Management Surveys/Research

___ Production                     _X_ Manpower Use/Controls

___ Distribution & operations      _X_ Documentation Procedures/Controls

___ Maintenance & Termination      ___ Directives Management

                                   ___ Files Analysis/Design

                                   ___ Management Information
                                       Systems

## II. DUTIES AND RESPONSIBILITIES

### 1. PROGRAM ANALYSIS DUTIES

a. Reviews plans and proposals submitted by managers to modify or initiate new
programs/projects.  Suggests alternatives or options. ____%

b. Submits plans and proposals to management for modification or initiation into a new
program/project.  Implements methods of securing information for management's use in
developing and carrying out various phases of programs/projects.  Participates in surveys,
on-site investigations, and discussions with supervisors.            ____%

c. Monitors operating programs to measure progress toward reaching objectives
effectively and economically.  Identifies actual and potential problem areas, trends,

83

significant accomplishments, deficiencies, and areas of imbalance. Makes recommendations (orally or in writing) to supervisors based on research findings.
____%

## 2. MANAGEMENT ANALYSIS DUTIES

a. Conducts studies and reviews. Informs supervisor of potentially controversial issues or problems. Studies organizational goals and effectiveness in achieving intended objectives.    40 %

b. Applies accepted management practices, techniques, and methods to assigned studies. Uses knowledge of organization's functions and procedures. Gathers, assembles, and analyzes facts; draws conclusions; and recommends solutions to problems.    40 %

c. Represents the command in meetings, and provides oral and written presentations to managers. Provides charts and graphs that cover varied problems and subjects.    20 %

## III. FACTOR LEVEL DEFINITIONS

FACTOR 1 - Knowledge Required by the Position.

−Comprehensive knowledge of cognizant operating program/project to conduct analytical studies for the purpose of providing management officials with advice and evaluative material they need for effective direction of the program/project;

−Ability to modify standard management practices and procedures to solve a variety of problems related to the development and/or execution phases of operating programs/projects;

−Ability to adapt precedents or make significant departures from previous approaches in determining the kind of information needed to measure effectiveness of program/project progress;

−Ability to prepare and make oral and written presentations ot clearly present specific problems, provide detailed recommendations for achieving program/project objectives in an efficient and effective manner;

−Ability to explain the effect of alternative or other change actions on program/project operations;

−Independently capable of presenting controversial and critical observations, findings, and recommendations for substantial changes in customary program/project management work operations even though management may be reluctant to agree that the practices being followed do not require any changes.

FACTOR 2 - Supervisory Controls.

Works under the general supervision of the immediate supervisor who consults with the incumbent on such matters as developing the broad aspects of the assignments and long-term milestones to be reached. Completed work is reviewed for effectiveness in meeting requirements, expected results, and impact on mission functions. Overall objectives and available resources are defined by the supervisor; however, the incumbent independently plans, analyzes, reviews, and carries out assignments. The incumbent keeps the supervisor informed of progress, potential controversial subjects, and situations and actions which affect policy and funds.

FACTOR 3 - Guidelines.



84

Guidelines include Navy and other Federal laws, regulations, policy statements, procedures, practices, and other features of managing a major defense system/equipment/service type of program/project. These guidelines are generally inapplicable in specific issues and the kinds of problems encountered; therefore, the incumbent has to exercise a high degree of judgement and creativity in the selection, interpretation process of using such criteria. Also, the incumbent is responsible for developing guidelines where current criteria is deficient or nonexistent.

## FACTOR 4 - Complexity.

Assignments involve developing new or substantially modified work operations and progress procedures, resource estimates and utilization, intra and inter-program/project balances, and other related aspects of management which strongly influence or change the way of achieving management objectives. The evaluative analyses of all aspects of new or established programs/projects include the organization's objectives, policies, identification of actual or potential problem areas, prediction of trends and ecomomical/political impact situations, and other similar concerns to management that interrelate.

Ability to lead conferences with representatives of the subject being studied in order to establish coperative relationships, present controversial and critical observations and recommendations, and convince others to accept proposals with which they may strongly disagree.

## FACTOR 5 - Scope and Effect.

Programs/projects analyzed and evaluated deal with major defense systems/equipments/services which are of importance to the defense of this country and allies. Guidance developed by the incumbent relates to program/project requirements, development, test and evaluation, training, maintenance and support, and translation of this criteria into policy direction. The work also assists staff and team members in the preparation of pricing estimates, progress actions, and change requests and directives. Work integrates and updates various developmental and execution phases of the programs/projects into a consolidated set of plans and objectives with which management can effectively and economically use to accomplish mission objectives.

## FACTOR 6 - Personal Contacts.

Contacts include Program/Project Managers, Deputy Program/Project Managers, and cognizant team officials, and contractors and suppliers.

## FACTOR 7 - Purpose of Contacts.

Contacts are for the purpose of developin assigned defense system/equipments/services guidelines for managing these subjects. The guidelines relate to requirements, development, T&E, procurement, training, maintenance, and other aspects of management. The data provided by the incumbent enables managers to achieve mission goals in an efficient and economical manner. Contacts with officials outside Navy (e.g., contractors, suppliers, etc.) are to ascertain effectiveness and economy of their participation in the programs/projects.

## FACTOR 8 - Physical Demands.

Work is mostly sedentary. There is occasional stress caused by extended work hours brought about by fact-finding sessions and short deadlines.



**FACTOR 9 -** Environment.

Work is primarily conducted in an office setting. Some travel is required to coi    or
and supplier sites and field offices.

86



**DEPARTMENT OF THE NAVY**

NAVAL SEA SYSTEMS COMMAND
1333 ISAAC HULL AVE SE
WASHINGTON NAVY YARD DC 20376-0001

IN REPLY TO

12300
Ser 10/143
24 June 2003

From:  Gary A. Humes, SEA 10B
To:    Nadine D. Mills, SEA 10

Subj:  REASSIGNMENT TO A NAVSEA HEADQUARTERS PLACEMENT PROGRAM
       (NPP) POSITION

Encl:  (1) PD Number K0S3B118, Management and Program Analysis,
       GS-343-12

1.  Previously you were advised that your current position will
not exist in the NAVSEA HQ/PEOs organization after 30 September
2004.  You were also advised that you would be reassigned from
SEA 10 to the NPP in the Directorate that performs the work most
closely related to your experience effective 29 June 2003. I
will serve as your functional manager while you are assigned to
the NPP.

