December 15, 2004


By Facsimile
Administrative Judge Gladys O. Collazo
Washington Field Office
U.S. Equal Employment Opportunity Commission
1400 L Street, NW, Suite 200
Washington, D.C.  20005

Re:  Mills v. Department of the Navy, EEOC No. 100-2004-00674X

Dear Judge Collazo:

Forwarded please find a copy of the Summary Judgment in the above-referenced case.  A copy was hand delivered to Ms. Lynch.  Should you have any further questions please contact me at 202-781-2480.

Sincerely,

*Nadine D. Mills*

Nadine D. Mills
Complainant


cc:  Ellen M. Lynch

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Washington Field Office
1400 L Street, N.W. Suite 200
Washington, D.C. 20005

|  |  |
|---|---|
| NADINE D. MILLS,<br>Complainant,<br><br>v.<br><br>GORDON ENGLAND, SECRETARY<br>DEPT. OF THE NAVY,<br>Agency. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

EEOC CASE NO.
100-2004-00674X

AGENCY CASE NO.
DON 03-00024-003

Judge Collazo

December 6, 2004

## MOTION FOR SUMMARY JUDGMENT IN SUPPORT THEREOF

## I. INTRODUCTION

Complainant respectfully submits this Motion for Findings and Conclusions of Law without a Hearing pursuant to 29 C.F.R. statute 1614.109(g)(3) for EEO Case No. 100-2004-00674X (Agency No. DON 03-00024-003). This motion is supported by the attached documentation of this case, all of which are incorporated by this reference as if fully set forth herein. As set forth in the Summary Judgment, in favor of complainant is entitled to judgment as a matter of law.

## II. BACKGROUND FACTS

1. Complainant filed a previous EEO complaint on 12 December 2001.

2. Complainant worked for the Naval Technical Representative Office, Laurel, Maryland (NAVTECHREP Laurel) from February 1982 until October 1999. NAVTECHREP Laurel was a field activity under the Naval Sea Systems Command (NAVSEA) and in

1

7. The complaint was dismissed by the NAVSEA on 30 April 2002. I filed an appeal and was just notified several weeks ago of the final decision. Complainant understands that the letter was sent out by the EEOC 18 May 2004 and received in our EEO 8 June 2004. Complainant never received the letter nor did anyone from the EEO Office inform the Complainant of the outcome.

## II. RESPONSE TO UNDISPUTED MATERIAL FACTS

1. Complainant does not dispute paragraphs 1 thru 11.

2. Complainant disputes the statement in paragraphs 12 thru 17 and will clarify. Management implied that the functions in my Division had diminished, that is not true. Some functions were reassigned outside of my Division (SEA 00J) and some were kept within the Division. Some property functions were realigned along with Property Personnel (Darrell Dreher and Jim Hiepler) that were performing these duties to the Facilities side of the house. Complainant feel this was done to look as though my Division duties had diminished, but in fact, they are being performed within the Facilities Division. The Property function remained as part of the Division and the entire Division was renamed the Facilities Division. Under the Facilities Division is the Facilities side and the Business Management or Special Projects side of the house. Again, the Property function is still being performed, by one GS-11 employee (Ms. Brown). Management has chosen to ignore functions required by DoD Inspector General Instruction 4140.1, SECNAVINST 73220.10, and Management Control Guidance, SECNAVINST 5200.3D.

With the implementation of the Defense Property Accountability System (DPAS) and the Navy Marine Corp Internet (NMCI) our workload has changed. The DoD and SECNAV Regulations specifically indicate Property functions as:

- Acquisition of Government Property (NMCI only pertains to non-government/contractor owned computer equipment connected to the network.
- Property Accountability (Inventory) and Control including receipt (Shipping and Receiving) and Pilferable.
- Storage, Distribution, Excess and Disposal (Warehouse) (Mr. Dreher and Mr. Hiepler presently performs these functions)

NAVSEA is a major claimant and is responsible for complying with these policies and procedures and for providing oversight and guidance for property management within their claimancies (Field Activities) including: assurance that physical inventories are conducted properly as required, the claimancy property database data is accurate, asset accountability is maintained, and financial reporting of personal property is accurate. According to regulation, a Property Manager has to be designated in writing by the Commanding Officer to perform this function. In additional, one employee cannot perform this function at the Headquarters level that houses 5,000 employees and contractors and approximately 38 Field Activities located around the United States. Each of these functions were performed by one of the following employees in my Division. My Division was also responsible for several other functions: Transportation (Executive Motor Pool, Shuttle/Special Bus Services for the command) Classified Disposal, Procurement/Loan Equipment and the command Labor Support Services. Complainant still performs all of these functions. The Loan Equipment function is the only function that is not being performed.

October 1999 it was disestablished. I was a Division Director of the Administrative Support Division.

3. Complainant was placed in the Command Support Office, Property and Inventory Support Division and later became aware of the difference between the grade structures of Property and Inventory Support Division and the other Divisions.

4. The Property and Inventory Division has historically been managed by Black Female Directors at the GS-12 level while other Divisions where managed by GS-13's and one GS-14. The only other Black Female Division Director came into the Division on a lateral reassignment.

5. In addition to the reorganization, two GS-13's (Jerry Gregg and Earl Bradford) were reassigned to the Facilities Management Division. They both were made Division Directors. Mr. Gregg became my supervisor and Division Director of the Property and Inventory Division.   Management was aware that Mr. Gregg planned to take the early retirement option. Mr. Gregg was Division Director for six months before retiring. After that the Division was reorganized with several employees being reassigned to the Facilities side of the house. Again this shows intent not to promote me.

