UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
DEC 1 2 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| NADINE D. MILLS,<br>Plaintiff,<br><br>v.<br><br>DONALD WINTER, SECRETARY<br>DEPT. OF THE NAVY,<br>Defendant | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 06-00581 (PLF)<br>)<br>)<br>)<br>)<br>) |

## PLAINTFF'S MOTION FOR SUMMARY JUDGEMENT

*Pro se* Plaintiff, opposes the motion for summary judgment filed by defendants. Defendants' course of conduct has caused discrimination against Plaintiff based on disparate treatment and retaliation. This action is brought pursuant to: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Statute 2000e, et seq., for employment discrimination on the basis of disparate treatment and retaliation.

The unlawful employment practices described herein concern promotional actions/functions and retaliatory actions taken within the Office of the Department of the Navy, Washington, D.C.

### INTRODUCTION

Plaintiff acknowledges her compliant is based upon a continuing series of incidents in which management officials have sought to interfere with and otherwise inhibit (the plaintiff) from taking advantage of career enhancing assignments and promotion. Clearly these are discrete acts of discrimination. Plaintiff can make a

prima facie case that she has been discriminated against on the basis of disparate treatment and retaliation, and she can show that defendants' reasons for their adverse actions against her are pretext.

## I. Factual Background

### Summary of EEO Compliant
**First compliant filed December 12, 2001 – Disparate treatment –
Position Classification unequal among employees
Second compliant filed May 22, 2003 -
Retaliation against filing a previous compliant in December 2001**

- Plaintiff came to the Naval Sea Systems Command (NAVSEA) in October 1999 from the Naval Technical Representative Office, Laurel, Maryland, was assigned the Division Director's position of the Property & Inventory Division. The SEA 09A Office was made up of six divisions. The other Division Directors were GS-13's and one GS-14 (Financial Support Division) and plaintiff was the only GS-12.

- Later plaintiff discovered that she was the third African-American female in the same position, as Division Director at the GS-12 level.

- Differences between Divisions: Division Directors/Employees grades were not the same or equal according to workload. The grade structure of plaintiff's employees was lower than other employees performing the same type of duties. Other Division Directors were able to promote, recruit or hire contractor personnel in support of their office, Plaintiff was not. When plaintiff lost personnel in her division, they were replaced with personnel from other directorates within NAVSEA. That decision was made by management officials. Plaintiff was not allowed to advertise for positions, perform interviews nor hire employees. Plaintiff was informed by management officials when a new employee would report on-board.

- After filing a compliant and being replaced as the Division Director, it began to affect my health. In November 2002 my doctor suggested that I take sometime off or maybe work from home to reduce the stress at the office. Plaintiff requested to Telework and was denied. Again Plaintiff was discriminated against because at the same time two other employees were off due to health reasons and was allowed to Telework. Both of the employees were white females. Plaintiff later filed a Workmen's Compensation Claim.

- On December 12, 2001, Plaintiff was notified of a re-organization within the Code. Plaintiff's functions would be divided and incorporated into two other divisions.

- In July 2002, a Mr. Jerry Gregg (GS-13) replaced the Plaintiff as the Division Director. Mr. Gregg was assigned to the Division after his was disestablished (SEA 91). At that time the Command offered early retirements and Mr. Gregg chose to take the buyout and retired six months later, January 2003. Management was aware that he was taking the buyout but placed him in the position anyway. After Mr. Gregg retired, plaintiff continued to act as supervisor of the division, but was not given the GS-13 position. Plaintiff was informed by Mr. Gregg that when he retires Management plan to abolish the GS-13 position.

- In May 2003 were notified of a Command-wide reorganization. On May 8, 2003 plaintiff was told she no longer had a job. Plaintiff's division personnel were reassigned. Plaintiff's duties were divided among other personnel and were given other menial duties.

