UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NADINE D. MILLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-0581 (PLF) |
| ) | |
| DONALD WINTER, ) | |
| Secretary of the Navy, ) | |
| ) | |
| Defendant. ) | |

OPINION

This matter is before the Court on a motion filed by the defendant, Secretary of the Navy Donald Winter, to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment under Rule 56.[1] Plaintiff Nadine D. Mills, who appears *pro se*, alleges that defendant discriminated against her on the basis of race and sex and that defendant has retaliated against her. Upon consideration of defendant's motion, plaintiff's opposition, defendant's reply and the entire record herein, the Court will grant the motion and enter judgment for the defendant.

---

[1] The papers submitted in connection with this motion include: Defendant's Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, For Summary Judgment ("Def.'s Mot."); Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, For Summary Judgment ("Pl.'s Opp."); and Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, For Summary Judgment ("Def.'s Reply"). Although plaintiff's brief is captioned "Motion for Summary Judgment," it is clear that it is actually a brief in opposition, and the Court will treat it as such. The depositions and declarations to which the Court will refer include: Deposition of Nadine Mills ("Mills Dep."), Def.'s Ex. A; Declaration of Michael Davis ("Davis Decl."), Def.'s Ex. C.

I.  BACKGROUND

Plaintiff Nadine Mills, an African-American female, brings this employment discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Plaintiff works as a management analyst at the GS-12 grade level in the Facilities Management Division ("SEA 102") at the Naval Sea Systems Command ("NAVSEA") Headquarters ("HQ"), Department of the Navy.  See First Amended Complaint ("Compl.") ¶¶ 2, 7, 27; Mills Dep. at 77. When the incidents set forth in the First Amended Complaint occurred, plaintiff was employed in a different GS-12 management analyst position, serving as a division director in the SEA 09A division, the predecessor to SEA 102.  See Compl. ¶ 8; Pl.'s Opp. at 2.

Plaintiff describes a number of allegedly discriminatory actions taken by her supervisors prior to January 2002, including (1) the non-promotion of plaintiff to a GS-13 position while other division directors had been promoted to positions at the GS-13 grade level or higher, see Compl. ¶¶ 8-10; (2) the delay in providing plaintiff with replacements for four employees under plaintiff's supervision that had stopped working for her, see id. ¶ 11; and (3) the reassignment of plaintiff's employees to other divisions and of plaintiff's duties to another division director during a NAVSEA-wide reorganization.  See id. ¶¶ 15, 17-18.

On January 22, 2002, plaintiff sought Equal Employment Opportunity counseling for her grievances, alleging discrimination based on sex and race.  See EEO Counselor's Report of Nadine D. Mills (Jan. 22, 2002) ("First EEO Report") at 2, Def.'s Ex. B.  The EEO counselor interviewed plaintiff's first-level supervisor, Mary Lou Rakosky, and plaintiff's second-level supervisor, Mike Davis, and subsequently, issued a right to file a formal complaint on March 14, 2002.  See id. at 1, 3.  On March 21, 2002, plaintiff filed a formal complaint with the Department

of Navy, which the Navy later dismissed. See Defendant's Statement Of Material Facts As To Which There Is No Genuine Dispute ("Def.'s Statement of Facts") ¶ 45. Plaintiff appealed the dismissal to the Equal Employment Opportunity Commission. See id. The EEOC denied the appeal on September 5, 2002. See id. Plaintiff sought reconsideration, which the EEOC denied on May 18, 2004. See id.

There was another NAVSEA-wide reorganization for fiscal year 2004 ("FY 2004"). See Compl. ¶¶ 20-26. The reorganization contemplated reductions of eighteen percent or greater in the Command's civilian employee positions and required the majority of civilian employees to compete for lateral reassignment into the positions that remained. See Pl.'s Opp. at 3; Davis Decl. ¶¶ 5-6. In particular, the reorganization required SEA 102 to eliminate four positions. See Pl.'s Opp. at 3; Davis Decl. ¶ 8. Furthermore, the reorganization imposed "grade controls" on the remaining SEA 102 positions: SEA 102 was permitted to have only one GS-15 position, one GS-14 position, two GS-13 positions, one GS-12 position, five GS-11 positions and two GS-7 positions. See Davis Decl. ¶ 9.