2.  Effective 29 June 2003, you are to report for duty to your
daily supervisor Mary Lou Rakosky, SEA 1021, Building 197, seat
1E1710, extension 12485.  Enclosure (1) is your new position
description (PD).  You will be assigned to work in Building 197
at seat 1E-1657.  Your daily supervisor will provide you with
specific instructions concerning your future work assignments,
leave approval, and certification of time and attendance under
SLDCADA.

3.  As your functional manager, I look forward to working with
you and to assisting you in being placed through the NPP into an
FY04 staffing plan position.

4.  If you have questions or need further assistance, please
contact me at 11189.

*Gary A. Humes*

GARY A. HUMES

Copy to:
SEA 10B
SEA 1021
SEA 107
SEA 108

88

# POSITION DESCRIPTION

| | | | | | | 1. Agency Position No. |
|---|---|---|---|---|---|---|
| | | | | | | K0S3B118 |

| 2. Reason for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station | | 6. OPM Certification No. |
|---|---|---|---|---|---|
| ☒ Redescription ☐ New<br>☐ Reestablish ☐ Other | ☒ Hdqtrs ☐ Field | Washington, DC | Washington, DC | | |

| 7. Fair Labor Standard Act | 8. Financial Statements Required | 9. Subject to IA Action |
|---|---|---|
| ☒ Exempt ☐ Nonexempt | Executive Personnel ☐ Financial Disclosure / Employment and ☐ Financial Interest | ☐ Yes ☒ No |

| 10. Position Status | 11.Position Is | 12. Sensitivity | 13. Competitive Level Code |
|---|---|---|---|
| ☒ Competitive | ☐ Supervisory | ☐ 1--Non Sensitive   ☐ 3-Critical | C045 |
| ☐ Excepted (Specify in Remarks)<br>☐ SES (Gen.) ☐ SES (CR) | ☐ Managerial<br>☒ Neither | ☒ 2-Non-critical Sensitive   ☐ 4 Special Sensitive | 14. Agency use |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. Office of Personnel Management | | | | | | |
| b. Department, Agency or Establishment | | | | | | |
| c. Second Level Review | Management and Program Analysis | GS | 343 | 12 | EJH | 6/20/03 |
| d. First Level Review | | | | | | |
| e. Recommended by Supervisor or Initiating Office | Management and Program Analysis | GS | 343 | 12 | | |

| 16. Organizational Title of Position (if different from official title) | 17. Name of Employee (if vacant, specify) |
|---|---|
| Management Analyst | Mills, Nadine |

18. Department, Agency, or Establishment
DEPARTMENT OF THE NAVY

c. Third Subdivision

a. First Subdivision
Naval Sea Systems Command

d. Fourth Subdivision

b. Second Subdivision
SEA 10

e. Fifth Subdivision

19. Employee Review-This is an accurate description of the major duties    Signature of Employee (optional)

20. Supervisory Certification: I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

| a. Typed Name and Title of Immediate Supervisor | b. Typed Name and Title of Higher-Level supervisor or manager (optional) |
|---|---|
| Gary A. Humes | |
| Signature *Gary A. Humes*    Date 6/24/03 | Signature    Date |

21. Classification/Job Grading Certification: I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.

Typed Name and Title of Official Taking Action

Everett J. Higgins
Lead Human Resources Specialist

Signature *Everett Higgins*    Date 6/20/03

22. Position Classification Standards Used in Classifying/Grading Position
OPM PCS:. 343, Management and Program Analysis, TS-98, DATED 8/90

Information for Employees: The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the U.S. Office of Personnel Management. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the U.S. Office of Personnel Management.

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee (optional) | | | | | | | | | | |
| b. Supervisor | | | | | | | | | | |
| c. Classifier | | | | | | | | | | |

24. Remarks    FPL:  12    This is a generic PD, part of the NAVSEA placement initiative, it will be abolished when the incumbent is reassigned.

89

25. Description of Major Duties and Responsibilities (See Attached)



**Human Resources Service Center, Northwest**
**3230 NW Randall Way**
**Silverdale, WA  98383**

# NONCOMPETITIVE CERTIFICATE

*Privacy Act data found on documents accompanying this certificate must be safeguarded*

| | | | |
|---|---|---|---|
| **REQUISITION NUMBER:** | CAPNWC03-0301-12-183829 | **SELECTING OFFICIAL** | **Mary Lou Rakosky** |
| **DATE ISSUED:** | 04/25/2003 | **SELECTING OFF PHONE** | 202-781-2485 |
| **POSITION TITLE** | FACILITIES PROGRAM COORDINATOR | **HRSC RECRUITER:** | Janice Hale |
| **TARGET LEVEL** | GS 12 | **PP/SERIES/GRADE:** | GS-0301-12 |
| **DUTY LOCATION 102** | HQ NAVSEA WASHINGTON DC   DC | **SEARCH OPTION USED:** | ANNOUNCEMENT CAPNWC03-0301-293 |

**INSTRUCTIONS:**

1. Assess each candidate's experience, training, performance, awards, etc. against job-related criteria, and in conjunction with applicable merit staffing or bargaining unit agreements.

2. It is recommended that you document, for your personal files, any selection criteria used, interview questions and responses, and/or any other information you think may be relevant in a selection inquiry.

3. Make your selection(s). Selection(s) should be made from candidates who best possess the knowledge, skills, and/or abilities required to successfully perform the job. Indicate your selections(s) by placing "S1" next to the name of your first choice, "S2" next to the name of your alternate or second choice, etc. To expedite processing, it is recommended you consider selecting alternatives in the event of declination.