6. After filing a compliant and being replaced as the Division Director, it began to affect my health. In November 2002 my doctor suggested that I take sometime off or maybe work from home to reduce the stress at the office. I requested to be placed to Telework and my request was denied. Again I was discriminated against because at the same time there were two caucasian female employees, allowed to Telework due to health reasons.   I later filed a Workmen's Compensation Claim.

Shipping and Receiving (Loading Dock) responsibilities are being performing by Leonard Campbell (contractor personnel) and Michael Moore (WG-6907-6) with myself as overseer. Michael Moore's billet was also eliminated.

3. Complainant does not dispute paragraphs 18 thru 37.

## III. ARGUMENT/ESTABLISH PRIMA FACIE

McDonald Douglas v. Green, 411 U.S., 802 (1973). In Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981), the Supreme Court stated that "the burden of establishing a prima facie case of disparate treatment is not onerous". Complainant can establish a prima facie case by "offering evidence adequate to create an inference that an employment decision was based on discriminatory criteria illegal under "Title VII". Mitchell v. Office of Los Angeles County Supt. Of Schools, 805 F.2d 844, 846 (9th Cir. 1986) (quoting Teamsters v. United States, 431 U.S. 324, 358 (1977)); Lowe v. City of Monrovia, 775 F.2d 998, 1006 (9th Cir. 1985) Complainant can establish prima facie case of disparate treatment without satisfying McDonnell Douglas test if he or she provide evidence suggesting rejection was based on discriminatory criteria, (amended, 784 F2.d 1407 (1986)). A Complainant who provides such evidence for his or her prima facie case many be able to survive summary judgment on this evidence alone. Lowe, 775 F.2d at 1008.

In May 2003 we were notified of a Command-wide reorganization. On May 8, 2003 Complainant was told she no longer had a job. My Division personnel were reassigned, my duties were divided among other personnel and I was given other menial duties.

Complainant was later told that due to the reorganization employees had to compete for their positions. Mrs. Paige and I were the only GS-12's in the Division and were told we had to compete for our position because there would only be one position at the GS-12 level.

Mr. Davis met with me in his office and asked if I was considering the early-out retirement option. I informed him that I do not have the age and would be penalized for the early retirement. The next day he called me into this office and informed me that I was not selected for the position. I was informed that Mrs. Paige was selected for the position but was not told it was a GS-13. I discovered that Ms. Paige was selected at the GS-13 level while reading the Investigator's Report..

As a result of competing for our position, Mrs. Paige appeared on the GS-12 and GS-13 eligibility list. Mr. Davis states that he was not aware that Mrs. Paige previously held a GS-13. Mr. Davis asked Bonne Flynn, Deputy Commander, Corporate Operations Directorate if he could fill the position at the GS-13 level instead of the GS-12 level. Ms. Flynn authorized the selection at the GS-13 level.

When Management personnel requested the Certificate for the GS-13 positions, they had to request a list of personnel and/or by name selection, that all ready held a GS-13. If they had requested a list of all employees in SEA 102 that were eligible for a GS-13, than my name would have also appeared. This I consider a Pre-Selection. I was never informed that the Job Announcement was cancelled.

8. When employees where placed on the NAVSEA Priority Placement (NPP) list, which was an actual Reduction-In-Force (RIF), they were not given the full benefit rights according to OPM regulation. The Agency did not establish "bumping rights" basis of

seniority . which violates employees rights according to OPM regulation.  Agency is subject to OPM RIF regulations and is inconsistent with any laws or regulations concerning the scope of a competitive area, in which employees would compete for positions in a RIF. Code of Federal Regulation, Title 5.   Waters v. Heublein, Inc., 547 F.2d 466, 470 (9th Cir. 1976); Trafficante v. Metropolitan Life Ins. Co., 409 U.S, 205, 209-210 (1972).

9.   Employees adversely affected by the Agency's decision to conduct a RIF by defining those positions for which an employee would be qualified under the bumping procedures. An employee having sufficient retention standing to bump into a position which is either (1) in the same series and grade as the employees current position or (2) in a related series at the employees grade regardless of whether the agency has determined the employee to be qualified for the new position.  Rendon v. AT&T Technologies, 883 F.2d 388, 395-96 (5th Cir. 1989)  Morelock v. NCR Corp., 586 F.2d 1096, 1103 (6th Cir. 1978)

10. Complainant understands the downsizing and restructuring efforts of the Agency, but feel management does not understand the distinction of the workload between the divisions nor understand the duties and responsibilities of each function.  The function is based on the level of responsibility of the position not the quantity of functions performed by an employee.  The Facilities and the Business Management Division should be equal in organizational and grade structure, and it is not.  All personnel are not recognized equally for their work.  Again I state, the employees that were under my supervision are performing exactly the same duties, under the Property Management function.

11. One of those employees, Jim Hiepler was finally promoted.  Several years ago while under my supervision, I requested that Mr. Hiepler be promoted.    That request was not

granted until he came under another supervisor which was a Caucasian male, again preferential treatment.

12. With the entire agency still planning on downsizing, Management is still hiring and outside the government. On 1 November 2004 a contractor employee was hired as a government employee at the GS-14 level. The agency is not fully funded for the year and has projected more downsizing. But I could not understand the planned organizational structure that would have included 3-GS-13's no GS-12's and 5-GS-11's. Mr. Dreher was also promoted to the GS-12 level last month, he was another one of my employees.