- Later the division was informed, due to the reorganization; personnel had to compete for their positions. The Command informed us that they had to cut personnel by 25% by the end of FY04. We had to downsize from 16 to 12 personnel. Lynn Paige and plaintiff were asked to meet with Mr. Mike Davis, Director and Ms. Mary Lou Rakosky, Deputy concerning our positions. Mrs. Paige and the plaintiff were the only GS-12's in the Division and were told they had to compete for the only position at the GS-12 level.

- Mr. Davis met with plaintiff in his office and asked if she was considering the early retirement option. Plaintiff's response was that she was not eligible to retire and would be penalized the 2% for every year under the age of 55. The next day plaintiff was called into his office and was informed that she was not selected for the position.

- As a result of competing for the position, Mrs. Paige appeared on the GS-12 and GS-13 eligibility list, which plaintiff should have also. Mr. Davis states that he was not aware that Mrs. Paige previously held a GS-13. Mr. Davis asked Ms. Bonnie Flynn, Deputy Commander, and Corporate Operations Directorate if he could fill the position at the GS-13 level instead of the GS-12 level. Ms. Flynn authorized the selection at the GS-13 level and the GS-12 announcement was cancelled.

- In February 2007 Plaintiff requested under the Freedom of Information Act (FOIA) all documents pertaining to the job announcements, CAPNWC03-12-183829, Program Analyst, and CAPNWC03-13-184120, Facilities Program Coordinator. A thorough search of the Human Resource Office at NAVSEA and the Northwest Regional Service Center (NWSRC) failed to disclose information responsive to plaintiff's request.

- Plaintiff has copies of two Non-Competitive Certificates for the GS-12 and GS-13 positions. Plaintiff requested the Competitive Certificates which eventually

Management Officials did not request during the hiring process. It is evident that the positions were pre-selected. Plaintiff would have appeared on the GS-12 Non-Competitive Certificate and would have appeared on the GS-13 Competitive Certificate if it had been requested.

- Mrs. Paige was already in the position as the Facilities Specialist that plaintiff had to compete for. Mrs. Paige held the position for many, many years before plaintiff arrived at NAVSEA. Mrs. Paige was offered a promotion and transferred to another agency prior to plaintiff coming on-board. Plaintiff was hired to take Mrs. Paige's position as the Division Director for the Property and Inventory Division. Mrs. Paige was detailed and acting Division Director for the Property & Inventory Division before she was offered the position with the other agency. Mrs. Paige later returned in September 2002 as a Facilities Specialist, GS-12.

- During the Investigation plaintiff found out that the job announcement had been cancelled and the GS-12 position was abolished. So there were no GS-12's in the Division. It was later organized with 2-GS-7's; 2-GS-9's; 3-GS-11's; **0-GS-12's**; 3-GS-13's; 1- GS-14; 1-GS-15.

- Due to a Command –wide reorganization NAVSEA established the NAVSEA Placement Program (NPP) and reassigned 231 employees who were not in permanent FY04 positions. On June 24, 2003, plaintiff was given a letter along with a P.D. stating the reassignment to the NAVSEA Placement Program (NPP) position. Ms. Mary Lou Rakosky, would still be the plaintiff's immediate supervisor, and be placed on a detailed assignment in the same office.

- In June 2004 Plaintiff was permanently reassigned back into the Facilities Division. Management claim the duties were abolished but in fact they were not. Plaintiff's Division personnel were performing the same duties that once were under her supervision, but reassigned under another supervisor. Wallis v. J.R. Simplot Co. (9th Cir. 1994) 26 F.3d 885, 891.

- It seems that everything was done to rearrange the primary duties, functions and responsibilities of Plaintiff's position not go give her a promotion.

- Plaintiff has never received negative performance ratings, letters of counseling, nor reprimands, etc. Plaintiff over the years received several awards for her performance. Also sometimes acting the supervisor's absence.

- In an email dated April 17, 2003, from Mr. Mike Davis, he stated that Ms. Mary Lou Rakosky would be the selecting official for the Special Projects Branch and he would be the selecting official for the GS-13 Facilities Branch Head job.