At the time, plaintiff's division employed only two persons in GS-12 positions: plaintiff and Lynn Paige, who is also an African-American female. See Compl. ¶ 21; Pl.'s Opp. at 3. On May 8, 2003, Mr. Davis told plaintiff that the FY 2004 staffing plan for SEA 102 eliminated the management analyst position held by plaintiff and called for only one position at the GS-12 position, a position that would be in the area of facilities management. See Compl. ¶ 21; Davis Decl. ¶ 17. As a result, Mr. Davis stated that plaintiff and Ms. Paige would have to compete for lateral reassignment into the facilities management position. See Compl. ¶ 21. The GS-12 facilities management position, however, subsequently was cancelled. See Pl.'s Opp. at 3.

3

Instead, Mr. Davis had a non-supervisory GS-13 facilities management position created and laterally reassigned Ms. Paige, who had served in a GS-13 position in another agency, into the new position. See Compl. ¶ 24; Pl.'s Opp. at 3; Mills Dep. at 65. Mr. Davis states that if the GS-13 facilities management position had not been created and the GS-12 facilities management position had not been cancelled, he would have selected Ms. Paige for the GS-12 facilities management position and not plaintiff. See Davis Decl. ¶ 26.

On June 11, 2003, plaintiff was placed in the NAVSEA Placement Program ("NPP"), a list of employees who had not been laterally reassigned to permanent positions during the FY 2004 organization. See Compl. ¶¶ 26-27; Pl.'s Opp. at 4. While in the NPP, plaintiff remained at the GS-12 grade level and continued to perform the same responsibilities and to work in the same office as she had prior to the reorganization. See Mills Dep. at 72-73. Plaintiff also received the same pay and reported to the same supervisors as prior to the reorganization. See id. 72-73. After a year, plaintiff was reassigned to her present GS-12 management analyst position in SEA 102. See Compl. ¶ 27; Pl.'s Opp. at 4. Plaintiff performs the same responsibilities, works in the same office, receives the same pay and reports to the same supervisors as she did prior to the reorganization. See Mills Dep. at 74.

On May 28, 2003, plaintiff again sought EEO counseling. See EEO Counselor's Report of Nadine D. Mills (Aug. 8, 2003) ("Second EEO Report") at 2, Def.'s Ex. B. Plaintiff filed a formal complaint with the agency on July 25, 2003, alleging that she was being discriminated against based on sex and race, and in retaliation based on her earlier EEO activities, when she "had to compete for a position that was already occupied, therefore it was a pre-selection." See Agency Docket No. 03-0024-003, Def.'s Ex. B. On September 5, 2003,

plaintiff amended the complaint to include a claim of discrimination based on age. See id. Plaintiff requested a hearing before an EEOC administrative judge. See Def.'s Statement of Facts ¶ 48. After the administrative judge indicated she would issue a decision without a hearing, both plaintiff and the agency filed motions for summary judgment. See id. The administrative judge granted the agency's motion. See id. Plaintiff appealed to the EEOC. See id. ¶ 49. The EEOC denied plaintiff's appeal on September 15, 2005. See id. This action followed.

## II.  DISCUSSION

### A.  Legal Standards

#### 1.  Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" id. at 1965 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1964-65; see also

Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court stated that there was no "probability requirement at the pleading stage," Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1965, but "something beyond . . . mere possibility . . . must be alleged," id. at 1966. The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 1965, or must be sufficient "to state a claim for relief that is plausible on its face," id. at 1274. The Court referred to this newly-clarified standard as "the plausibility standard." id. at 1968 (abandoning the "no set of facts" language from Conley v. Gibson).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S. Ct. at 2200; see also Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1965; Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 325 (1991). The complaint "is construed liberally in the plaintiffs' favor, and [the Court should] grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see also Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). While the complaint is to be construed liberally in plaintiff's favor, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint; nor must the Court accept plaintiff's legal conclusions. See Kowal v. MCI Commc'ns Corp., 16 F.3d at 1276; Browning v. Clinton, 292 F.3d at 242.