4. Sign and date the certificate, then return to your Human Resources Representative. All position offers will be made by a Human Resources Representative once it has been determined that selectee(s) meet necessary appointing requirements.

5. Questions regarding interview, panel, or selection procedures should be addressed to your Human Resources Representative.

| SELECTION ACTION | CATEGORY | NAME | PHONE | |
|---|---|---|---|---|
| | Qualified | Mills,Nadine | (202) 781-2480 | - Work |
| | Qualified | Paige,Lynnelle | (202) 781-2493 | - Work |

[ ]  **No Selection made from this certificate.**

---

SIGNATURE OF SELECTING OFFICIAL                                   DATE

---

SIGNATURE OF REVIEWING OFFICIAL
(IF APPLICABLE)                                                              DATE

///

Mills Nadine D NSSC

| | |
|---|---|
| **From:** | Brown Pete F NSSC |
| **Sent:** | Monday, July 15, 2002 1:10 PM |
| **To:** | #NSSC ALL HANDS ONSITE GOVT |
| **Subject:** | All Hands #451: Update on NAVSEA Headquarters and PEO Staffing Budgets for next few years |

Folks:

This is an update on the situation with the Headquarters and PEO salary budget for the next few years. Many months ago, I told you that we were working with our sponsors and other Navy leadership to support a modest reduction of about 10 percent in the Headquarters and PEOs by the end of FY04. We're coming to the end of the budget process and, as of now, we have not been successful in achieving this limited reduction. While we do not yet have a final determination of our FY04 and out years staffing levels, we do know that the Headquarters and PEO reductions from now through FY04 will likely be 18 percent or greater. We should have our final budget controls by late July.

From what we see now, our downsizing requirement over the next two years will be more than what can be achieved with a continuation of our hiring freeze and with normal attrition alone. If our budget controls continue to require this downsizing, then we may offer Voluntary Separation Incentive Pay (VSIPs) in FY03. We would also request Voluntary Early Retirement Authority (VERA) from DoD/OPM.

We're working on a new staffing design for our Headquarters and PEO. The Executive Directors are engaged in an effort to improve our productivity and to determine the future positions across our programs, business and functional areas. The series and grades for which we may offer VSIP/VERA will be based on the outcome of this effort. VSIP/VERA will not be offered to as broad a range of series and grades as we did before we moved to the Navy Yard several years ago.

Once we have more definitive information, we will let you know more about our plans and progress. Right now our primary goals in the budget process are to focus the future Command/PEOs on what is needed in the organization to accomplish our mission and to limit staff reductions to what can be accomplished through voluntary means.

Pete Brown
Executive Director

|3|

**Mills Nadine D NSSC**

From:           Brown Pete F. NSSC
Sent:           Friday, August 09, 2002 8:09 AM
Subject:        All Hands #475: Update on NAVSEA Hq/PEO Staffing and Reductions

Folks:

Back on 15 July I sent you an update of our Headquarters and PEO staffing budget situation over the next few years (All Hands #451). Since then it's been a bit of a roller coaster ride with the various marks from FMB and other parts of Navy. Right now our budget reductions result in an 18 percent reduction in on-board civilian personnel through FY 04. We will only be able to afford an on-board civilian personnel count of about 2390 by September 2004. We have about 2900 full time civilians on-board now. Our hiring freeze and normal attrition will not get us to the 2390 target.

On Wednesday, 7 August, you all received a message from COMNAVSEA, VADM Balisle. That message outlines a number of significant challenges facing the Command and highlights these Headquarters and PEO staffing reductions. We will take a multi-pronged approach to continue to do our mission while reducing both our civilian staffing and our overall cost of doing business. There will likely be changes in both how we operate our functions, processes and programs and where we do that work. There may be areas where the work can be performed outside of Headquarters and the PEOs more effectively. We may stop doing certain things altogether. We will offer voluntary separation incentives and we will request Voluntary Early Retirement Authority from DoD.

We have retained the firm that was successful in improving the productivity and effectiveness of PEO Carriers to help us with reengineering the way we do our business. DeWolff, Boberg Associates (DBA) is working with managers to identify our workflow processes and improve our overall effectiveness and productivity. Financial Management, Engineering, and Command Support functions across all Hq/PEO organizations are being looked at now. In the next few months this review will touch over 1600 Hq/PEO civilian positions, as well as contractors, and field personnel stationed at Hq/PEOs. Overall, I do not expect to see an increase in either the on-site or total support contractor workload, or in the on-site NAVSEA field activity personnel as a result of our reductions and the DBA improvements.

As I mentioned above, we have decided to offer Voluntary Separation Incentive Pay (VSIP) and will request Voluntary Early Retirement Authority (VERA) for early FY03. We will have a formal memo out on this shortly but, for your personal planning purposes, you should begin to consider your alternatives now. There will be a sign-up timeframe and we plan to have the people who accept this offer off our rolls by early January 2003. Because of the significant size of the needed reductions, we do anticipate offering VSIP/VERA across a wide mix of job series and grades, GS and Demo/Pay Banding employees. The formal memo will identify a handful of series and grades where we will not offer VSIP/VERA.

I told you in July that it was our intent to accomplish the mandated manpower reductions using voluntary means. We have been able to sustain that intent with the currently budgeted reductions in FY03 and FY04. What we must do in the next six months will not be easy. I believe we have tools at our disposal that will carry us through this - VSIP/VERA for the large number of employees who are eligible for either early or optional retirement or who choose to resign - the productivity initiative that will permit us to do much of the required work with the fewer staff - and our Leadership focused on getting the mission done effectively, more productively, and in a fashion that can be sustained by the future staff size.

Look for the VSIP/VERA memo. You should see it in the next few days. Begin thinking about your plans and alternatives.

Pete Brown
Executive Director

132

**Mills Nadine D NSSC**

| | |
|---|---|
| From: | Brown Pete F NSSC |
| Sent: | Friday, July 11, 2003 10:55 AM |
| To: | #NSSC ALLHANDS HQGOV |
| Subject: | All Hands #197:  Update on HQ/PEO Realignment: Moves, NPP and VSIP/VERA |

Folks:

This e-mail provides you with an update on the status and plans for our NAVSEA HQ/PEO realignment, office relocations, and personnel reductions.