13. Texas Dept. of Community Affairs v. Burdial 450 U.S. 248. burden of persuasion shift to the Agency to prove 450 U.S. at 250. Complainant should not be restricted in the way in which the ultimate burden of persuasion is met. Patterson v. McLean Credit Union, 109 S. Ct. 2363, 2378-79 (1989).

## CONCLUSION

As discussed above, Complainant has established a prima facie claim of discrimination or retaliation. Past treatment clearly establishes ultimate proof of discrimination. Complainant respectfully requests summary judgment in its favor.

Respectfully submitted,

Nadine D. Mills

# Summary of EEO Compliant

First compliant filed December 12, 2001 –
Disparate treatment – Position Classification unequal among employees.
Second compliant filed May 22, 2003 -
Retaliation against filing a previous compliant in December 2001

- I came to the Naval Sea Systems Command (NAVSEA) in October 1999 from the Naval Technical Representative Office, Laurel, Maryland. I was assigned the Division Director's position of the Property & Inventory Division. The SEA 09A Code was made up of six divisions. The other Division Directors were GS-13's and one GS-14 (Financial Support Division) and I was the only GS-12.

- Differences between Divisions: Division Directors/Employees grades were not the same or equal according to workload. The grade structure of my employees and myself were lower than other employees performing the same type of duties. Other Division Directors were able to promote, recruit or hire contractors, I was not. When I lost personnel they were replaced with personnel from other directorates within NAVSEA. I was not allowed to advertise for positions nor perform interviews of the employees. I was just told when they would report for duty.

- After filing a compliant and being replaced as the Division Director, it began to affect my health. In November 2002 my doctor suggested that I take sometime off or maybe work from home to reduce the stress at the office. I requested to Telework and was denied. Again I was discriminated against because at the same time two other employees were off due to health reasons and were allowed to Telework. Both of the employees were white females. I later filed a Workmen's Compensation Claim.

- On December 12, 2001, I was notified of a re-organization within our Code. My functions would be divided and incorporated into two other divisions.

- In July 2002, a Mr. Jerry Gregg replaced me as the Division Director. Mr. Gregg was assigned to my Division after his was disestablished (SEA 91). Mr. Gregg chose to take the early retirement buyout and retired six months later, January 2003. Management was aware that he was taking the buyout but placed him in the position anyway.

- In May 2003 we were notified of a Command-wide reorganization. On May 8, 2003 I was told I no longer had a job. My division personnel were reassigned. My duties were divided among other personnel and I was given other menial duties.

- Later I was told due to the reorganization personnel had to compete for their positions. The Command informed us that they had to cut personnel by 25% by the end of FY04. We had to downsize from 16 to 12 personnel. Lynn Paige and I

**147**

were asked to meet with Mike Davis, Director and Mary Lou Rakosky, Deputy concerning our positions. Mrs. Paige and I were the only GS-12's in the Division and were told we had to compete for our position because there would only be one position at the GS-12 level.

- Mr. Davis met with me in his office and asked if I was considering the early out, I told him no because I do not have the age to retire and would be penalized the 2% for every year under the age of 55. The next day he called me into his office to tell me I was not selected for the position.

- As a result of competing for our position, Mrs. Paige appeared on the GS-12 and GS-13 eligibility list. Mr. Davis states that he was not aware that Mrs. Paige previously held a GS-13. Mr. Davis asked Bonnie Flynn, Deputy Commander, Corporate Operations Directorate if he could fill the position at the GS-13 level instead of the GS-12 level. Ms. Flynn authorized the selection at the GS-13 level.

- Mrs. Paige was already in the position as the Facilities Specialist that we had to compete for. Mrs. Paige held the position for many, many years before I arrived at NAVSEA. Mrs. Paige was offered a promotion and transferred to another agency. I was hired to take Mrs. Paige's position as the Division Director for the Property and Inventory Division. Mrs. Paige was detailed and acting Division Director for the Property & Inventory Division before she was offered the position with the other agency. Mrs. Paige later returned in September 2002 as a Facilities Specialist, GS-12.

- With Mrs. Paige being promoted to the GS-13, whatever happened to the only GS-12 position? What are futures plans if the GS-12 position was abolished? Will the GS-12 position be rewritten and advertised?

- The position had been written for a Facilities Specialist in which I would not be highly qualified. I'm a Management Analyst, GS-0343/12, in which I've never had a P.D. since coming to NAVSEA. On June 24, 2003, I was given a letter along with a P.D. stating the reassignment to the NAVSEA Placement Program (NPP) position. Mary Lou Rakosky, would still be my immediate supervisor.

- Status of Realignment – NAVSEA established the NPP and reassigned 231 employees who were not in permanent FY04 positions. To date all employees have been placed in permanent positions except about 40 in which I am one of them.

- In an email dated April 17, 2003, from Mike Davis, he stated that Mary Lou Rakosky would be the selecting official for the Special Projects Branch and he would be the selecting official for the GS-13 Facilities Branch Head job.

- Basis for Alleged Discrimination: Race (African-American) and Sex (Female) Disparate Treatment and Reprisal (Complaint filed December 2001)

- Resolution Requested: Request a permanent position to the GS-13 level plus back pay or given a permanent position with promotion potential. Requests back pay to October 2000, after being in the position for a one-year.

- Request immediate transfer to another Office.

149

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Office of Federal Operations
### P.O. Box 19848
### Washington, D.C. 20036



Nadine D. Mills,
Complainant,

v.

Gordon R. England,
Secretary,
Department of the Navy,
Agency.