## II. Argument

## Retaliation under Title VII

For competitive positions in the federal government, the general process is to screen all applicants to determine which applicants meet the minimum qualifications for the job. Applicants are screened further and separated into those who are "qualified" and those who are "highly qualified" or "best qualified". In promotion and appointment cases the agency should chose equally qualified applicants absent evidence of showing a discriminatory motive. In accordance with McDonnell Douglas v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973), a prima facie case of discrimination in selections or promotions consists of those facts which, if otherwise unexplained, could lead one reasonably to conclude the action was based on discriminatory motives. Rose v. Wells Fargo & Co. (9th Cir. 1990) 902 F.2d 1417, 1421. It is not necessary that the Plaintiff demonstrate she is as qualified or more qualified than the ultimate selectee, only that she was minimally qualified. The agency is discriminatorily manipulating the selection process.

Plaintiff is alleging that the agency manipulated the selection process and the decision to non-competitively announce a position, state a claim under 29 CFR Statute 1614.103. Management Officials purposely kept from Plaintiff the cancellation of the GS-12 job announcement and failed to inform Plaintiff that Ms. Paige was selected at the GS-13 level. The selection process and criteria used by Management were developed with the ultimate goal of pre-selecting personnel. Plaintiff concluded that neither the selection process nor the position qualifications

were volatile of other Civil Service Policies. Direct evidence of intentional discrimination as not producing personnel documents on position selections.

Defendant intentionally discriminated against Plaintiff and refused to promote Plaintiff on account of disparate treatment and retaliation in violation of 42 U.S.C. 2000e-2(a)(1) and (16)(a).

As a direct and proximate result of the discriminatory and retaliatory conduct of the Defendant and its agents and/or employees, Plaintiff suffered humiliation, mental anguish and emotional distress and other forms of related damage.

### Section 1981 – Deprivation of Civil Rights

Defendant has intentionally discriminated against Plaintiff through its disparate treatment of Plaintiff, by denying her the same rights as are enjoyed by other Division Directors and contractors in the performance of Plaintiff's employment relationship with Defendant, and to the enjoyment of all benefits, privileges, terms, and conditions of that relationship in violation of 42 U.S.C. 1981, as amended.

Defendant's actions constitute a violation of the anti-retaliation provisions of Section 1981.

## III. CONCLUSION

The pretext in this case is quite apparent. The Personnel practices of this Agency cannot be ignored. A jury could conclude that disparate treatment and retaliation was the motivating factor. The Court is asked here to look at all possible inferences the evidence presents.

For all the reasons stated above, Plaintiff respectfully requests that this court deny Defendant's Motion to Dismiss and allow this case to proceed.

Respectfully submitted,

*Nadine D. Mills*

Nadine D. Mills
5006 Woodford Lane
Upper Marlboro, Md 20772

Enclosures
Affadavits

# AFFIDAVIT

I, Tawanna Tobias of Prince Georges County, Maryland, do hereby solemnly state:

I've worked with Ms. Nadine Mills since her arrival at NAVSEA HQ's in October 1999. She became my immediate supervisor of the Property and Inventory Division.

The facts of this Case No: 06-0581, is true and correct to the best of my knowledge.

*Tawanna Tobias*   12-11-07
Tawanna Tobias     Date

*Madlyn Alston*
12-11-07

MADLYN ALSTON
NOTARY PUBLIC
PRINCE GEORGE'S COUNTY
MARYLAND
My Commission Expires Sept 1, 2009

# AFFIDAVIT

I, Michael Moore of Prince Georges County, Maryland, do hereby solemnly state:

I've worked with Ms. Nadine Mills since her arrival at NAVSEA HQ's in October 1999. I worked in the NAVSEA Headquarters Front Office as one of the Admiral's drivers. Later I was reassigned to the Property and Inventory division and she became my immediate supervisor.

The facts of this Case No: 06-0581, is true and correct to the best of my knowledge.

_____     12/11/07
Michael Moore                  Date

Madlyn Alston
12-11-07

MADLYN ALSTON
NOTARY PUBLIC
PRINCE GEORGE'S COUNTY
MARYLAND
Commission Expires Sept. 1, 2009