While *pro se* complaints are held to a less stringent standard than complaints drafted by attorneys, see Erickson v. Pardus, 127 S. Ct. at 2200 ("A document filed *pro se* is to be liberally construed.") (internal quotations and citations omitted); Gray v. Poole, 275 F.3d

1113, 1116 (D.C. Cir. 2002), a *pro se* plaintiff's inferences "need not be accepted 'if such inferences are unsupported by the facts set out in the complaint,'" Caldwell v. District of Columbia, 901 F. Supp. 7, 10 (D.D.C. 1995) (quoting Henthorn v. Dep't of Navy, 29 F.3d 682, 684 (D.C. Cir. 1994)). "A pro se complaint, like any other, must present a claim upon which relief can be granted by the court." Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981).

### 2. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895. When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*); Wash. Post Co. v. Dep't of Health & Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989). On a

motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). She is required to provide evidence that would permit a reasonable jury to find in her favor. See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support [her] claims." Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 845 (D.C. Cir. 2001). Because plaintiff has offered no evidence to show that there is a genuine issue as to any material fact in dispute, and the Court concludes that defendant is entitled to judgment as a matter of law, the Court will grant summary judgment for the defendant.

*B.  Administrative Exhaustion*

Federal employees must exhaust their administrative remedies before filing suit. See 42 U.S.C. § 2000e-16(c); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997). Employees who allege discrimination must consult with an agency EEO counselor before filing a

8

written complaint with the agency accused of discriminatory practices. See 29 C.F.R. § 1614.105(a); 29 C.F.R. § 1614.106(a)-(c). The agency must then investigate the matter, after which the complainant may demand an immediate final decision from the agency or a hearing before an EEOC administrative judge. See 29 C.F.R. § 1614.106(e)(2); 29 C.F.R. § 1614.108(f). Complainants may file a civil action after receiving a final decision from the agency or after a complaint has been pending before the EEOC for at least 180 days. See 42 U.S.C. § 2000e-16(e); 29 C.F.R. § 1614.407. "Complainants must timely exhaust these administrative remedies before bringing their claims to court." Bowden v. United States, 106 F.3d at 437; see Baker v. Library of Cong., 260 F. Supp. 2d 59, 65 (D.D.C. 2003) ("Title VII confers the right to file a civil action in federal court only when a party has been 'aggrieved by the final disposition of [her] administrative] complaint, or by the failure to take final action on [her] complaint.'" (quoting 42 U.S.C. § 2000e-16(c)); Price v. Greenspan, 374 F. Supp. 2d 177, 184 (D.D.C. 2005) ("Federal employees may only bring Title VII lawsuits in federal district court if they have exhausted remedies available through administrative processes . . . .") (citing Mondy v. Sec'y of the Army, 845 F.2d 1051, 1057 (D.C. Cir. 1988) and 42 U.S.C. § 2000e-16(c)).

    Plaintiff's 2003 administrative complaint alleged discrimination on the basis of sex and race, and retaliation. See Agency Docket No. 03-00024-003, Def.'s Ex. B.[2] These claims are based on two incidents: (1) the elimination from the FY 2004 staffing plan of the GS-12 management analyst position held by plaintiff, which plaintiff learned of on May 8, 2003; and (2) plaintiff's non-selection for a GS-12 facilities management position shortly thereafter.

---

[2]   Plaintiff's administrative complaint also alleged discrimination based on age. See Agency Docket No. 03-00024-003, Def.'s Ex. B. In plaintiff's First Amended Complaint, however, plaintiff maintains only her claims of discrimination based on sex and race, and retaliation. See Compl. ¶¶ 28-30.