Status of Realignment/NPP/FY 04 Vacancies:  Since my last update, we completed the Phase II moves (with the exception of a few minor moves which require construction in Bldg 201), established the NAVSEA Placement Program (NPP), and reassigned 231 employees who were not in permanent FY04 positions to the NPP. We currently have 133 vacancies in the FY04 staffing plans and have identified the specific series/grades for which current NPP Members qualify. We found about 119 matches between a vacancy and NPP employees' qualifications. In these cases we issued selection certificates (certs) to the Directorates/PEOs with these vacancies. Only NPP Members names are on these certs. This follows our policy that, where possible, vacancies in the FY04 organization will be filled with people who are currently assigned to the NPP. So far, 14 vacant FY04 positions have already been filled with NPP Members.

In some cases, we have positions for which there are no qualified NPP candidates. To date, in addition to those previously authorized in SEA 02 for contracts negotiators/specialists, we have identified 12 of these. Following our policy, these 12 positions will be competed under Merit Promotion principles. Most will have an area of consideration (AOC) of NAVSEA HQ/PEOs only. Some will be competed externally in those series/grades for which there are no likely candidates anywhere in HQ/PEOs. Those approved to date are as follows:

| Code | Title | Series/Grade | AOC |
|---|---|---|---|
| PEO IWS | Supervisory Business Manager | GS-501-14 | HQ/PEOs |
| PEO IWS | Budget Analyst | GS-560-14 | HQ/PEOs |
| PEO Ships | Executive Secretary (OA) | GS-318-09 | HQ/PEOs |
| SEA 01 | Financial Analyst | GS-501-14 | HQ/PEOs |
| SEA 01 | Supervisory Budget Analyst | GS-560-14 | HQ/PEOs |
| SEA 04R | Supv. Safety & Occupational Health Mgr | GS-018-14 | HQ/PEO |
| SEA 04R | Safety & Occupational Health Manager | GS-018-14 | All Sources |
| SEA 04N | Supv. Health Physicist (Already advertised) | GS-1306-14 | All Sources |
| SEA 05B | Executive Secretary (OA) | GS-318-08 | HQ/PEOs |
| SEA 104 | Security Specialist | GS-080-13 | All Sources |
| SEA 104 | Supervisory Security Specialist | GS-080-14 | All Sources |
| SEA 104 | Supervisory Security Specialist | GS-080-14 | All Sources |

Both NPP Members and other HQ/PEO employees may compete for these promotions. Vacancies in FY04 staffing plan positions created by such internal promotions will be made available first for lateral reassignment of NPP Members. On these and all future vacancies which offer promotion opportunities, a flyer will be released via your Administrative Officer (AO) making you aware of the competitions. If your resume is already in STAIRS, you do not have to apply again to receive consideration for these vacancies. Seven (7) working days after the flyers are released by SEA10 to the AOs, SEA10 will request a selection cert from STAIRS  If your resume is in STAIRS and you are eligible/highly qualified for these positions, your name should appear on the cert which will be provided to the selecting official.

VSIP/VERA Update:  As mentioned in my last All Hands, we accepted applications for Voluntary Separation Incentive Pay/Voluntary Early Retirement Authority (VSIP/VERA) through 30 June 2003:

- We received 101 applications.
- We took the time to understand the impacts of these employees leaving
- We took time to determine how we would replace people who were leaving the FY04 staffing plan positions - using NPP Members
- Of the 101 applications, the majority will be approved - we are still working on the rest.
- No later than 15 July, individuals who applied for VSIP/VERA will be notified whether or not their applications have been approved. They will also be given information on what other forms need to be completed and will be told who to contact in SEA107 in order to complete the final approval process.
- Employees who accept VSIP/VERA must be off NAVSEA rolls by 6 September 2003.

Some of the employees whose VSIP/VERA applications have been approved are in the NPP. However, many are not. Accepting applications from those who are not in the NPP will result in additional placement opportunities for employees who are in the NPP. Our goal is to place all NPP members in on-going FY04 positions as quickly as possible.

The Deputy in your Directorate/PEO has been involved in all stages of this process. If you have questions/concerns, please address your questions to him/her. The next few months will be somewhat difficult, but we have made tremendous progress to date and I am convinced that we will continue to do so

Pete Brown
NAVSEA Executive Director

# Summary of EEO Compliant

**First compliant filed December 12, 2001 –**
**Disparate treatment – Position Classification unequal among employees**
**Second compliant filed May 22, 2003 -**
**Retaliation against filing a previous compliant in December 2001**

- I came to the Naval Sea Systems Command (NAVSEA) in October 1999 from the Naval Technical Representative Office, Laurel, Maryland. I was assigned the Division Director's position of the Property & Inventory Division. The SEA 09A Code was made up of six divisions. The other Division Directors were GS-13's and one GS-14 (Financial Support Division) and I was the only GS-12.

- Differences between Divisions: Division Directors/Employees grades were not the same or equal according to workload. The grade structure of my employees and myself were lower than other employees performing the same type of duties. Other Division Directors were able to promote, recruit or hire contractors, I was not. When I lost personnel they were replaced with personnel from other directorates within NAVSEA. I was not allowed to advertise for positions nor perform interviews of the employees. I was just told when they would report for duty.

- After filing a compliant and being replaced as the Division Director, it began to affect my health. In November 2002 my doctor suggested that I take sometime off or maybe work from home to reduce the stress at the office. I requested to Telework and was denied. Again I was discriminated against because at the same time two other employees were off due to health reasons and were allowed to Telework. Both of the employees were white females. I later filed a Workmen's Compensation Claim.

- On December 12, 2001, I was notified of a re-organization within our Code. My functions would be divided and incorporated into two other divisions.

- In July 2002, a Mr. Jerry Gregg replaced me as the Division Director. Mr. Gregg was assigned to my Division after his was disestablished (SEA 91). Mr. Gregg chose to take the early retirement buyout and retired six months later, January 2003. Management was aware that he was taking the buyout but placed him in the position anyway.