Request No. 05A40581

Appeal No. 01A23239
Agency No. DON-0200024-006

## DENIAL OF REQUEST FOR RECONSIDERATION

Nadine D. Mills (complainant) timely initiated a request to the Equal Employment Opportunity Commission (EEOC or Commission) to reconsider the decision in *Nadine D. Mills v. Department of the Navy*, EEOC Appeal No. 01A23239 (September 5, 2002).

EEOC Regulations provide that the Commission may, in its discretion, reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. *See* 29 C.F.R. § 1614.405(b).

After a review of complainant's request for reconsideration, the previous decision, and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 01A23239 remains the Commission's final decision. There is no further right of administrative appeal on the decision of the Commission on this request for reconsideration.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person

2                                      05A40581

who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*

_____
Carlton M. Hadden, Director
Office of Federal Operations

MAY 1 8 2004
_____
Date

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:

MAY 1 8 2004
_____
Date

_____
Equal Opportunity Assistant

**DEPARTMENT OF THE NAVY**

NAVAL SEA SYSTEMS COMMAND
1333 ISAAC HULL AVE SE
WASHINGTON, NAVY YARD DC 20376-0001

IN REPLY TO

12713
SER SEA 09B52/038
30 April 2002

From:   Command Deputy Equal Employment Opportunity Officer
To:     Ms. Nadine D. Mills
        12404 Kingsview Street
        Mitchellville, MD 20721

Subj:   NOTICE OF DISMISSAL OF DISCRIMINATION COMPLAINT OF
        MS. NADINE D. MILLS v. GORDON R. ENGLAND, SECRETARY
        OF THE NAVY, AGENCY # **DON 02-00024-006**

Ref:    (a)   Your discrimination complaint received 21 Mar 02
        (b)   29 CFR 1614, as amended, 09 November 1999

Encl:   (1)   EEO Counselor's Report of 20 March 2002
        (2)   EEOC Form 573, Notice of Appeal

1.  I am in receipt of reference (a), which was received in this
office on 21 March 2002.

2.  As noted above, your complaint dated 21 March 2002,
reference (a), has been assigned agency docket number
**DON 02-00024-006**.   Please include this docket number on all
future correspondence or other documents regarding this
complaint.

3.  In reviewing reference (a) and enclosure (1), it is
understood that you have raised the following claims:

  *a. Whether you were discriminated against based on race
(African American) and sex (female) when since October 1999 you
have not been promoted to Management Analyst (Division
Director), GS-334-13, while the other Division Directors in your
Branch are all at the GS-13 grade level or higher; and*

  *b. Whether you were discriminated against based on race
(African American) and sex (female) when on 12 December 2001,
you were notified by your supervisors of a proposed
reorganization that would abolish the Property and Inventory
Division for which you supervise, reassign your staff to other
Divisions and reassign you to work under the supervision of
another Division Director.*

SUBJ: NOTICE OF DISMISSAL OF DISCRIMINATION COMPLAINT OF
MS. NADINE D. MILLS v. GORDON R. ENGLAND, SECRETARY
OF THE NAVY, AGENCY # DON 02-00024-006

4.  Based on my review of reference (a) and enclosure (1), and
in accordance with reference (b), I have dismissed your claim
identified in paragraph 3(a) for failure to timely contact an
EEO Counselor and I have dismissed your claim identified in
paragraph 3(b) because you have raised a claim that alleges that
a proposal to take a personnel action is discriminatory.

5.  Equal Employment Opportunity Commission (EEOC) Regulation 29
C.F.R. § 1614.105(a)(1) requires that complaints of discrimination
should be brought to the attention of the Equal Employment
Opportunity Counselor within forty-five (45) days of the date of
the matter alleged to be discriminatory or, in the case of a
personnel action, within forty-five (45) days of the effective date
of the action. The Commission has adopted a "reasonable suspicion"
standard (as opposed to a "supportive facts" standard) to determine
when the forty-five (45) day limitation period is triggered. See
*Howard v. Department of Navy*, EEOC Request No. 05970852 (February
11, 1999). Thus, the time limitation is not triggered until a
complainant reasonably suspects discrimination, but before all the
facts that support a charge of discrimination have become apparent.

6. Regarding your claim that you were discriminated against when
since October 1999 you have not been promoted to Management
Analyst (Division Director), GS-334-13, while the other Division
Directors in your Branch are all at the GS-13 grade level or
higher, a review of enclosure (1), reflects that you previously
discussed this matter with your supervisor, Ms. Mary Lou
Rakosky, and followed-up that discussion in approximately
October 2001 with a conversation with Everett Higgins, a
classifier in the Human Resources Office, regarding upgrading
your position to a GS-13. Mr. Higgins informed you that your
position did not warrant a GS-13 based on the grade structure of
the employees under your supervision. You should have
reasonably suspected discrimination at that time (October 2001)
and contacted an EEO Counselor within 45 days of that date.
However, you did not contact the EEO Office until 22 January
2002, which is well beyond the 45-day time limit for contacting
an EEO counselor. Therefore, claim 3(a) is dismissed for
failure to timely contact an EEO counselor.

7.  EEOC Regulation 29 C.F.R. § 1614.107(a)(5) provides, in part,
that the agency shall dismiss a complaint that alleges that a
proposal to take a personnel action, or other preliminary step to
taking a personnel action, is discriminatory. In your case, the
plan to reorganize your division and to reassign you is currently a
proposed action. The record reflects that *no final decision/action*

has been taken as a result of the proposed reorganization, i.e.,
your Division has not been abolished, your staff has not been
reassigned, nor have you been reassigned to work under the
supervision of another Division Director.   Therefore, claim 3(b) is
dismissed because it is a proposed action that has not been
finalized.