9

See supra at 3-5.[3]  Accordingly, although the complaint filed in this Court alleges incidents going beyond those underlying plaintiff's 2003 administrative complaint, the Court must limit its consideration of plaintiff's discrimination and retaliation claims to those arising from these incidents in the spring of 2003, because she has failed to administratively exhaust with respect to any others.  See Park v. Howard Univ., 71 F.3d 904, 907-08 (D.C. Cir. 1995) (stating that a civil suit under Title VII is only as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination). [4]

*C. Discrimination Claims*

The problem for plaintiff with respect to her exhausted race and sex discrimination claims is that she has abandoned them during the course of litigation in this Court. Plaintiff's opposition brief addresses only her retaliation claim.  See Pl.'s Opp. at 5.  In addition, plaintiff's sworn testimony at her deposition makes clear that she no longer asserts race and sex

---

[3] The language of plaintiff's administrative complaint, itself, is unclear as to what comprises the second incident underlying plaintiff's discrimination and retaliation claims. See id. (stating that plaintiff was "forced to compete for a position that was already occupied"). The EEO counselor's report, however, clarifies that plaintiff challenged her non-selection for the GS-12 facilities management position.  See Second EEO Report at 2.  Specifically, plaintiff alleged that her supervisors designed the facilities management position for Ms. Paige to ensure that plaintiff would not be selected for the position.  See id. at 4.  Accordingly, the Court interprets the language of the 2003 administrative complaint as alleging discrimination based on sex and race and retaliation in connection with plaintiff's non-selection for the GS-12 facilities management position.

[4] In particular, the First Amended Complaint alleges that management eliminated the GS-12 facilities management position for which plaintiff and Ms. Paige were competing in order to accommodate the creation of a GS-13 facilities management position for Ms. Paige.  See Compl. ¶¶ 28-30.  Plaintiff, however, did not set forth this incident in her 2003 administrative complaint.  See Agency Docket No. 03-00024-003, Def.'s Ex. B.  Accordingly, the Court does not consider this incident in this Opinion.

discrimination as to either of the incidents set forth in her administrative complaint, but rather asserts only retaliation. See Mills Dep. at 39, 72. As noted above, Rule 56 of the Federal Rules of Civil Procedure provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

FED. R. CIV. P. 56(e). Plaintiff has not set out specific facts showing a genuine issue for trial with respect to these claims by affidavit, deposition or otherwise, as required by Rule 56. On the contrary, she concedes that these claims must fail. The Court therefore will grant judgment for defendant on plaintiff's race and sex discrimination claims.

D.  Retaliation Claims

To establish a *prima facie* case of retaliation, "the plaintiff must present evidence that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse action against her; and (3) the adverse action was causally related to the exercise of her rights." Holcomb v. Powell, 433 F.3d at 901-02 (internal quotations and citations omitted); see also Hussain v. Nicholson, 435 F.3d 359, 366 (D.C. Cir. 2006). An employee's burden at this stage "is not great; [she] merely needs to establish facts adequate to permit an inference of retaliatory motive." Holcomb v. Powell, 433 F.3d at 903 (quoting McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984)). Once an employee makes such a showing, she "raises a 'rebuttable presumption of unlawful [retaliation],'" shifting the burden to the defendant to rebut such presumption. Smith v. District of Columbia, 430 F.3d 450, 455 (D.C. Cir. 2005) (quoting

Jones v. Wash. Metro. Area Transit Auth., 205 F.3d 428, 433 (D.C. Cir. 2000)).

A defendant may rebut the presumption of discrimination by offering a legitimate, non-retaliatory reason for its action.  See Holcomb v. Powell, 433 F.3d at 901; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  If the defendant does so, "the presumption of [retaliation] 'simply drops out of the picture,' and 'the sole remaining issue [i]s [retaliation] *vel non*.'"  Mastro v. Potomac Elec. Power Co., 447 F.3d at 854 (quoting Holcomb v. Powell, 433 F.3d at 896 and Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000) (other internal citations omitted)).

At that point, the burden shifts back to the plaintiff, and the Court must assess "whether a reasonable jury could infer intentional [retaliation]' from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were [retaliatory] or that the non-[retaliatory] justification was pretextual."  Smith v. District of Columbia, 430 F.3d at 455 (quoting Murray v. Gilmore, 406 F.3d 708, 713 (D.C. Cir. 2005)); see also Mastro v. Potomac Elec. Power Co., 447 F.3d at 854 (at this point, to survive summary judgment, plaintiff must show that "a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a [retaliatory] reason." (quoting Holcomb v. Powell, 433 F.3d at 896)).  "All of the evidence" that the Court must consider is:

> [A]ny combination of (1) evidence establishing the plaintiff's prima facie case; (2) evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of [retaliation] that may be available to the plaintiff, such as independent evidence of [retaliatory] statements or attitudes on the part of the employer.