- In May 2003 we were notified of a Command-wide reorganization. On May 8, 2003 I was told I no longer had a job. My division personnel were reassigned. My duties were divided among other personnel and I was given other menial duties.

- Later I was told due to the reorganization personnel had to compete for their positions. The Command informed us that they had to cut personnel by 25% by the end of FY04. We had to downsize from 16 to 12 personnel. Lynn Paige and I

*147*

were asked to meet with Mike Davis, Director and Mary Lou Rakosky, Deputy concerning our positions. Mrs. Paige and I were the only GS-12's in the Division and were told we had to compete for our position because there would only be one position at the GS-12 level.

- Mr. Davis met with me in his office and asked if I was considering the early out, I told him no because I do not have the age to retire and would be penalized the 2% for every year under the age of 55. The next day he called me into his office to tell me I was not selected for the position.

- As a result of competing for our position, Mrs. Paige appeared on the GS-12 and GS-13 eligibility list. Mr. Davis states that he was not aware that Mrs. Paige previously held a GS-13. Mr. Davis asked Bonnie Flynn, Deputy Commander, Corporate Operations Directorate if he could fill the position at the GS-13 level instead of the GS-12 level. Ms. Flynn authorized the selection at the GS-13 level.

- Mrs. Paige was already in the position as the Facilities Specialist that we had to compete for. Mrs. Paige held the position for many, many years before I arrived at NAVSEA. Mrs. Paige was offered a promotion and transferred to another agency. I was hired to take Mrs. Paige's position as the Division Director for the Property and Inventory Division. Mrs. Paige was detailed and acting Division Director for the Property & Inventory Division before she was offered the position with the other agency. Mrs. Paige later returned in September 2002 as a Facilities Specialist, GS-12.

- With Mrs. Paige being promoted to the GS-13, whatever happened to the only GS-12 position? What are futures plans if the GS-12 position was abolished? Will the GS-12 position be rewritten and advertised?

- The position had been written for a Facilities Specialist in which I would not be highly qualified. I'm a Management Analyst, GS-0343/12, in which I've never had a P.D. since coming to NAVSEA. On June 24, 2003, I was given a letter along with a P.D. stating the reassignment to the NAVSEA Placement Program (NPP) position. Mary Lou Rakosky, would still be my immediate supervisor.

- Status of Realignment – NAVSEA established the NPP and reassigned 231 employees who were not in permanent FY04 positions. To date all employees have been placed in permanent positions except about 40 in which I am one of them.

- In an email dated April 17, 2003, from Mike Davis, he stated that Mary Lou Rakosky would be the selecting official for the Special Projects Branch and he would be the selecting official for the GS-13 Facilities Branch Head job.

*148*

- Basis for Alleged Discrimination: Race (African-American) and Sex (Female) Disparate Treatment and Reprisal (Complaint filed December 2001)

- Resolution Requested: Request a permanent position to the GS-13 level plus back pay or given a permanent position with promotion potential. Requests back pay to October 2000, after being in the position for a one-year.

- Request immediate transfer to another Office.

149

September 24, 2002

U.S. Equal Employment Opportunity Commission
1400 L Street, N. W. Suite 200
Washington, D. C. 20005

EEOC No. 100-A2-8053X

Agency No: DON-0200024-006

Appeal No: 01A23239

In response to your Decision, request to reconsider with supporting information:

**Update of my complaint:** The Naval Sea Systems Command (NAVSEA) was reestablished effective 14 Jul 2002, and many Directorates were realigned. (Organization Charts enclosed) As you can see according to the Organization Chart, Mr. Jerry Gregg (GS-13), replaced me as the Division Director; and the Property and Inventory Division was also given additional duties.

In addition, NAVSEA Headquarters is offering Voluntary Separation Incentive Pay (VSIP) and Voluntary Early Retirement Authority (VERA) which many employees will be taking advantage of including Mr. Jerry Gregg. Mr. Gregg has submitted his paperwork for early retirement effective 3 January 2003. Mr. Gregg has informed me that when he retires Management informed him that the GS-13 position would be abolished.

Due to the reorganization, two GS-13's (Jerry Gregg and Earl Bradford) were reassigned to the Facilities Management Division. They both were made Division Directors. As of this date, we have three Divisions, two Facilities and Space Management Divisions and the Property and Command Support Division. I understand that a Command wide reorganization went into effect, but there was no reason why the Property and Command Support Division could not have remain the same. I believe it is intentional discrimination to keep me from being promoted. Once again, another Division Director (Earl Bradford), did not want to perform a particular duty/function (Parking) it was passed on my Division. Parking responsibilities are part of the Facilities function not Property Management, again preferential treatment. We were also told at our weekly staff meeting that after Mr. Gregg retires there would only be two divisions. There is still no reason why there can't be three divisions; they intentionally do not want to promote me. I'm sure I will be reassigned as a Team Leader and will still be expected to supervise.

Thank you,

Nadine D. Mills

Nadine D. Mills

*150*

1st Compliant

# EEO COUNSELOR'S REPORT
## OF
# NADINE D. MILLS

FOR OFFICIAL USE ONLY (FOUO) - PRIVACY ACT SENSITIVE

This document also contains information

EXEMPT FROM MANDATORY DISCLOSURE under the FOIA.