8. This is the final Department of the Navy decision on your
complaint.  If you are dissatisfied with the decision to dismiss
your complaint, you may file a notice of appeal with the Equal
Employment Opportunity Commission within 30 calendar days after
your receipt of this decision.    Enclosure (2) should be used when
filing your appeal; it should indicate what you are appealing.  The
appeal should be submitted to the Director, Office of Federal
Operations, Equal Employment Opportunity Commission, P.O. Box
19848, Washington, D.C. 20036.  Any supporting statements must be
submitted to the Commission, with a copy to the Deputy Equal
Employment Opportunity Officer at Commander, Naval Sea Systems
Command, ATTN: 09B52 (Nancy E. Scott), 1333 Isaac Hull Avenue SE
Stop 9914, Washington Navy Yard, D.C. 20376-9914.

9.  An appeal shall be deemed timely if it is delivered in person
or postmarked before the expiration of the filing period, or, in
the absence of a postmark, the appeal is received by the Commission
by mail within five (5) days after the expiration of the filing
period.

10. If you elect not to appeal to the Commission, under
Title VII, the Age Discrimination in Employment Act (ADEA), and the
Rehabilitation Act, you may file a civil action in the appropriate
U.S. District Court:  (a) within 90 days of receipt of the final
decision if no appeal has been filed; (b) after 180 days from the
date of filing the complaint if appeal has not been filed and a
final decision has not been issued; (c) within 90 days of receipt of
the Commission's final decision on an appeal; or (d) after 180 days
from the date of filing an appeal with the Commission if there has
been no final decision by the Commission. Filing a civil action
will result in termination of administrative processing of your
complaint.

11.  If you file a civil action under Title VII of the Civil Rights
Act of 1964, as amended, or the Rehabilitation Act of 1973, as
amended, and you do not have, or unable to obtain the services of a
lawyer, you may request the court to appoint a lawyer to represent
you.   In such circumstances as the court may deem just, the court
may appoint a lawyer and may authorize the commencement of the
action without payment of fees, costs, or security.  Any such

Subj: NOT OF DISMISSAL OF DISCRIMINATION COMPLA F
      MS. NADINE D. MILLS v. GORDON R. ENGLAND, SECRETARY
      OF THE NAVY, AGENCY # DON 02-00024-006

request must be made within the above-referenced 90-calendar day
time limit for filing suit and in such form and manner as the court
may require.   Filing a request for an attorney does not extend your
time in which to file a civil action.   Both the request and the
civil action must be filed within 90 calendar days from the date
you receive this decision.

12.   You are further notified that if you file a civil action, you
must name Gordon R. England, Secretary of the Navy, as the
defendant.   Failure to name Gordon R. England, Secretary of the
Navy, may result in the loss of any judicial redress you may be
entitled to.

NANCY E. SCOTT

Copy to:
00L

4

# EEO COUNSELOR'S REPORT
# OF
# NADINE D. MILLS

FOR OFFICIAL USE ONLY (FOUO) - PRIVACY ACT SENSITIVE

This document also contains information

EXEMPT FROM MANDATORY DISCLOSURE under the FOIA.

Exemptions 5 USC 552a (k) (2) and

5 USC 552 (b) (5), (b) (6), (b) (7) (A), (b) (7) (B), and (b) (7) (C).

DISCLOSE ON A NEED-TO KNOW BASIS ONLY

Encl (1)

# EEO COUNSELOR'S REPORT

### 29 C.F.R. Section 1614.105(c)

**A.**     **AGGRIEVED PERSON**

| | |
|---|---|
| **Name:** | Nadine Mills |
| **Job Title/Series/Grade:** | Management Analyst (Division Director), GS-334-12 |
| **Place of Employment:** | Naval Sea Systems Command, SEA-09A<br>133 Isaac Hull Avenue, SE<br>Washington, DC 20376 |
| **Home Address:** | 12404 Kingsview Street<br>Mitchellville, MD 20721 |
| **Work Phone:** | 202-781-2480 |
| **Home Phone:** | 301-249-2987 |
| **Representative:** | None |

**B.**     **CHRONOLOGY AND COUNSELING**

| | |
|---|---|
| **Date of Initial Contact:** | January 22, 2002 |
| **Date of Initial Interview:** | February 21, 2002 |
| **Date(s) of Alleged Discriminatory Event(s):** | December 12, 2002 |
| **30 Calendar Days from First Counseling Interview:** | March 23, 2002 |
| **45th Day After Event(s):** | January 26, 2002 |
| **Date of Final Interview:** | March 14, 2002 |
| **Date of Notice of Right to File a Formal Discrimination Complaint:** | March 14, 2002 |
| **Date Counseling Report Submitted:** | March 20, 2002 |

RECEIVED

MAR 2 1 2002

NAVAL SEA SYSTEMS COMMAND
EEO OFFICE

C.    **BASIS(ES) FOR ALLEGED DISCRIMINATION**

    1)    {x}    **Race (African American)**
    2)    { }    **Color (Specify)**
    3)    { }    **National Origin (Specify)**
    4)    {x}    **Sex (Female)**
    5)    { }    **Age (Specify)**
    6)    { }    **Mental Handicap (Specify)**
    7)    { }    **Physical Handicap (Specify)**
    8)    { }    **Religion (Specify)**
    9)    { }    **Reprisal (Specify)**

D.    **ALLEGATION(S) OF DISCRIMINATION**

Matter(s)/Action(s) Complained of:

The counselee alleges that she was subjected to discrimination on the basis of her race (African American) and sex (female) when, on an ongoing basis since October 1999, she has not been promoted to the GS-13 grade level, while each of the other Division Directors in her Branch are at the GS-13 grade level or higher. She alleged that the most recent incident of discriminatory treatment occurred on December 12, 2002, when her supervisors announced plans to abolish her Division, to reassign her employees to other Divisions, and to reassign her to work under the supervision of another Division Director.