Mastro v. Potomac Elec. Power Co., 447 F.3d at 855 (citing Holcomb v. Powell, 433 F.3d at 896 and Aka v. Wash. Hosp. Ctr., 156 F.3d at 1289).

The defendant concedes, as he must, that plaintiff has satisfied the first element of her retaliation claim, that plaintiff engaged in statutorily protected activity. See Def.'s Mot. at 10. Plaintiff sought EEO counseling on January 22, 2002 and on May 28, 2003. See First EEO Report at 2; Second EEO Report at 2. She filed formal EEO complaints on March 21, 2002 and on July 25, 2003. See Pl.'s Opp. at 2; Agency Docket No. 03-0024-003, Def.'s Ex. B.

Defendant argues, however, that plaintiff has failed to establish the second element: that the incidents set forth in plaintiff's 2003 administrative complaint constitute adverse actions. See Def.'s Mot. at 11-12. Specifically, defendant contends that plaintiff has not shown and cannot show that she suffered any cognizable harm from either the elimination of the management analyst position held by plaintiff or plaintiff's non-selection for the GS-12 facilities management position. See id. at 11-12. The Court agrees.

An adverse action "is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Broderick v. Donaldson, 437 F.3d 1226, 1233 (D.C. Cir. 2006) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). "[A] plaintiff . . . who is denied a lateral transfer – that is, one in which she suffers no diminution in pay or benefits – does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999). An adverse action has occurred "when an employee 'experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities

such that a reasonable trier of fact could find objectively tangible harm.'" Holcomb v. Powell, 433 F.3d at 902 (quoting Forkkio v. Powell, 306 F.3d 1127, 1130-31 (D.C. Cir. 1999)). "Not everything that makes an employee unhappy is an actionable adverse action. . . . While 'being aggrieved is necessary to state a claim for retaliation, . . . it is not sufficient to demonstrate that a particular employment action was adverse.'" Broderick v. Donaldson, 437 F.3d at 1233 (quoting Holcomb v. Powell, 433 F.3d at 902). "'[P]urely subjective injuries,' such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions[.]" Holcomb v. Powell, 433 F.3d at 902 (quoting Forkkio v. Powell, 306 F.3d at 1130-31). The plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in the case of a retaliation claim means "it well might have dissuaded a reasonable workers from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. v. White, 126 S. Ct. 2405, 2415 (2006) (internal quotations and citations omitted).

    Plaintiff argues that she suffered an adverse action when her supervisors eliminated the management analyst position held by plaintiff from the FY 2004 staffing plan because plaintiff was left without a permanent position immediately following the reorganization. See Compl. ¶¶ 26-27 (alleging that plaintiff's employment status was "indeterminate"). This argument has no merit. Although the reorganization resulted in plaintiff's temporary reassignment to the NPP, plaintiff has set forth no allegations as to how this temporary transfer adversely effected her employment status or her future employment opportunities. In fact, while plaintiff was in the NPP, plaintiff received the same pay, retained the same responsibilities and remained at the same grade level as prior to the reorganization. See Mills Dep. at 72-74. Plaintiff also suffered no inconvenience since plaintiff stayed in the same

office and reported to the same supervisors as prior to the reorganization.  See id. at 72-73.

Moreover, plaintiff's tenure in the NPP lasted for only one year, after which she was permanently reassigned to another management analyst position at the same grade.  See Compl. ¶ 27.  This reassignment, like plaintiff's transfer into the NPP, did not alter plaintiff's pay, responsibilities or grade level.  See Mills Dep. at 74.