Exemptions 5 USC 552a (k) (2) and

5 USC 552 (b) (5), (b) (6), (b) (7) (A), (b) (7) (B), and (b) (7) (C).

DISCLOSE ON A NEED-TO KNOW BASIS ONLY

151

Encl (1)

## EEO COUNSELOR'S REPORT

### 29 C.F.R. Section 1614.105(c)

**A.**  **AGGRIEVED PERSON**

    **Name:**                         Nadine Mills

    **Job Title/Series/Grade:**    Management Analyst (Division Director), GS-334-12

    **Place of Employment:**    Naval Sea Systems Command, SEA-09A
                                     133 Isaac Hull Avenue, SE
                                     Washington, DC  20376

    **Home Address:**          12404 Kingsview Street
                                     Mitchellville, MD  20721

    **Work Phone:**            202-781-2480

    **Home Phone:**           301-249-2987

    **Representative:**         None

**B.**  **CHRONOLOGY AND COUNSELING**

    **Date of Initial Contact:**    January 22, 2002

    **Date of Initial Interview:**    February 21, 2002

    **Date(s) of Alleged**
    **Discriminatory Event(s):**    December 12, 2002

    **30 Calendar Days from First Counseling Interview:**    March 23, 2002

    **45th Day After Event(s):**    January 26, 2002

    **Date of Final Interview:**    March 14, 2002

    **Date of Notice of Right to File**
    **a Formal Discrimination Complaint:**    March 14, 2002

    **Date Counseling Report Submitted:**    March 20, 2002

**152**

1



RECEIVED
MAR 2 1 2002
NAVAL SEA SYSTEMS COMMAND
EEO OFFICE

**C.**     **BASIS(ES) FOR ALLEGED DISCRIMINATION**

| | | |
|---|---|---|
| 1) | {x} | Race (African American) |
| 2) | { } | Color (Specify) |
| 3) | { } | National Origin (Specify) |
| 4) | {x} | Sex (Female) |
| 5) | { } | Age (Specify) |
| 6) | { } | Mental Handicap (Specify) |
| 7) | { } | Physical Handicap (Specify) |
| 8) | { } | Religion (Specify) |
| 9) | { } | Reprisal (Specify) |

**D.**     **ALLEGATION(S) OF DISCRIMINATION**

Matter(s)/Action(s) Complained of:

The counselee alleges that she was subjected to discrimination on the basis of her race (African American) and sex (female) when, on an ongoing basis since October 1999, she has not been promoted to the GS-13 grade level, while each of the other Division Directors in her Branch are at the GS-13 grade level or higher. She alleged that the most recent incident of discriminatory treatment occurred on December 12, 2002, when her supervisors announced plans to abolish her Division, to reassign her employees to other Divisions, and to reassign her to work under the supervision of another Division Director.

**E.**     **REMEDY REQUESTED**

The counselee seeks the following relief:

1.    Promotion to the GS-13 grade level
2.    Promotion of employees in her Division to a comparable level to employees in the Facilities Division
3.    For her Division to remain intact

**F.**     **EEO COUNSELOR'S CHECKLIST - THE COUNSELOR ADVISED THE AGGRIEVED PERSON IN WRITING OF THE RIGHTS AND RESPONSIBILITIES CONTAINED IN THE EEO COUNSELOR CHECKLIST**

**G.**     **SUMMARY OF COUNSELOR'S INQUIRY**

**1.**     **Contacts:**

2-21-02    The counselor conducted the initial interview with Nadine Mills, Division Director, GS-334-12, Property and Inventory Division, Command Support Services Branch.



2-28-02   The counselor had an initial meeting with Mary Lou Rakosky, Deputy Director, Command Support Services Branch (202-781-2485), and Mike Davis, Director, Command Support Services Branch (202-781-1400).. Ms. Rakosky and Mr. Davis were forced to leave the meeting early due to a meeting called by their supervisor.

2-28-02   The counselor interviewed Everett Higgins, Human Resources Management Specialist, GS-13, Directorate of Human Resources (202-781-3156).

3-14-02   The counselor interviewed Ms. Rakosky and Mr. Davis.

3-14-02   The counselor conducted the final interview with Ms. Mills

2.        **Content of Interviews:**

2-21-02: The counselor interviewed Ms. Mills on this date. She explained that she is the Division Director, GS-12, of the Property and Inventory Division, Command Support Services Branch. She stated that she has served in that capacity since October 1999. She stated that her first line supervisor is Mary Lou Rakosky, Deputy Director, Command Support Services Branch, and her second-line supervisor is Mike Davis, Director, Command Support Services Branch.

Ms. Mills explained that the Property and Inventory Division is one of six Divisions in the Command Support Services Branch. She pointed out that the other five Divisions Directors are at the GS-13 level or higher. She noted that three of the five Directors are White and two are Black, and that there are three women and two men. She explained that the other Divisions and its Directors are: Records Management Division (Sue Austin, GS-13, White); Admiral Gooding Center Division (Marsha Brown, GS-13, Black); Facilities Division (Sam Height, GS-13, Black); Travel Division (Donna Martin, GS-14, White); and Occupational Safety and Health Division (Ken Davis, GS-13, White).

Ms. Mills explained further that she supervises the following employees in the Property and Inventory Division: Jean Brown (GS-11, Black); Darryl Dreher (GS-11, Black); Jim Hipler (GS-7, White); Twanna Tobias (GS-7, Black); and Michael Moore (WG-6, Black). She added that she also supervises 10 contract support personnel.

Ms. Mills stated that the Property and Inventory Division has historically been managed by Black Directors at the GS-12 level. She noted that one former Director, Lynn Page (Black female), left her position because she was unable to be promoted to the GS-13 level, achieved that level in another position, and now works in the Facilities Division at the GS-12 level (but at GS-13 pay). She maintained that her race and sex are the reasons she has not been promoted to the GS-13 level.

Ms. Mills explained that she raised this issue with Ms. Rakosky, who suggested that she rewrite her Position Description since there was none in effect for her. She explained that in approximately October 2001 she spoke with Everett Higgins, a classifier in the Human Resources Office, about her situation. She stated that Mr. Higgins informed her that the

**154**        3



employees under her supervision did not have the necessary grade structure to justify classifying her position at the GS-13 level. She maintained that this was unfair to her because the employees under her supervision are not, but should be, graded as high as the employees in the Facilities Division.

Ms. Mills added that every other Division has been able to hire contractors or more personnel, and have been able to promote their employees. She maintained that she has not been afforded the same opportunities. She stated that she has lost four employees in the past year: Thomas Page (WG-5, White); Jonathan Steward (WG-5, Black); Yolanda Datcher (GS-6, Black); and Gary Wilson (GS-6, Black). She noted these employees have not been replated. She contended that, since she has not been able to promote her employees and has lost some employees, she has been unable to reach the required level of higher-level employees under her supervision to obtain the GS-13 grade level.