E.    **REMEDY REQUESTED**

The counselee seeks the following relief:

1.    Promotion to the GS-13 grade level
2.    Promotion of employees in her Division to a comparable level to employees in the Facilities Division
3.    For her Division to remain intact

F.    **EEO COUNSELOR'S CHECKLIST - THE COUNSELOR ADVISED THE AGGRIEVED PERSON IN WRITING OF THE RIGHTS AND RESPONSIBILITIES CONTAINED IN THE EEO COUNSELOR CHECKLIST**

G.    **SUMMARY OF COUNSELOR'S INQUIRY**

1.    **Contacts:**

2-21-02    The counselor conducted the initial interview with Nadine Mills, Division Director, GS-334-12, Property and Inventory Division, Command Support Services Branch.

| 2-28-02 | The counselor had an initial meeting with Mary Lou Rakosky, Deputy Director, Command Support Services Branch (202-781-2485), and Mike Davis, Director, Command Support Services Branch (202-781-1400). Ms. Rakosky and Mr. Davis were forced to leave the meeting early due to a meeting called by their supervisor. |
| 2-28-02 | The counselor interviewed Everett Higgins, Human Resources Management Specialist, GS-13, Directorate of Human Resources (202-781-3156). |
| 3-14-02 | The counselor interviewed Ms. Rakosky and Mr. Davis. |
| 3-14-02 | The counselor conducted the final interview with Ms. Mills |

## 2.      Content of Interviews:

2-21-02: The counselor interviewed Ms. Mills on this date. She explained that she is the Division Director, GS-12, of the Property and Inventory Division, Command Support Services Branch. She stated that she has served in that capacity since October 1999. She stated that her first line supervisor is Mary Lou Rakosky, Deputy Director, Command Support Services Branch, and her second-line supervisor is Mike Davis, Director, Command Support Services Branch.

Ms. Mills explained that the Property and Inventory Division is one of six Divisions in the Command Support Services Branch. She pointed out that the other five Divisions Directors are at the GS-13 level or higher. She noted that three of the five Directors are White and two are Black, and that there are three women and two men. She explained that the other Divisions and its Directors are: Records Management Division (Sue Austin, GS-13, White); Admiral Gooding Center Division (Marsha Brown, GS-13, Black); Facilities Division (Sam Height, GS-13, Black); Travel Division (Donna Martin, GS-14, White); and Occupational Safety and Health Division (Ken Davis, GS-13, White).

Ms. Mills explained further that she supervises the following employees in the Property and Inventory Division: Jean Brown (GS-11, Black); Darryl Dreher (GS-11, Black); Jim Hipler (GS-7, White); Twanna Tobias (GS-7, Black); and Michael Moore (WG-6, Black). She added that she also supervises 10 contract support personnel.

Ms. Mills stated that the Property and Inventory Division has historically been managed by Black Directors at the GS-12 level. She noted that one former Director, Lynn Page (Black female), left her position because she was unable to be promoted to the GS-13 level, achieved that level in another position, and now works in the Facilities Division at the GS-12 level (but at GS-13 pay). She maintained that her race and sex are the reasons she has not been promoted to the GS-13 level.

Ms. Mills explained that she raised this issue with Ms. Rakosky, who suggested that she rewrite her Position Description since there was none in effect for her. She explained that in approximately October 2001 she spoke with Everett Higgins, a classifier in the Human Resources Office, about her situation. She stated that Mr. Higgins informed her that the

3

employees under her supervision did not have the necessary grade structure to justify classifying her position at the GS-13 level. She maintained that this was unfair to her because the employees under her supervision are not, but should be, graded as high as the employees in the Facilities Division.

Ms. Mills added that every other Division has been able to hire contractors or more personnel, and have been able to promote their employees. She maintained that she has not been afforded the same opportunities. She stated that she has lost four employees in the past year: Thomas Page (WG-5, White); Jonathan Steward (WG-5, Black); Yolanda Datcher (GS-6, Black); and Gary Wilson (GS-6, Black). She noted these employees have not been replaced. She contended that, since she has not been able to promote her employees and has lost some employees, she has been unable to reach the required level of higher-level employees under her supervision to obtain the GS-13 grade level.

Ms. Mills stated that the "last straw" for her occurred on December 12, 2001. She explained that Mr. Davis and Ms. Rakosky informed her on that date that the Branch was going to be reorganized, with half of the Property and Inventory Division staff being reassigned to the Records Management Division and half being reassigned to the Facilities Division. She added that the informed her that she would be reassigned to the Records Management Branch under the supervision of Sue Austin. She noted that there has never been a staff meeting held to discuss the proposed reorganization.

Ms. Mills stated that she expressed her concerns about the reorganization in an e-mail to Ms. Rakosky and Mr. Mills dated December 31, 2001. She stated that she explained in the e-mail her opinion that there is no relationship between the Property duties performed in her Division and the duties performed in the Records Management Division. She maintained that she did not receive a substantive response. She contends that, if she were going to be reassigned to another Division, it would make more sense for her to be reassigned to the Facilities Division.