Similarly, plaintiff did not suffer any "objectively tangible harm" when her supervisors did not select her for the GS-12 facilities management position, but instead eliminated that position.  See Holcolmb v. Powell, 433 F.3d at 902.  Defendant states, and plaintiff does not dispute, that selection for the GS-12 facilities management position would have been a lateral reassignment for plaintiff, not a promotion.  See Def.'s Statement of Facts ¶ 21; see also id. ¶ 24 (stating that the reorganization required all FY 2004 positions to be filled first through lateral reassignments and not promotions).  Plaintiff does not allege that the facilities management position would have improved her standing within SEA 102, or improved her opportunities for promotion.  Cf. Stewart v. Achcroft, 352 F.3d 422, 426-27 (D.C. Cir. 2003) (finding non-selection for a lateral transfer to be an adverse action because the non-selection "denied [plaintiff] the opportunity to advance within the hierarchy" of his office).  Plaintiff does not allege that the position would have increased her pay or provided benefits different from those she received before and after her non-selection; she would have remained at the GS-12 grade level.  See Compl. ¶ 21.  Furthermore, although the functions of the facilities management position differ from the functions that plaintiff performed at the time, this, alone, does not constitute adverse action.  See Brown v. Brody, 199 F.3d at 457 (non-selection for a lateral transfer to a position that plaintiff found more appealing, without more, did not constitute an

15

adverse action). Inasmuch as plaintiff's transfer into the NPP and subsequent reassignment did not alter plaintiff's pay, responsibilities or grade level, see Mills Dep. at 74, the Court is unable to conclude that she has suffered any objectively tangible harm, or that the challenged action was materially adverse – which, in the case of a retaliation claim, means "it well might have dissuaded a reasonable workers from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. v. White, 126 S. Ct. at 2415.

Plaintiff also has failed to satisfy the third element of a *prima facie* case, that a causal connection exists between her 2002 EEO Complaint and the adverse actions alleged by plaintiff. A plaintiff may demonstrate the requisite causal relationship by showing that her employer had knowledge of her protected activity and that the adverse action took place shortly thereafter. See Holcomb v. Powell, 433 F.3d at 903. The temporal proximity, however, must be "very close." See Clark v. County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). As this Court stated in Moses v. Howard Univ. Hosp., 474 F. Supp. 2d 117, 125 (D.D.C. 2007), "courts have generally accepted time periods of between a few days and a few months . . . but have seldom allowed periods of more than a year to create the inference of a causal connection."

Here, plaintiff engaged in protected activity in January 2002 by filing her first EEO complaint. See Pl.'s Opp. at 2. Plaintiff's supervisors, however, approved the staffing plan that eliminated the management analyst position held by plaintiff and created the GS-12 facilities management position in mid-February 2003, over a year later. See Davis Decl ¶¶ 11-15. Plaintiff competed for and was not selected for the GS-12 facilities management position during May 2003. See Compl. ¶¶ 21-25. More than a year, therefore, separates the time of plaintiff's protected activity and the time of the alleged adverse actions. This temporal relationship does

not suggest a causal connection.  See Mayers v. Laborers' Health & Safety Fund of N. Am., 478 F.3d 364, 369 (D.C. Cir. 2007) (holding that "[an] eight- or nine-month gap . . . is far too long"). Plaintiff offers no other evidence from which a causal connection could be shown.

Moreover, even if plaintiff could make out a *prima facie* case of retaliation, defendant has proffered legitimate, non-retaliatory reasons for its actions, see Holcomb v. Powell, 433 F.3d at 901, and plaintiff responds to these reasons with only conclusory allegations. Defendant has submitted Mr. Davis' sworn declaration in which Mr. Davis offers non-retaliatory reasons for his decision to include the management analyst position held by plaintiff among the four positions to be eliminated in the FY 2004 staffing plan.  See Davis Decl. ¶¶ 12-14.  Mr. Davis asserts that his decision was based on the reduced functions of the management analyst position resulting from several changes in SEA 102.  See id.. ¶¶ 12-13.  He also asserts that SEA 102's inventory accounting policy had changed from requiring an inventory of all property to requiring an inventory of only high-value property.  See id. ¶ 13.  This resulted in substantial reductions in the management analyst position's inventory functions because fewer assets had to be inventoried.  See id. ¶ 13; Mills Dep. at 41.  In addition, responsibility for the inventory of computer assets had been transferred to SEA 00I.  See Davis Decl. ¶ 13.  Mr. Davis also states that he believed the completion of NAVSEA's transition to use of the Navy-Marine Corps Intranet in about December 2003 would reduce the management analyst position's NMCI planning functions.  See id. ¶ 12.