Ms. Mills stated that the "last straw" for her occurred on December 12, 2001. She explained that Mr. Davis and Ms. Rakosky informed her on that date that the Branch was going to be reorganized, with half of the Property and Inventory Division staff being reassigned to the Records Management Division and half being reassigned to the Facilities Division. She added that the informed her that she would be reassigned to the Records Management Branch under the supervision of Sue Austin. She noted that there has never been a staff meeting held to discuss the proposed reorganization.

Ms. Mills stated that she expressed her concerns about the reorganization in an e-mail to Ms. Rakosky and Mr. Mills dated December 31, 2001. She stated that she explained in the e-mail her opinion that there is no relationship between the Property duties performed in her Division and the duties performed in the Records Management Division. She maintained that she did not receive a substantive response. She contends that, if she were going to be reassigned to another Division, it would make more sense for her to be reassigned to the Facilities Division.

Ms. Mills explained further that she has some concerns regarding working with Ms. Austin as her supervisor. She maintained that Ms. Austin has made comments in the aftermath of September 11 suggesting that she would discriminate against individuals based on their race and/or national origin. She added that Ms. Austin uses profanity with her employees. In addition, she noted that she would be forced to train Ms. Austin on her (Ms. Mill's) duties because she (Ms. Austin) has no knowledge of the new functions that she would be supervising.

2-28-02: The counselor began interviews that Ms. Rakosky and Mr. Davis canceled due to a meeting called by their supervisor.

2-28-02: The counselor interviewed Everett Higgins, Human Resources Management Specialist, GS-13, Directorate of Human Resources. He stated that he has served in that capacity for approximately 15 years. The counselor asked Mr. Higgins explain what he told Ms. Mills when she came to him regarding upgrading her position to the GS-13 grade level.

Ms. Higgins confirmed that Ms. Mills asked him for advice on upgrading her position. He stated that he advised her that position grading is based on the nature of the work in the position and,



for supervisors, the grade of the employees working below them. He explained that he advised Ms. Mills that the grade level of employees under her in the Division of Property and Inventory did not merit an upgrade of her position to the GS-13 grade level. He stated that he advised her that, for her to obtain an upgrade, she needed to rewrite her position description, rewrite the position description of her subordinates, and obtain approval of those changes from the managers in her Branch (i.e. Ms. Rakosky and Mr. Davis). He stated that he recommended that she discuss this issue directly with these managers.

Mr. Higgins explained that he based this advice on provisions contained in the Office of Personnel Management General Schedule Supervisory Guide.

3-14-02: The counselor interviewed Mary Lou Rakosky (White female), Ms. Mill's first-line supervisor. She stated that she has served as Deputy Director of the Command Support Services Branch for approximately four years, including a period of approximately one year (7-00 to 6-01) in which she served as Acting Director of the Command Support Services Branch. She explained that Mike Davis became Director of the Command Support Services Branch in June 2001. She responded to Ms. Mill's allegations and explained the proposed reorganization.

As background, Ms. Rakosky explained that the Branch moved from its Crystal City location to the Navy Yard in 2001. She stated that the move began in January 2001 and was not completed until July 2001. She explained that she has had numerous meetings with Mr. Davis after he arrived in June 2001 to discuss management of the Branch in light of the move. She noted, for example, that the Facilities Division has assumed more responsibility after the move because the Branch is no longer leasing space and cannot rely on a lessor to coordinate a variety of issues.

Ms. Rakosky stated that Mr. Davis and she reviewed each Division in the Branch and assessed whether it was organized in the most efficient manner. She stated that the Occupational Safety and Health Division was organized well, but that the other Divisions needed to be changed. She explained that the Financial Branch was efficiently organized except that an employee responsible for finance issues is currently located in the Special Projects area. They proposed moving that employee into the Finance Division. She stated that the Gooding Center is located in a different building, yet four of its employees who do graphics work are located in the building with the rest of the employees in the Branch. She explained that they therefore proposed moving those four employees into the Records Management Branch.

Ms. Rakosky stated that they also determined that the Facilities Division needed to be reorganized. She stated that, even before the move, the Property and Inventory Division (the Division Ms. Mills manages) was responsible for some functions that would be handled more appropriately in the Facilities Division. She noted that the Property and Inventory Division manages laborers utilized by the Facilities Division. She maintained that the two Divisions have not interacted well historically and that it made more sense to merge these functions into the Facilities Division. She explained that they decided to propose reassigning two Property and Inventory Division employees to the Facilities Division.

Ms. Rakosky explained that, once the decision had been made to move employees to the Facilities Division, the Property and Inventory Division was no longer a viable stand-alone



Division. She added that Ms. Mill's inventory responsibilities have decreased significantly in the past year. She stated that the question then became where best to move Ms. Mills and the remaining employees. She stated that they proposed moving two employees (including Ms. Mills) to the Records Management Division. She noted that they had not decided where to move a fifth employee. She denied that this proposed reorganization constituted discrimination against Ms. Mills on the basis of her race and/or sex. She maintained that the proposed changes were made strictly on the basis of creating the most efficient management structure possible.

Ms. Rakosky maintained that moving Ms. Mills and at least one other employee to the Records Management Division made the most sense. She stated that shipping and receiving is currently under the Property and Inventory Division, but maintained that it was more appropriate to move it into the Records Management Division. She explained that the Mailroom is part of the Records Management Division, and that it is physically close to the loading dock (where shipping and receiving takes place). She noted also that the Mailroom is overstaffed currently. She added that she has received reports from the Records Management staff that there had been insufficient security recently at the loading dock and that Mailroom staff was required to cover for the Property and Inventory Division staff. Based on these factors, Ms. Rakosky contended that it was appropriate to propose moving the shipping and receiving function into the Records Management Division and moving Ms. Mills into the Records Management Division under the supervision of Sue Austin.