Ms. Mills explained further that she has some concerns regarding working with Ms. Austin as her supervisor. She maintained that Ms. Austin has made comments in the aftermath of September 11 suggesting that she would discriminate against individuals based on their race and/or national origin. She added that Ms. Austin uses profanity with her employees. In addition, she noted that she would be forced to train Ms. Austin on her (Ms. Mill's) duties because she (Ms. Austin) has no knowledge of the new functions that she would be supervising.

2-28-02: The counselor began interviews that Ms. Rakosky and Mr. Davis canceled due to a meeting called by their supervisor.

2-28-02: The counselor interviewed Everett Higgins, Human Resources Management Specialist, GS-13, Directorate of Human Resources. He stated that he has served in that capacity for approximately 15 years. The counselor asked Mr. Higgins explain what he told Ms. Mills when she came to him regarding upgrading her position to the GS-13 grade level.

Ms. Higgins confirmed that Ms. Mills asked him for advice on upgrading her position. He stated that he advised her that position grading is based on the nature of the work in the position and,

4

for supervisors, the grade of the employees working below them. He explained that he advised Ms. Mills that the grade level of employees under her in the Division of Property and Inventory did not merit an upgrade of her position to the GS-13 grade level. He stated that he advised her that, for her to obtain an upgrade, she needed to rewrite her position description, rewrite the position description of her subordinates, and obtain approval of those changes from the managers in her Branch (i.e. Ms. Rakosky and Mr. Davis). He stated that he recommended that she discuss this issue directly with these managers.

Mr. Higgins explained that he based this advice on provisions contained in the Office of Personnel Management General Schedule Supervisory Guide.

<u>3-14-02</u>: The counselor interviewed Mary Lou Rakosky (White female), Ms. Mill's first-line supervisor. She stated that she has served as Deputy Director of the Command Support Services Branch for approximately four years, including a period of approximately one year (7-00 to 6-01) in which she served as Acting Director of the Command Support Services Branch. She explained that Mike Davis became Director of the Command Support Services Branch in June 2001. She responded to Ms. Mill's allegations and explained the proposed reorganization.

As background, Ms. Rakosky explained that the Branch moved from its Crystal City location to the Navy Yard in 2001. She stated that the move began in January 2001 and was not completed until July 2001. She explained that she has had numerous meetings with Mr. Davis after he arrived in June 2001 to discuss management of the Branch in light of the move. She noted, for example, that the Facilities Division has assumed more responsibility after the move because the Branch is no longer leasing space and cannot rely on a lessor to coordinate a variety of issues.

Ms. Rakosky stated that Mr. Davis and she reviewed each Division in the Branch and assessed whether it was organized in the most efficient manner. She stated that the Occupational Safety and Health Division was organized well, but that the other Divisions needed to be changed. She explained that the Financial Branch was efficiently organized except that an employee responsible for finance issues is currently located in the Special Projects area. They proposed moving that employee into the Finance Division. She stated that the Gooding Center is located in a different building, yet four of its employees who do graphics work are located in the building with the rest of the employees in the Branch. She explained that they therefore proposed moving those four employees into the Records Management Branch.

Ms. Rakosky stated that they also determined that the Facilities Division needed to be reorganized. She stated that, even before the move, the Property and Inventory Division (the Division Ms. Mills manages) was responsible for some functions that would be handled more appropriately in the Facilities Division. She noted that the Property and Inventory Division manages laborers utilized by the Facilities Division. She maintained that the two Divisions have not interacted well historically and that it made more sense to merge these functions into the Facilities Division. She explained that they decided to propose reassigning two Property and Inventory Division employees to the Facilities Division.

Ms. Rakosky explained that, once the decision had been made to move employees to the Facilities Division, the Property and Inventory Division was no longer a viable stand-alone

Division. She added that Ms. Mill's inventory responsibilities have decreased significantly in the past year. She stated that the question then became where best to move Ms. Mills and the remaining employees. She stated that they proposed moving two employees (including Ms. Mills) to the Records Management Division. She noted that they had not decided where to move a fifth employee. She denied that this proposed reorganization constituted discrimination against Ms. Mills on the basis of her race and/or sex. She maintained that the proposed changes were made strictly on the basis of creating the most efficient management structure possible.

Ms. Rakosky maintained that moving Ms. Mills and at least one other employee to the Records Management Division made the most sense. She stated that shipping and receiving is currently under the Property and Inventory Division, but maintained that it was more appropriate to move it into the Records Management Division. She explained that the Mailroom is part of the Records Management Division, and that it is physically close to the loading dock (where shipping and receiving takes place). She noted also that the Mailroom is overstaffed currently. She added that she has received reports from the Records Management staff that there had been insufficient security recently at the loading dock and that Mailroom staff was required to cover for the Property and Inventory Division staff. Based on these factors, Ms. Rakosky contended that it was appropriate to propose moving the shipping and receiving function into the Records Management Division and moving Ms. Mills into the Records Management Division under the supervision of Sue Austin.

Ms. Rakosky stated that Mr. Davis and she proposed these organizational changes to each of the Division Directors individually in December 2001. She explained that they had decided to address at that time the deficiencies that they had identified regarding overlapping responsibilities and inefficient management. She explained that they responded to Ms. Mill's concern regarding whether she would continue to be a supervisor by informing her that this was up in the air. They informed her that this would be resolved directly between Ms. Mills and Ms. Austin. She stated that it was likely that Ms. Austin would have Ms. Mills retain supervisory responsibility over those areas that had been managed in the Property and Inventory Division.