Mr. Davis also offers a non-retaliatory reason for not selecting plaintiff for the GS-12 facilities management position and eliminating the position from the FY 2004 staffing plan instead.  Although the FY 2004 staffing plan already included one supervisory GS-13

facilities management position and one nonsupervisory GS-13 facilities management position, see Davis Decl. ¶ 11, Mr. Davis asserts that he believed the amount of facilities work in the FY 2004 organization justified the creation of a second nonsupervisory facilities management position at the GS-13 grade level. See id. ¶ 24. Mr. Davis contemplated "two branch heads (each a nonsupervisory GS-13) reporting to a supervisory GS-13" with each branch head "responsible for one of the two NAVSEA buildings at the Washington Navy Yard." See id. ¶ 25 (parentheses in original). Because the reorganization limited the number of FY 2004 civilian employee positions in SEA 102 and imposed grade controls, however, Mr. Davis was required to choose between creating the GS-13 facilities management position and maintaining the GS-12 facilities management position. See id. ¶ 27; Def.'s Statement of Facts ¶ 34. Mr. Davis chose to create the GS-13 facilities management position. See Davis Decl. ¶¶ 27-28. As a result, Mr. Davis had the GS-12 facilities management position cancelled before anyone was formally selected to the position. See Compl. ¶ 24; Mills Dep. at 61; Davis Decl. ¶ 29.

    In response, plaintiff offers no evidence from which a reasonable jury could infer that defendant's actions were retaliatory or that defendant's proffered non-retaliatory reasons are pretextual. See Smith v. District of Columbia, 430 F.3d at 455; Murray v. Gilmore, 406 F.3d at 713. While, at various times, plaintiff has advanced a number of theories to undermine defendant's proffered non-retaliatory reasons, see, e.g., Pl.'s Opp. at 4 (arguing that defendant's reason for eliminating her position must be false because the functions of the management analyst position were never abolished); Mills Dep. at 53 (arguing that the manner in which management conducted the selection process for the GS-12 facilities management position indicates that management's actions were retaliatory), plaintiff does not support her theories with

any evidence but with two affidavits, each of which contains only the conclusory statement "[t]he facts of this Case No: 06-0581, [sic] is [sic] true and correct to the best of my knowledge." Affidavit of Tawanna Tobais ("Tobias Aff."); Affidavit of Michael Moore ("Moore Aff.").

   These general, conclusory statements are far from the competent evidence setting forth *specific* facts plaintiff needs to provide in order to withstand summary judgment. See FED. R. CIV. P. 56(e). Moreover, plaintiff's deposition testimony indicates that her allegation that defendant's actions were retaliatory is not based on evidence but on speculation as to why Mr. Davis eliminated her position, see Mills Dep. at 30, and did not select her for the GS-12 facilities management position. See id. at 51, 53, 68-69. Finally, plaintiff admits that Ms. Paige was better qualified for the GS-12 facilities management position than she was, further undermining plaintiff's contention that her non-selection was a product of retaliatory intent. See id. at 50. Plaintiff therefore has failed to create any genuine issue for trial regarding whether defendant acted for retaliatory reasons.

   Because plaintiff has failed to establish a *prima facie* case of retaliation and has failed to raise a genuine issue of fact with respect to whether defendant acted for retaliatory reasons when plaintiff's supervisors eliminated the management analyst position held by plaintiff from the FY 2004 staffing plan and when plaintiff's supervisors did not select plaintiff for the

GS-12 facilities management position, the Court will grant defendant's motion for summary judgment on plaintiff's retaliation claims and enter judgment for the defendant.

An Order consistent with this Opinion will be issued this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  March 31, 2008