Ms. Rakosky stated that Mr. Davis and she proposed these organizational changes to each of the Division Directors individually in December 2001. She explained that they had decided to address at that time the deficiencies that they had identified regarding overlapping responsibilities and inefficient management. She explained that they responded to Ms. Mill's concern regarding whether she would continue to be a supervisor by informing her that this was up in the air. They informed her that this would be resolved directly between Ms. Mills and Ms. Austin. She stated that it was likely that Ms. Austin would have Ms. Mills retain supervisory responsibility over those areas that had been managed in the Property and Inventory Division.

Regarding the issue of Ms. Mills upgrading her position to the GS-13 grade level, Ms. Rakosky stated that Ms. Mills either needs to apply for a GS-13 position or request a desk audit. She stated her opinion that a desk audit would reveal that her current duties do not even merit a GS-12 grade level. She disagreed that Ms. Mills had been treated differently than other Division Directors regarding promotions for employees under her supervision. She acknowledged that management is behind in addressing these matters, but she contended that this is true for the entire Branch. She maintained that the race and/or sex of the employees have no bearing on this issue. She did not recall that Ms. Mills ever came to her to discuss upgrading her position to the GS-13 grade level.

Ms. Rakosky stated that she was aware that Ms. Mills had submitted rewritten position descriptions for employees under her supervision. She maintained that at least 50 percent of the employees in the Branch need their position descriptions written or revised and that a contractor has been hired to assume this responsibility. She attributed the backlog on these matters to the disruptions associated with the move. She also acknowledged that it was possible that she had not acted on some of the position descriptions that had been submitted to her because she had



been spread too thin when she served as Acting Director of the Command Services Branch.

Ms. Rakosky also disagreed with Ms. Mill's contention that other Divisions have been given preferential treatment regarding hiring. She stated that the Occupational Safety and Health Division has lost employees and they have not been replaced. She stated that this also is true for the Facilities Division. She noted that the Gooding Center has not added any employees. She stated that the Records Management Division lost one employee and that employee was replaced.

3-14-02: The counselor interviewed Michael Davis (White, male), Ms. Mill's second-line supervisor. He explained that he has served as Director of the Command Support Services Branch since June 2001.

Mr. Davis confirmed that Ms. Rakosky and he have engaged in ongoing discussions regarding reorganizing the Branch to most efficiently utilize staff resources. He agreed with the reasons Ms. Rakosky set forth for the proposed changes. He maintained that there is no way to logically connect all of the functions in the Branch and that some functions will be assigned to Divisions that create what appear to be unnatural fits. He noted, for example, that anywhere that the graphics function is assigned would not appear to make sense because it does not fit anywhere except alone. He contended that there is nothing discriminatory in the proposed restructuring of the Property and Inventory Division.

Mr. Davis explained that, as part of the proposed reorganization, a new GS-14 position would be created to head the Facilities Division. He added that there would be two Branches under this Division, each to be headed by GS-13 employees. He noted that one of those GS-13 positions would be competitively advertised. He stated that he had no authority to accrete Ms. Mills or any other employee to that position.

Regarding the response of management to requests to upgrade position descriptions, Mr. Davis stated that it was not inconceivable that many requests have not been dealt with in a timely manner. He stated that this issue is a big problem in the Branch that needs to be dealt with, which is why a consultant was hired. He explained that he approached upper management about obtaining upgrades for employees in the Branch because many employees in the Branch are undergraded. He explained that this led to authorization for the consultant to come in and rewrite position descriptions, which are the necessary steps before obtaining grade upgrades from Human Resources. He estimated that at least 20 employees in the Branch need their position descriptions rewritten. He contended that Ms. Mill's race and/or sex have no bearing on these issues. He maintained that neither she nor the employees in her Division have been treated differently than the employees in other Divisions.

3.      **Documents Reviewed:**

A.    Intake Form
B.    Notice of Rights and Responsibilities
C.    Notice of Final Interview
D.    E-mail from Ms. Mills to Mr. Davis and Ms. Rakosky regarding the proposed reorganization, dated December 31, 2001.

158

E.      Current Organization Chart
F.      Proposed Organization Chart

## H.      SUMMARY OF INFORMAL RESOLUTION ATTEMPT

Resolution attempts were unsuccessful. The counselor discussed Ms. Mill's requested remedies
with Mr. Davis and Ms. Rakosky. Both indicated that they did not have authority to upgrade her
position to the GS-13 grade level. Both maintained that the proposed reorganization had nothing to
do with Ms. Mill's race and/or sex and that it was based on creating the most efficient
organizational structure. The counselor raised the possibility of Ms. Mills being assigned to the
Facilities Division and this was not ruled out. The counselor asked Ms. Mills whether her concerns
would be adequately addressed if that occurred. She stated that nothing short of her obtaining the
GS-13 grade level would result in resolution of her complaint.

## I.      SUMMARY OF FINAL INTERVIEW WITH AGGRIEVED PERSON

During the final interview the counselor reviewed with Ms. Mills the responses of Mr. Davis and
Ms. Rakosky to her allegations. The counselor advised her that management was not going to grant
the relief that she requested. She indicated that she would be filing a formal complaint.

## J.      SUMMARY OF INFORMATION GIVEN TO AGGRIEVED
PERSON/AGENCY BY COUNSELOR

1.      AGGRIEVED:

a.      Explained his EEO Rights and Responsibilities
during the Pre-Complaint Counseling Process;
b.      Explained my role as an EEO Counselor;
c.      Explained management's responses to the allegations;
d.      Explained the formal complaint process.

2.      AGENCY:

a.      Explained Pre-Complaint Counseling Process;
b.      Explained my role as an EEO Counselor;
c.      Explained allegations made and right to provide response;
d.      Explained aggrieved's requested resolution;
e.      Explained the formal complaint process.

159

_James R. Cross_ (signature)

James Cross
EEO Counselor
Draughn & Associates
850 Thayer Avenue, Suite 1616
Silver Spring, MD 20910

3-20-02

Date

160