Regarding the issue of Ms. Mills upgrading her position to the GS-13 grade level, Ms. Rakosky stated that Ms. Mills either needs to apply for a GS-13 position or request a desk audit. She stated her opinion that a desk audit would reveal that her current duties do not even merit a GS-12 grade level. She disagreed that Ms. Mills had been treated differently than other Division Directors regarding promotions for employees under her supervision. She acknowledged that management is behind in addressing these matters, but she contended that this is true for the entire Branch. She maintained that the race and/or sex of the employees have no bearing on this issue. She did not recall that Ms. Mills ever came to her to discuss upgrading her position to the GS-13 grade level.

Ms. Rakosky stated that she was aware that Ms. Mills had submitted rewritten position descriptions for employees under her supervision. She maintained that at least 50 percent of the employees in the Branch need their position descriptions written or revised and that a contractor has been hired to assume this responsibility. She attributed the backlog on these matters to the disruptions associated with the move. She also acknowledged that it was possible that she had not acted on some of the position descriptions that had been submitted to her because she had

been spread too thin when she served as Acting Director of the Command Services Branch.

Ms. Rakosky also disagreed with Ms. Mill's contention that other Divisions have been given preferential treatment regarding hiring. She stated that the Occupational Safety and Health Division has lost employees and they have not been replaced. She stated that this also is true for the Facilities Division. She noted that the Gooding Center has not added any employees. She stated that the Records Management Division lost one employee and that employee was replaced.

3-14-02: The counselor interviewed Michael Davis (White, male), Ms. Mill's second-line supervisor. He explained that he has served as Director of the Command Support Services Branch since June 2001.

Mr. Davis confirmed that Ms. Rakosky and he have engaged in ongoing discussions regarding reorganizing the Branch to most efficiently utilize staff resources. He agreed with the reasons Ms. Rakosky set forth for the proposed changes. He maintained that there is no way to logically connect all of the functions in the Branch and that some functions will be assigned to Divisions that create what appear to be unnatural fits. He noted, for example, that anywhere that the graphics function is assigned would not appear to make sense because it does not fit anywhere except alone. He contended that there is nothing discriminatory in the proposed restructuring of the Property and Inventory Division.

Mr. Davis explained that, as part of the proposed reorganization, a new GS-14 position would be created to head the Facilities Division. He added that there would be two Branches under this Division, each to be headed by GS-13 employees. He noted that one of those GS-13 positions would be competitively advertised. He stated that he had no authority to accrete Ms. Mills or any other employee to that position.

Regarding the response of management to requests to upgrade position descriptions, Mr. Davis stated that it was not inconceivable that many requests have not been dealt with in a timely manner. He stated that this issue is a big problem in the Branch that needs to be dealt with, which is why a consultant was hired. He explained that he approached upper management about obtaining upgrades for employees in the Branch because many employees in the Branch are undergraded. He explained that this led to authorization for the consultant to come in and rewrite position descriptions, which are the necessary steps before obtaining grade upgrades from Human Resources. He estimated that at least 20 employees in the Branch need their position descriptions rewritten. He contended that Ms. Mill's race and/or sex have no bearing on these issues. He maintained that neither she nor the employees in her Division have been treated differently than the employees in other Divisions.

3.        **Documents Reviewed:**

        A.    Intake Form
        B.    Notice of Rights and Responsibilities
        C.    Notice of Final Interview
        D.    E-mail from Ms. Mills to Mr. Davis and Ms. Rakosky regarding the proposed reorganization, dated December 31, 2001.

7

E.    Current Organization Chart
F.    Proposed Organization Chart

## H.    SUMMARY OF INFORMAL RESOLUTION ATTEMPT

Resolution attempts were unsuccessful. The counselor discussed Ms. Mill's requested remedies with Mr. Davis and Ms. Rakosky. Both indicated that they did not have authority to upgrade her position to the GS-13 grade level. Both maintained that the proposed reorganization had nothing to do with Ms. Mill's race and/or sex and that it was based on creating the most efficient organizational structure. The counselor raised the possibility of Ms. Mills being assigned to the Facilities Division and this was not ruled out. The counselor asked Ms. Mills whether her concerns would be adequately addressed if that occurred. She stated that nothing short of her obtaining the GS-13 grade level would result in resolution of her complaint.

## I.    SUMMARY OF FINAL INTERVIEW WITH AGGRIEVED PERSON

During the final interview the counselor reviewed with Ms. Mills the responses of Mr. Davis and Ms. Rakosky to her allegations. The counselor advised her that management was not going to grant the relief that she requested. She indicated that she would be filing a formal complaint.

## J.    SUMMARY OF INFORMATION GIVEN TO AGGRIEVED PERSON/AGENCY BY COUNSELOR

1.    AGGRIEVED:

a.    Explained his EEO Rights and Responsibilities during the Pre-Complaint Counseling Process;
b.    Explained my role as an EEO Counselor;
c.    Explained management's responses to the allegations;
d.    Explained the formal complaint process.

2.    AGENCY:

a.    Explained Pre-Complaint Counseling Process;
b.    Explained my role as an EEO Counselor;
c.    Explained allegations made and right to provide response;
d.    Explained aggrieved's requested resolution;
e.    Explained the formal complaint process.

_(signature)_                                 3 - 20 - 02

James Cross                                   Date
EEO Counselor
Draughn & Associates
850 Thayer Avenue, Suite 1616
Silver Spring, MD 20910